## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO.: 15-07088 (BKT)** |
| **AMERICAN AGENCIES CO., INC.** | |
| Debtors in Possession | **CHAPTER 11** |
| **IN RE:** | **CASE NO.: 15-07090 (BKT)** |
| **NEW STEEL, INC.** | |
| Debtors in Possession | **CHAPTER 11** |

## DEBTORS' CONSOLIDATED DISCLOSURE STATEMENT AND SUMMARY OF PROPOSED PLAN OF REORGANIZATION/LIQUIDATION

## ARTICLE 1. INTRODUCTION

1.0     DEFINITIONS

1.1     BANKRUPTCY CODE PROVISIONS FOR POST PETITION DISCLOSURE

1.2     DISCLAIMER

1.3     VOTING REQUIREMENTS

1.4     DEBTORS'S HISTORY

1.5     EVENTS LEADING TO BANKRUPTCY

1.6     DATE THE PETITION WAS FILED

1.7     BANKRUPTCY PROCEEDINGS

1.8     FINANCIAL INFORMATION

1

## INTRODUCTION

American Agencies' business is that of selling and installing steel fabricated structures; along with the sale of doors and hardware.  New Steel's business is that of fabricating steel structures that American Agencies sells and installs. These two entities share the common business and are owned by common shareholders.  They share the same liability to the larger creditor, Banco Popular de Puerto Rico.  Two separate bankruptcy petitions were filed on September 15, 2015 and the bankruptcy estates were substantially consolidated on October 27, 2015.

### 1.0   DEFINITIONS

For purposes of this disclosure statement, and to the extent not otherwise provided herein, all capitalized terms below shall have the meanings set forth in the Plan of Reorganization proposed by the Debtors of even date herewith and, unless otherwise indicated, the singular shall include the plural, and any term used in this disclosure statement which is not defined in the Plan of Reorganization, but which is defined in the Bankruptcy Code (11 U.S.C.), shall have the meaning designated in the Bankruptcy Code.

### 1.1   BANKRUPTCY   CODE   PROVISIONS   FOR   POST   PETITION   DISCLOSURE

Section 1125 of the Bankruptcy Code requires that Debtors make post-petition disclosure in the form of disclosure statement which provides "adequate information" to its creditors before a Debtors or a party acting on its behalf may solicit acceptances of a Chapter 11 plan of reorganization. Creditors are urged to consult with their own attorney, or with each other, and to review all of the pleadings and other documents on file with the Bankruptcy Court in order to fully understand the disclosure made herein, regarding the Debtors' proposed plan of reorganization (hereafter referred to as the "Plan") and any other pertinent matters in this case.

2

### 1.2    DISCLAIMER

Valuation and Accounting Method:  Valuation of assets is based on appraisals and or experience in the field by the Debtors or experts assisting the Debtors.  Creditors are advised that the financial information contained in this Disclosure Statement has not been the object of an audit and is not certified by independent public accountants, except where expressly stated otherwise. The Debtors do not warrant or intends to represent that the information contained herein is without inaccuracy notwithstanding their efforts to disclose all matters with careful attention to accuracy and completeness.

The Debtors do not authorize any representation concerning the Debtors, and/or any other statement relative to it, different from, or not included in this Disclosure Statement. A creditor in deciding how to vote for the Plan should not rely on any representation or inducement that might be made to influence in the acceptance or rejection of the Plan.

### 1.3    VOTING REQUIREMENTS

In order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Code requires that the Plan be approved by all classes of creditors and interest holders or that the Court finds that the Plan is "fair and equitable" as to any dissenting class.

As provided by 11 U.S.C. §1124, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such a class, the plan-

    (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

    (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default –

A. cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

B. reinstates the maturity of such claim or interest as such maturity existed before such default;

C. compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

D. does nor otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Ordinarily, but not in all circumstances, a plan may not be confirmed unless at least one impaired class, assuming there is at least one impaired class, accepts the plan.

A class has accepted the plan if such a plan has been accepted by creditors, other than those under 11 U.S.C. §1126 (e), that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class held by creditors, that have accepted or rejected such plan, i.e., those actually voting on the plan.

Creditors may vote for the acceptance or for the rejection of the plan.

Each creditor is urged to consult with its own attorney and obtain advice on the proposals and dispositions of this Disclosure Statement and the Plan. The statements contained herein are only a brief summary of the confirmation process and should not be relied upon in making your determination as to whether to vote in favor of or against the Plan. Creditors should consult their attorneys before making a determination to vote for or against the Plan.

4

Creditors are expressly referred to the Debtors' Schedules of Assets and Liabilities, the Statement of Financial Affairs and all other documents duly filed in this case with the Bankruptcy Court. This Disclosure Statement is predicated upon certain assumptions that may not materialize, and you are urged to give consideration to such assumptions.

No representation concerning the Debtors or as to the actual or realizable value of its property, are authorized by the Debtors other than as set forth in this Disclosure Statement. Any amendments or clarifications to this Disclosure Statement or the Plan shall be in writing and filed with the Court.

## 1.4    DEBTORS' HISTORY

### NATURE OF BUSINESS

American Agencies Co., Inc. ("American Agencies") was founded in 1956 by Eng. Jorge A. Rivera Cardona. As a new company it represented U.S. continental manufacturers, besides building and selling its products in Puerto Rico. It operates from leased facilities in Rio Piedras Puerto Rico.

In 1965 the Debtor decided to build its own structural steel fabrication division – New Steel Inc. – as a way of improving the quality of its products and services. New Steel Inc. is located in Carolina, PR in a leased space of an area of 150,000 sqft.

The original owner of the shares of both companies was Eng. Jorge A. Rivera Cardona, who on 1984 sold the companies to the following employees: Ángel Rodríguez González, Orlando Lafitte, Francisco Ramos, Guillermo Menéndez Carnero, Ivan Guzmán and José Abreu. Thereafter in 2007 the was another transfer of ownership to other employees; Omir Méndez, Jorge Vendrell, José Hernández, Luis Vázquez, Ivan Román, Anacleto Jiménez and Priscila Menéndez. In payment for this transaction the sellers surrendered their common shares and were

granted shares of redeemable Class A and B Cumulative Preferred Stocks. The holder of Class A shares is Ángel Rodríguez Gonzales and the holder of Class B shares are Guillermo Menéndez Rodríguez, Lucy Rodríguez, and Priscila Menéndez. Class A and Class B shares were to be mandatory redeemed on a quarterly basis.

Currently the owners of the companies' common shares are Omir Mendez, Jorge F. Vendrell, Jose R. Hernandez, Ivan Roman Ruiz, Anacleto Jimenez, and Priscila Menendez. The companies are directed by a Board of Directors compose of Angel Rodriguez Gonzalez, Omir Mendez, and Jose R. Hernandez. The Directors of the Companies are: President Omir Mendez, and Jose R. Hernandez as Secretary and Treasurer.

American Agencies has built a reputation within the construction industry as the most reliable source for the highest quality structural steel, metal door, and architectural hardware available in Puerto Rico. Its structural steel components are fabricated according to builder specifications by highly qualified workers at New Steel Inc.

As a local fabricator, it can provide its clients with prompt delivery of a superior product and save them time and money in construction overruns and penalties for late project delivery.

They also offer builders and contractors the island's largest selection of overhead and service metal railing doors, grilles, shutters, hollow metal interior and exterior security doors, sound-proof doors, bullet-proof doors, toilet partitions, and washroom accessories. They also have available the island's most complete selection of architectural hardware for use in commercial, institutional, and residential buildings.

American Agencies is the exclusive distributor for leading architectural hardware in Puerto Rico, among which are Sargent & Co., HES, Rockwood, ASSA and Bommer. American Agencies is an exclusive distributor of the largest manufacturer of overhead service doors, roll-

up grilles and shutters, as well as security and fire doors; Cornell Iron Works, Inc. Also for the toilet partitions American Agencies is the exclusive distributor of Knickerbockers.

The Debtors carry a complete line of Pioneer galvanized steel doors for interior and exterior use and frames in a variety of sizes and colors available for immediate delivery.

Debtors serve a wide range of clients, from contractors to Pharmaceuticals, to Government Agencies. Services are offered throughout the island and they also export materials to the Lesser Antilles.

Debtors' engineers and draftsmen are experienced and receive continuous education to keep up with the ever changing trends and requirements in the industry and to ensure quality and accuracy in their projects.

The Debtors philosophy has always been to "**put customer's needs on top of our list always**".

Some of the Debtors success stories are:

- Construction and expansion of Plaza Las Americas Mall, Macy's Store, and Belz Factory Outlets.

- Part of the construction team that worked with the Puerto Rico Convention Center, Hotel Sheraton and Tribunal de Circuito Apelaciones.

- Part of the construction team that worked in the construction of The San Juan Mall

As of the filing date the Debtors were part of two Collective Bargaining Agreements with the United Steel Workers Union which cover the employees of both American Agencies and New Steel.

7

## 1.5    EVENTS LEADING TO BANKRUPTCY

The Debtors are engaged in the construction industry in Puerto Rico. As the economy in Puerto Rico began to decline the construction industry was severely affected as well. Projects and Sales of the Debtors dropped significantly to such an extent that as of the filing date there were no significant or profitable new projects. Thus to avoid an insolvency situation the Debtors filed this proactive Bankruptcy Petition.

## 1.6    DATE THE PETITION WAS FILED

The Debtors submitted its petition for Bankruptcy under Chapter 11 of the Bankruptcy Code on September 15, 2015.[1] Since then, Debtors have performed all of their legal obligations as Debtors in Possession.

## 1.7    BANKRUPTCY PROCEEDINGS

### I.    Schedules, Statement of Financial Affairs and Creditors' Meeting.

On September 15, 2015, each Debtor filed their Voluntary Petition under Chapter 11 with corresponding Schedules, Statement of Financial Affairs, List of Creditors Holding the 20 Largest Unsecured Claims, and Corporate Resolution.

On October 19, 2015, the 341 Meeting of Creditors was held and closed. The minutes of the meeting were entered on October 22, 2015. (Docket Nos. 9 and 50). On September 15, 2015 the Debtors requested the substantial consolidation of the two bankruptcy estates. (Docket No. 7). On October 27, 2015, the court entered an *Order* granting the substantive consolidation of both cases filed by the Debtors at Docket No. 56.

Consolidated schedules were filed on November 18, 2015. (Docket No. 76).

---

[1] See Docket 1 in Case No.15-07088 (BKT) and Docket 1 in Case No. 15-07090 (BKT). Hereinafter all docket numbers will be in reference to the consolidated debtors under Case No.15-07088.

## II.    Employment of Professionals

The Debtors filed an application to employ its counsel, C. Conde and Associates on September 15, 2015, which was approved by the Court on October 19, 2015. (Docket Nos. 5 and 41).

Also on September 15, 2015, the Debtors filed an application to employ an accountant for the Debtors, Ms. Doris Barroso Vicens, CPA., which was approved by the Court on October 19, 2015. (Docket Nos. 6 and 42).

On October 13, 2015, the Debtors filed an application to employ an External Auditor for the Debtors, Xavier A. Curret from Landa Umpierre, P.S.C., which was approved by the Court on November 12, 2015. (Docket Nos. 37 and 63).

Also on October 13, 2015, the Debtors filed an application to employ Special Counsel for the Debtors relating to collective bargaining agreements, Moises Avila-Sanchez Esq. from the firm Avila, Martinez & Hernandez, P.S.C., which was approved by the Court on December 10, 2015. (Docket Nos. 38 and 95).

On October 23, 2015, the Debtors filed an application to employ Special Counsel for the Debtors, Jose Julian Alvarez-Maldonado Esq. from the firm Fiddler, Gonzalez & Rodriguez, P.S.C., to provide specialize services in corporate and contractual matter relative to the Debtors, which was approved by the Court on December 17, 2015. (Docket Nos. 51 and 101).

On October 26, 2015, the Debtor filed an application to employ an appraiser for the Debtors, Ismael Isern Suarez from I.S. Appraiser Group, P.S.C., to provide services regarding the valuation of Debtor's personal property, specifically: furniture located at one of its facilities, small tools and other personal property, which was approved by the Court on November 30, 2015. (Docket Nos. 55 and 85).

9

III.    **Duties of the Debtors in Possession**

The Debtors have complied with all of their duties as Debtors in Possession, including but not limited to the appearance at the meeting of creditors, the filing of all Monthly Operating Reports and payment of fees to the U.S. Trustee.

**IV. Other Matters**

**A.  Use of Cash Collateral**

On September 16, 2015, the Debtors filed an *Urgent Motion for use of the Cash Collateral and for Approval of Interim Order*.  (Docket No. 8).  The same was approved by the Court on September 17, 2015.  (Docket No. 13).

On September 28, 2015, the Debtor and Banco Popular de Puerto Rico ("BPPR") filed a *Joint Stipulation for use of Cash Collateral and Adequate Protection* (the "Stipulation", Docket No. 22).  The *Stipulation* was subsequently supplemented on October 5, 2015, to address concerns raised by the United States Trustee.  Docket No. 30.

The Debtors agreed to remit an adequate protection payment in the amount of $16,700.00 to BPPR on a monthly basis.  Said payment was applied to interest and principal in the following forms: from the filing date till November 30th, 2015, $10,500.00 will be applied to interest and the balance would be applied to principal; from December 1st, 2015 onward the payment will be split into two equal parts of 8,335.00 to be applied to interest and principal. The Debtors and BPPR also agreed that they could make additional payments to be applied to the principal of the Debt, which the Debtors have done.

**B.  Sale of Assets**

On November 5, 2015, the Debtors filed a *Notice of Sale* requesting approval from the court to sell non-essential automobiles to certain buyers. (Docket No. 61).  The same was approved

by the Court on December 9, 2015. (Docket No. 93). The proceeds of such sale were tendered to

BPPR to be applied to principal as stated in the *Stipulation*.

The Debtors have continued to market their machinery and equipment and will continue to

sell non-essential assets in the future.

### C.  Agreement with Security Holdings LLC, d/b/a Pioneer Industries

During the pendency of the Bankruptcy Case the Debtor and Security Holdings LLC, d/b/a

Pioneer Industries ("Security Holdings"), reached an agreement. Security Holdings exercised its

reclamation rights under Section 546(c) of the Bankruptcy Code on October 2, 2015. Thereafter,

on October 21, 2015, the Debtor and Security agreed to the treatment of its claim as an

Administrative Expense under sections 546(c) and 503(b)(9) of the Bankruptcy Code. (Docket

No. 45).

The Court entered an Order approving the Stipulation on November 16, 2015. (Docket

No. 68.

### D.  Avoidance Actions

The Debtors do not expect additional income from avoidance action. Section 547(b) of the

Bankruptcy Code, 11 U.S.C.A. § 547(b), provides that, the trustee or Debtor in Possession in a

bankruptcy case may avoid any transfer of an interest of the debtor in property: (1) to or for the

benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such

transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before

the date of the filing of the bankruptcy petition, or between 90 days and one year before the date

of the filing of the petition if the creditor was an insider at the time of the transfer; and (5) that

enables the creditor to receive more than the creditor would receive if the case were a case under

11

Chapter 7 of the Bankruptcy Code. After analyzing payments made prior to the bankruptcy petition, the requirements of 547(b) do not appear to be met.

### E.  Collection Actions

The debtors have issued collections letters to those client behind in their payments.  If no response is received the Debtors will be filing adversary proceedings for such collections.

### F.  Assumption or Rejection of Commercial Lease

Debtors' operations are conducted at properties located at Rio Piedras, for American Agencies and Carolina, Puerto Rico, for New Steel. Both properties are owned by Joviri Inc.  and leased to the Debtors. Joviri Inc., is currently owned by Angel Rodriguez Gonzalez, Guillermo Menendez Rodriguez, Lucy Rodriguez and Priscilla Menendez, all related parties to the Debtor. The Debtors requested to the Court and extension of time to assume or reject such commercial lease, which was approved at Docket No. 108.

## 1.8    FINANCIAL INFORMATION

Debtors' financial information previous to their bankruptcy petition is herein provided as **Exhibit 1**. Additionally, the information provided in the Schedules and Statement of Financial Affairs filed with the Court, reflect Debtors' financial situation on the date of the petition. Thereafter, the Consolidated Schedules show the current bankruptcy financial information after the consolidation of both bankruptcy estates

Monthly Operating Reports which are available on the Bankruptcy Court's file reflect the Debtors' post-petition finances. See Docket Nos. 57, 59, 82, 83, 104.  A summary of the Debtors' Monthly Operating Reports is herein attached as **Exhibit 2**.

Debtors herein, urges creditors and parties in interest to review the documents available on file at the Bankruptcy Court, in order to make a conscious decision when voting for or against the proposed Plan of Reorganization.

## ARTICLE II
## ASSETS AND LIABILITIES

**2.1    REAL ESTATE**

Debtors have no interest in real estate.

**2.2    PERSONAL PROPERTY**

These assets are detailed in Debtors' consolidated schedules and are also provided in the Liquidation Analysis Section of this Statement. (See Article IV below). Refer to Liquidation Analysis below for details on personal assets and its value. Debtors' personal property primarily consists of accounts receivable, vehicles, equipment and inventory on hand scheduled in the amount of $7,768,354.

**2.3    SECURED CREDITORS**

Debtors' creditors holding secured claims were listed as follows:

a)  Banco Popular de Puerto Rico ("BPPR"): The Debtors listed BPPR in the Schedules as a secured creditor on account of the line of credit provided to Debtors by BPPR. With liens over the Debtors' inventory and accounts receivable in the total amount of over $2,538,940.00.  BPPR filed secured claim #2 in the total amount of $2,525,927.01.  In its claim BPPR included the total amounts owed by the Debtors on account of the two credit facilities signed by the Debtors under a single loan identified as Loan No. 1025236-0179.

**2.4    PRIORITIES**

The Debtors listed its unsecured priority claims, in its Consolidated Schedules in the total amount of $58,648.03.  These claims arise from Section 507(a)(4) on account of vacations and sick leave of employees of the Debtors to the extent of $12,475.00 for each individual earned within 180 days before the date of the filing of the petition.

The Debtors did not list priority claims arising from Section 507(a)(8).  However, the Internal Revenue Service has filled a Proof of Claim in the amount of $18,917.00.  Detail and treatment to these claims are provided in subsection of Art. VII below; "Payment to Priorities under Section 507 (a)(8) of the Code".

**2.5    GENERAL UNSECURED CREDITORS**

General unsecured creditors were listed in Debtors' Consolidated Schedules in the total amount of $10,696,322.00.  Most of these creditors include suppliers, claims related to litigation or debts arising from loans and or claims made to the Debtor from insiders.  Thereafter, claims have been filed by unsecured creditors.

**ARTICLE III**
**PENDING LITIGATION**

The following is a detail of all pending litigation to which the Debtors were a party as of petition date:

- Damages suit filed by Carlos Aponte Bermudez, Law Suit Case # FDP 2014-0335 marked as "contingent", "unliquidated" and "disputed"; scheduled in the amount of $100,000.00.

- Damages suit filed by Wal-Mart de Puerto Rico, Law Suit Case # FDP 2014-0335 marked as "contingent", "unliquidated" and "disputed"; scheduled in the amount of

$100,000.00.

- Unjust termination suit filed by Jose R. Rivera Cruz, Law Suit Case # EPE 2010-0350 marked as "contingent", "unliquidated" and "disputed"; scheduled in the amount of $74,415.60.

The pending litigation described above will have no additional impact on Debtor's Plan of Reorganization, as the same provides treatment to the allowed claims filed by these creditors. Any claims filed on account of pending litigation which are disputed by the Debtors, will be timely objected and/or estimated.  If the claim claims of Carlos Aponte Bermudez and Wal-Mart are allowed any liability will be paid by current insurance.

## ARTICLE IV
## LIQUIDATION ANALYSIS

One requirement for the confirmation of a plan under Chapter 11 of the Code is that with respect to each impaired class of claims, each claim holder of such class has accepted the plan or will receive or retain under the plan on account of such allowed claim, a value as of the effective date of the plan, that is not less than the amount such claim holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Code, on such date.  The liquidation analysis attached as **Exhibit 3** shows a liquidation value of 5%.  The Debtors is proposing a 25% payment to the unsecured creditors with the 36 months. Debtors contend that this amount is substantially more than liquidation.

For the purpose of determining a liquidation value, the market value as of petition date has been adjusted using the experience of liquidation of assets under bankruptcy cases.

15

Under Debtors' Plan of Reorganization, creditors will receive payment on the terms disclosed in Debtors' Plan of Reorganization and Payment Plan.

**ARTICLE V**
**SUMMARY OF THE PLAN**
**CLASSIFICATION AND TREATMENT OF CLAIMS**

**A.   DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

The Proposed Plan contains 10 classes, all structured in accordance with the provisions of 11 U.S.C. §1122 and §1123. All creditors and other parties in interest are urged to read and consider the Plan in full inasmuch as it represents a proposed legally binding agreement with the Debtors and any other party involved. The classes of creditors are as follows:

**CLASS 1      ADMINISTRATIVE CLAIMS**

This class shall consist of all allowed administrative expense priority claims, as provided under Section 503 (a)(2) of the Code, including, but not limited to, court costs accrued since the petition date, fees to the United States Trustee, fees and expenses of bankruptcy professionals retained by the Debtors, as the same are allowed by the Bankruptcy Court and any unpaid taxes or fees accrued since petition date. This Class will also include any allowed administrative expense related to reclamation rights or deposited goods of creditor's, *i.e.* Security Holdings LLC., d/b/a Pioneer Industries; deposits made by Caribe Tecno, S.E. and any post petition Collective Bargaining Agreement dues for Christmas Bonus vested on current employees.

**CLASS 2      BPPR**

This class shall consist of BPPR's allowed secured claim. The Debtors listed BPPR in the Schedules as a secured creditor with liens over the Debtors' inventory and

accounts receivable in the total amount of over $2,538,940.00 on account of certain lines of credit provided to Debtors by BPPR.  BPPR filed secured claim #2 in the total amount of $2,525,927.01.  In its claim BPPR included the total amounts owed by the Debtors on account of the two credit facilities signed by the Debtors under a single loan identified as Loan No. 1025236-0179.  Throughout the pendency of the bankruptcy petition certain payments have been made to BPPR to reduce the debt, under the agreement for the Use of Cash Collateral.

**CLASS 3**     **LEASES AND EXECUTORY CONTRACTS**

This class includes different kind of contracts which are identified in Article VIII below under the provisions for executory contracts.  Each contract will be assume or rejected prior to confirmation date.

**CLASS 4**      **PRIORITY CLAIMS**

This class shall consist of all allowed administrative priority claims pursuant to Section 507(a)(4) on account of vacations and sick leave of employees of the Debtors to the extent of $12,475.00 for each individual earned within 180 days before the date of the filing of the petition.  The Debtors listed these claims on their schedules with an amount of $58,648.03.  No other claims have been filed at this juncture. The Bar date to file these claims expires on January 17, 2016.  Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class.

**CLASS 5**     **GENERAL UNSECURED GOVERNMENTAL CLAIMS**

This Class shall include any unsecured claim filed by a governmental entity including but not limited to the Puerto Rico State Insurance Fund . The Bar date to file claims expires on March 14, 2016.

**CLASS 6**    **OTHER GENERAL UNSECURED CLAIMS NOT INCLUDING REJECTION CLAIMS**

This class shall consist of all other allowed general unsecured claims including any unsecured portion to the claims or debts to the employees.    Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class.

**CLASS 7**    **GENERAL UNSECURED REJECTION CLAIMS**

This Class shall consist of any rejection claims arising out of the rejected executory contracts.

**CLASS 8**    **GENERAL UNSECURED CONTINGENT CLAIMS RELATED TO LITIGATION**

This Class shall consist of any allowed contingent related to prepetition litigation in which the Debtors were a party.    Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class.

**CLASS 9**    **DEBTS TO STOCKHOLDERS OF PREFFERED CLASS A and B SHARES**

This class shall consist of any allowed claims relating Preferred Stock Class A and B.

**CLASS 10**    **EQUITY SECURITY HOLDERS AND/OR OTHER INTERST HOLDERS**

18

This class solely includes all equity security and interest holders which are the owners of the common stock of American Agencies Co Inc. and New Steel Inc. This class will receive no dividend at all under the Plan of Reorganization and will not be allowed to vote.

## B. TREATMENT TO CLASSES

**CLASS 1      ADMINISTRATIVE CLAIMS**

This class shall consist of all allowed administrative expense priority claims, as provided under Section 503 (a)(2) of the Code, including, but not limited to, court costs accrued since the petition date, fees to the United States Trustee, fees and expenses of bankruptcy professionals retained by the Debtors, as the same are allowed by the Bankruptcy Court and any unpaid taxes or fees accrued since petition date. This Class will also include any allowed administrative expense related to reclamation rights or deposited goods of creditor's, *i.e.* Security Holdings LLC., d/b/a Pioneer Industries; deposits made by Caribe Tecno, S.E. and any post petition Collective Bargaining Agreement dues for Christmas Bonus vested on current employees. This Class will be paid on effective date or by agreement of the parties.

**This Class is not impaired**

**CLASS 2      BPPR**

This class shall consist of BPPR's allowed secured claim. The Debtors listed BPPR in the Schedules as a secured creditor with liens over the Debtors' inventory and accounts receivable in the total amount of over $2,538,940.00 on account of certain

19

lines of credit provided to Debtors by BPPR. BPPR filed secured claim #2 in the total amount of $2,525,927.01. In its claim BPPR included the total amounts owed by the Debtors on account of the two credit facilities signed by the Debtors under a single loan identified as Loan No. 1025236-0179. Throughout the pendency of the bankruptcy petition certain payments have been made to BPPR to reduce the debt, under the agreement for the Use of Cash Collateral. This Class will be paid in full, from the sale of collateral, within a maximum of 36 months and interest will be paid under the same loan rate. Debtors will continue to pay monthly instalments of $16,670 on a monthly basis, independent to additional payments to principal due to sale of collateral until full payment of the debt.

**This class is impaired.**

**CLASS 3**   **LEASES AND EXECUTORY CONTRACTS**

This class includes different kind of contracts which are identified in Article VIII below under the provisions for executory contracts. Each contract will be assume or rejected prior to confirmation date. All those contracts assumed will received payment in full or as agreed of any amount owed within the term agreed with such other party, but in no event later than 36 months from the Effective Date. Those rejected contracts will receive payment for rejection damages as provided under the Bankruptcy Code for each specific kind of contract, under Class 7 below.

**This class is impaired.**

**CLASS 4**   **PRIORITY CLAIMS**

This class shall consist of all allowed administrative priority claims pursuant to Section 507(a)(4) on account of vacations and sick leave of employees of the

20

Debtors to the extent of $12,475.00 for each individual earned within 180 days before the date of the filing of the petition. The Debtors listed these claims on their schedules with an amount of $58,648.03. No other claims have been filed at this juncture. Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class. The Debt estimated under this class is $ 58,648.03.

The allowed claims under this class will be paid in full within 36 months of the effective date

**This class is impaired.**

**CLASS 5      GENERAL UNSECURED GOVERNMENTAL CLAIMS**

This Class shall include any unsecured claim filed by a governmental entity including but not limited to the Puerto Rico State Insurance Fund. Claims under this class will be paid 25% of the allowed claim within 36 months from the effective date.

**This class is impaired.**

**CLASS 6      OTHER GENERAL UNSECURED CLAIMS NOT INCLUDING REJECTION CLAIMS**

This class shall consist of all other allowed general unsecured claims including any unsecured portion to the claims or debts to the employees.      Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class. Debts under this class will be paid 25% of the allowed claim within 36 months from the effective date.

**This class is impaired.**

21

CLASS 7        **GENERAL UNSECURED REJECTION CLAIMS**

This Class shall consist of any rejection claims arising out of the rejected executory contracts.    Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class. Debts under this class will be paid 25% of the allowed claim within 36 months from the effective date. **This class is impaired.**

CLASS 8        **GENERAL UNSECURED CONTINGENT CLAIMS RELATED TO LITIGATION**

This Class shall consist of any allowed contingent related to prepetition litigation in which the Debtors were a party.   Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class.  As identified in the Payment Schedule included herein, any liability covered by insurance companies will be paid by the insurance company, those not covered will be paid by the Debtors, if such claims become a liquidated claim and as such will receive 25% of the allowed claim within 36 months from the effective date .

**This class is impaired.**

CLASS 9        **DEBTS TO PREFFERED CLASS A and B**

This class shall consist of any allowed claims relating Preferred Stock Class A and B.  As identified in the Payment Schedule included herein,  these claimants will receive 25% of the allowed claim within 36 months from  the effective date .

**This class is impaired.**

22

**CLASS 10**     **EQUITY SECURITY HOLDERS AND/OR OTHER INTERST HOLDERS**

This class solely includes all equity security and interest holders which are the owners of the stock of American Agencies Co Inc. and New Steel Inc. This class will receive no dividend at all under the Plan of Reorganization and will not be allowed to vote.

*(All creditors are requested to review the Payment Plan attached herein as Exhibit #4, which provides for the participants included in each class, their claim amount as of this date and the proposed payment under the Plan)*

### ARTICLE VI
### IMPAIRMENT OF EXISTING CLAIMS AND INTERESTS

As provided by 11 U.S. C. §1124, a class of claims of interests is impaired under a plan unless with respect to each claim of interest of such a class, the Plan:

1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

2) Notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default.

     a. cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

     b. reinstates the maturity of such claim or interest as such maturity existed before such default;

    c.  compensated the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

    d.  Does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**ARTICLE VII**
**PAYMENT TO PRIORITIES UNDER SECTION 507(a)(8) OF THE CODE**

All unsecured priority governmental claims pursuant to Section 507(a)(8) of the Code, as the same are allowed, and any priority portion of any debt to all of the governmental units as they are approved and ordered to be paid by the Court, will receive payment in full of their allowed claim and/or the agreed amount plus prevailing prime rate interest over a period ending no later than five (5) years after the date of the order for relief or as agreed by the parties. The Debtor did not schedule any claims pursuant to this section. Nevertheless, as of this date claims have been filed in the amount of $47,228.47 by the Internal Revenue Service.

The Bar date to file claims expires on March 14, 2016, for a governmental unit. Any timely claims filed after the filing of this Disclosure Statement will be reconciled and included under this class.

**ARTICLE VIII**
**LEASES AND EXECUTORY CONTRACTS**

Contracts to which Debtors were a party as of Petition Date, are listed on Debtors' Schedules. Pursuant to the information provided in Debtors' Amended Schedule G, the Debtor maintains the following executory contracts within the following categories:

A)    **Leases**

– Joviri, Inc., is the Debtors landlord for both locations that the Debtors operate out of, *i.e.* Rio Piedras, PR and Carolina, PR  As of the filing of this document  the Debtor has requested an extension of 90 days that is until April 15, 2016, to continue discussions with this entity as to new terms and conditions, under the terms of the Plan.  Docket No. 108.  **See Exhibit 5.**

B)    **Exclusive Distributions Rights**

– ASSA, Inc., the Debtors are an exclusive representative of fittings manufactured by this entity.

– Cornell Iron Works, Inc., the Debtors are an exclusive representative of fittings manufactured by this entity.

– Detex Corp, the Debtors are an exclusive representative of fittings manufactured by this entity.

– Knickerbocker Apart. Corp., the Debtors are an exclusive representative of the doors manufactured by this entity.

– McKinney Products Co., the Debtors are an exclusive representative of the fittings manufactured by this entity.

– Sargent MFG. Co. the Debtors are an exclusive representative of the fittings manufactured by this entity.

– Security Holdings LLC., d/b/a Pioneer Industries, the Debtors are an exclusive representative of the doors manufactured by this entity.

C)   **Construction Contracts**

–   Adrilex Construction Services, Inc., the Debtors have a contract to manufacture and install certain steel structures. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors and the retainage owed to the Debtors.

–   Cancer Center Hospital, contract to fabricate and install certain steel structures. This contract is completed and the only obligation pending is the payment of the retainage to the Debtors.

–   Caribe Tecno, S.E., contract to fabricate and install certain steel structures at the Hospital San Fernando. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.

–   Desarrollos Metropolitanos, contract to fabricate and install certain steel structures at the Instituto Aeronautica & Areoespacial. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.

–   DPM Corporation, contract to fabricate and install certain steel structures at the Urb. El Veterano and at Caguas, Puerto Rico. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.

–   Hemco Construction Corp. contract to fabricate and install certain steel structures at the Plaza Norte Hatillo. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.

–   Engineered Parts & Services, Inc., contract to fabricate and install certain steel structures at the Parque Icono las Cascadas. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.

26

Case:15-07088-BKT11    Doc#:109    Filed:01/13/16    Entered:01/13/16 18:12:55    Desc: Main
Document    Page 27 of 95

- F&R Construction Corp., contract to fabricate and install certain steel structures at the Escuela Vocacional Superior located at Bo. San Isidro. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.
- ORPI, Inc., contracts to reinforce certain steel structures at the HUYKE # 114 located in Hato Rey. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.
- SSW Engineering & Construction, LLC., contract to fabricate and install certain steel structures at the Mall of San Juan. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.
- SSW Engineering & Construction, LLC., contract to fabricate and install certain steel structures at Nordstrom located in the Mall of San Juan. This contract is completed and the only obligation pending is the payment of the last invoice issued by the Debtors.

**D)    Collective Bargaining Agreements**

- Debtors have a collective bargaining agreement with United Steel Workers.

**E)    Pension Administrators**

- Caribbean Pension Plan Administrator, contract to administer the Debtors' employee pension plan. This contract is terminated the only obligation pending is administrative closing.

**F)    Other Executory Contracts**

- Axesa de PR, provider of an information services contract to the Debtors.

- Cockram Projects, Inc., contract to fabricate and install certain steel structures at the Puerto Rico R&D and Parent Seed Facility.

- Omega Engineering, LLC., contract to fabricate and install certain steel structures at the San Rosa Mall.

During the pendency of the instant bankruptcy proceeding, the Debtor has maintained all of the above mentioned agreements in full force and effect. The Debtors will be assuming or rejecting each listed contract on or before confirmation date.

Assumption of Designated Executory Contracts and Unexpired Leases.

Pursuant to Sections 1123 (b)(2) and 365 (a) of the Bankruptcy Code, the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption, as of the Effective Date, of each executory contract or unexpired lease to which the Debtors is a party for which a motion to assume is pending at the time of the Confirmation Date. Unless otherwise provided in a pending motion to assume, on the Effective Date or as promptly as possible thereafter, the Debtors shall cure any defaults under such assumed executory contracts or unexpired leases to the extent required by Section 365 of the Bankruptcy Code. In addition, to the extent the Debtors has rights of setoff against any of the parties to these leases and contracts, the Debtors reserves the right to cure any defaults under such leases and contracts by exercising this right of setoff.

Rejection of Executory Contracts and Unexpired Leases.

Pursuant to Sections 1123 (b)(2) and 365 (a) of the Bankruptcy Code, the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection, as of the Effective Date, of each executory contract and/or unexpired lease to which the Debtors has filed a motion to reject such executory contract or unexpired lease.

Executory Contracts and Unexpired Leases not Assumed or Rejected to Date. Any executory contract or unexpired lease (other than insurance policies) which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated in the Disclosure Statement, listing an executory contract or unexpired lease to be assumed at the time of confirmation of this Plan, shall be deemed rejected and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

Rejection Damage Claims. If the rejection of an executory contract or unexpired lease by the Debtors results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not hereto evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors' Estate, or its respective properties or agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the earlier of, 30 days after the entry of the Order approving the rejection of the contract or unexpired lease, if such rejection is granted before Confirmation Date, or 30 days after Confirmation Date if the Confirmation Order constitutes approval of the rejection. Unless otherwise ordered by the Court or provided in the Plan, all such Allowed Claims for which proofs of claim are timely filed will be treated as Class 6 subject to the provisions of the Plan and to Section 502(b)(6) of the Bankruptcy Code, to the extent applicable. The Debtors shall have the right to object to any such rejection damage claims filed in accordance with this Section.

29

Post-Petition Agreements Unaffected By Plan.

Except as otherwise provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by the Debtors after the Petition Date that were otherwise valid, effective and enforceable against the Debtors as of the Confirmation Date.

## ARTICLE IX
## PROOF OF CLAIMS NOT FILED

The Plan provides that where a proof of claim has not been filed, the Allowed Claim shall be in the amount appearing in the Schedules filed by the Debtors, provided however, that the scheduled amount is not shown as unliquidated, contingent or disputed, in which case no amount will be allowed unless the Debtors has notified such creditors and such creditors have filed a timely proof of claim. To the extent that no debt was listed on Debtors' schedules and the creditor was listed for notice purposes only and such creditor did not file a proof of claim, no payment will be provided.

## ARTICLE X
## OBJECTIONS TO CLAIMS

The Debtors, at the option of the Debtors or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount within 30 days prior or after the Confirmation hearing.  If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing the class to which such claim belongs.

Since the bar date for this case has not expired the Debtors hereby reserves the right to object to any proof of claim filed before the expiration of said date.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONSUMMATION

Before the consummation of the Plan takes place, the Confirmation Order should be a final order. Once the Plan is confirmed by a final order, the provisions of the Plan will be the new contract between the parties, even in case of default thereafter. In the event that the conditions for the confirmation of the Plan are not satisfied, this Plan will not be confirmed and shall be null and void and the rights of all holders of claims and interests, and of the Debtors, shall be restored as of the date immediately preceding the Petition Date.

## ARTICLE XII
## NON-ACCEPTANCE OF THE PLAN
## (CRAMDOWN)

If all applicable requirements of 11 U.S.C. §1129(a), other than subsection (a)(8), are met with respect to the Plan, the Debtors hereby requests that the Court confirms this Plan, notwithstanding the requirements of said section, if the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted this Plan.

## ARTICLE XIII
## MEANS OF EXECUTION OF THE PLAN
## AND MANAGEMENT OF DEBTORS

On the Effective Date of the Plan, the distribution, administration and management of Debtors' affairs, collection of moneys, and distribution to creditors, unless otherwise provided herein, will be under the control and supervision of the current officers, who will assume the same roles they have assumed throughout this reorganization process. They will receive the same levels of compensation that each individual was receiving on accounts of wages earned before the filing of the Bankruptcy Petition.

31

Funding of the plan will be from the sale of Debtors' assets not otherwise necessary for its future operations of Hardware and Doors[2]; along with collections of accounts receivables. The operations of New Steel and those related to New Steel but carried out by American Agencies will also cease and all assets will be sold, including the machinery and inventory. The Debtors expect to be able to sell these assets within a period of three (3) years from the effective date that will provide distribution to all creditors. Please refer to **Exhibit No. 3 and 4, supra,** which contains list of assets and payments under the Plan.

## ARTICLE XIV
## PROVISIONS FOR THE MODIFICATION OF THE PLAN

The Debtors may propose amendments of modification of the Plan at any time prior to its confirmation, upon notice to creditors and parties in interest. After confirmation of the Plan, the Debtors may, with the approval of the Court and as long as it does not adversely affect the interests of the creditors, remedy any defect or omission, in such manners as may be necessary to carry out the purposes and effects of the same. If by any chance the Plan of Reorganization is to be amended, the creditors shall have a reasonable opportunity to review it with enough time prior to any hearing on confirmation.

## ARTICLE XV
## CLOSING THE CASE

At such time as the case has been substantially consummated, this case shall be closed. In order for the case to be closed, the Debtors shall file an application for final decree showing that the case has been fully administered and the Plan has been substantially consummated. The Court

---

[2] The Debtor has received a preliminary offer to purchase the operations of hardware and doors. If such offer materialized a supplement to this Disclosure Statement will be filed.

shall conduct a hearing upon application thereon and after notice to all creditors and parties in interest. Thereafter, an order approving the Debtors' report and closing of the case shall be entered.

## ARTICLE XVI
## RELEASE AND DISCHARGE OF CLAIMS

Discharge. Except as otherwise expressly provided in the Plan or in Section 1141(d)(1) of the Bankruptcy Code, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan of Reorganization are in full and final satisfaction, settlement, release and discharge as against the Debtors of any debt of the Debtors that arose before the date of Confirmation Date, and any debt of the Debtors of a kind specified in Section 502(g), 502(h), or 502 (i) of the Code, and all claims against the Debtors or its Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, other than the interest proposed in Debtors' plan, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Code, (ii) such Claim is Allowed under Section 502 of the Code, or (iii) the holder of such Claim has accepted the Plan.

Injunction Relating to the Confirmed Plan. As of the Effective Date, all persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtors and their Estates while payments under the Plan are pending, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the confirmed Plan, except to the extent expressly permitted under the Plan or under any specific order entered by the Bankruptcy Court.

Setoffs. Except as otherwise provided in this Plan, nothing contained in this

Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver

or release by the Estate of any rights of setoff the Estate may have against any person.

Transfer of Properties under the Plan. The transfer of any property (real or personal) to be

made under the confirmed plan of reorganization may not be taxed under any law imposing a

stamp tax or similar tax, under the provisions of 11 U.S.C. 1146.

## ARTICLE XVII
## OTHER PROVISIONS

Confirmation of the Plan and the Confirmation Order will vest title of all property of the

Estate in Debtors and will constitute final settlement of payment to all creditors.

All injunctions or stays provided for in the bankruptcy case at bar under Sections 105 and 362 of

the Bankruptcy Code (11 U.S.C.), or otherwise, and in existence on the Confirmation Date shall

remain in full force and effect until the Effective Date.

The provisions of this Plan shall bind all claims against Debtors of whatever nature,

including any claim arising from the rejection of any executory contract, or any other action.

Any holder of a claim or interest who fails to file an objection in writing to the provisions of the

Plan, which is filed with the Court and served upon counsel for the Debtors, not later than the date

set for the confirmation of the plan, shall be deemed to have accepted its classification and to be

bound by the proposed Plan.

All actions taken by the Debtors with respect to any person shall not be construed to release,

waive, discharge, compromise or in any other way satisfy any claim, except those subject to any

agreement between the parties. Upon completion of the requirements of the Plan and the order of

34

confirmation, the Debtors and/or the claimant shall execute all corresponding documents and cooperate fully to reflect, release and/or reaffirm all the obligations herein provided.

There are possible risks under the proposed Plan of Reorganization, considering that the construction industry has fallen in recent years, time to sell the property might be enlarged. Some of the changes that may impact the Plan as proposed concern the time it may take to finalize the sale of large quantities of inventory not necessary for Debtors' operations.

The Plan shall become effective upon the Effective Date of the Plan, which is 30 days after the order confirming the plan becomes a final order and shall be the date on which there shall be made certain initial cash payments under the plan.

To the extent that any term of this Disclosure Statement varies from the terms of the Plan, the terms of the Plan shall govern.

The Debtors do not expect any tax consequences other than those already considered in the Plan and its cash flows.

**ARTICLE XVIII**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by the Plan, to enable the Debtors to substantially consummate any and all proceedings which it may bring or after the entry of the order of confirmation, in order to carry out the provisions of the Plan and or any related matter.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 13 of January, 2016.

Omir Mendez
President

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the parties appearing in said system including the US Trustee and by the United States Postal Service to all those parties who have requested a copy and are not within the electronic notification service.

**C. CONDE & ASSOC.**
Attorney for the Debtors
San José Street #254, 5th Floor
San Juan, P.R. 00901-1253
Tel: (787) 729-2900
Fax: (787) 729-2203
E-mail: condecarmen@condelaw.com
/S/ Carmen D. Conde Torres
Carmen D. Conde Torres
USDC No.: 207312

EXHIBIT
1

Blumberg No. 5116

# TAX RETURNS FOR THE YEAR 2014

Form 180.20 Rev. 02.15

**2014**  COMMONWEALTH OF PUERTO RICO
DEPARTMENT OF THE TREASURY  **2014**

**COPY**

# Corporation Income Tax Return

TAXABLE YEAR BEGINNING ON
1/1___ 2014 AND ENDING ON ___12/31___ 2014

☐ AMENDED RETURN

Payment Stamp

Liquidator: _____ Reviewer: _____

Field audited by: _____

Date ___ / ___ / ___

R M N

| | |
|---|---|
| Taxpayer's Name | Employer Identification Number |
| American Agencies Co., Inc. | 66-0405406 |
| Postal Address | Department of State Registry No. |
| | 56144 |
| PO Box 9021216 | Industrial Code  Municipal Code |
| | 793 |
| San Juan,   PR   00902-1216 | Merchant's Registration Number |
| Zip Code | 0037629-0023 |
| "Place Label here". | |

RECIBIDO 1 5 ABR. 2015 PLANILLA CON PAGO — DEPARTAMENTO DE HACIENDA — Estado Libre Asociado de Puerto Rico — Oficina de Correspondencia y Conservación

Location of Principal Industry or Business - Number, Street, City
Urbanizacion Industrial El Cinco #1554 Ponce De Leon
Rio Piedras PR 00926

Telephone Number - Extension
( 787 ) 758 - 6300

Receipt Amount

Type of Principal Industry or Business (i.e. Hardware, Cafeteria, etc.)
Construccion

Date Incorporated
Day 5 / Month 3 / Year 1984

Type of Entity
Corporacion

Check the corresponding box, if applicable
☐ First return    ☐ Last return

CHANGE OF ADDRESS
☐ Yes    ☒ No

Place Incorporated
Puerto Rico

Indicate if you are member of a group of related entities
☒ Yes    ☐ No

Contracts with Governmental Entities
☒ Yes    ☐ No

2015 RETURN
☐ Spanish  ☐ English

E-mail Address of the contact person
structuralsteel@americanagencies.com

Group Number
11284

| | | |
|---|---|---:|
| **Part I** | | |
| 1. Net operating income (or loss) (From Part V, line 54) | (1) | (1,367,039) 00 |
| 2. Less: Net operating loss deduction from preceding year (Submit detail) | (2) | 2,925,977 00 |
| 3. Net income (or loss) | (3) | (4,293,016) 00 |
| **Part II** | | |
| 4. Less: Dividends received from domestic corporations (See instructions) | (4) | 0 00 |
| 5. Net income subject to normal tax (Subtract line 4 from line 3) | (5) | (4,293,016) 00 |
| 6. Surtax net income deduction (Check here if comes from Form AS 2652.1 ☐ ) | (6) | 0 00 |
| 7. Net income subject to surtax (Subtract line 6 from line 5) | (7) | 0 00 |
| **Part III** | | |
| 8. Normal tax (Multiply line 5 by: ☒ 20% ☐ 15% ☐ 10%) | (8) | 0 00 |
| 9. Surtax (See instructions) | (9) | 0 00 |
| 10. Total Tax (Add lines 8 and 9) | (10) | 0 00 |
| 11. Alternative Tax - Capital Gains and Preferential rates (Schedule D Corporation, Part VI, line 47) | (11) | 0 00 |
| 12. Tax Determined (Line 10 or 11, whichever is smaller, provided that line 11 is more than zero) | (12) | 0 00 |
| 13. Recapture of credit claimed in excess (Schedule B Corporation, Part I, line 3) | (13) | 0 00 |
| 14. Tax credits (Schedule B Corporation, Part II, line 25) | (14) | 0 00 |
| 15. Tax liability before alternative minimum tax (Subtract line 14 from the sum of lines 12 and 13) | (15) | 0 00 |
| 16. Alternative minimum tax (Schedule A Corporation, Part VI, line 41) | (16) | 0 00 |
| 17. Branch profits tax (Form AS 2879, line 11) | (17) | 0 00 |
| 18. Deemed dividend tax (See instructions) (Form AS 2877, Deemed Dividend Tax, line 11) | (18) | 0 00 |
| 19. Tax on income subject to preferential rates under special acts (Schedule D Corporation, Part VII, line 50) | (19) | 0 00 |
| 20. Additional tax on gross income (See instructions) | (20) | 61,871 00 |
| 21. Additional tax on gross income in case of financial business (See instructions) | (21) | 0 00 |
| 22. Total Tax Liability (Add lines 15 through 21) | (22) | 61,871 00 |
| 23. Less: Other Payments and Withholdings (Schedule B Corporation, Part III, line 11) | (23) | 53,340 00 |
| 24. Balance of tax due (If line 22 is larger than line 23, enter the difference here, otherwise, on line 26) | | |
| a) Tax | (24a) | 8,531 00 |
| b) Interest | (24b) | 0 00 |
| c) Surcharges | (24c) | 0 00 |
| d) Total (Add lines 24(a) through 24(c)) | (24d) | 8,531 00 |
| 25. Addition to the Tax for Failure to Pay Estimated Tax (Schedule T Corporation, Part II, line 21) | (25) | 0 00 |
| 26. Excess of tax paid or withheld (See instructions) | (26) | 0 00 |
| 27. Amount paid with this return (Add lines 24(d) and 25) (See instructions) | (27) | 8,531 00 |
| 28. Amount overpaid (Subtract line 23 from the sum of lines 22 and 25. Distribute line 28 among line A, B, C or D): | | |
| A. To be credited to estimated tax for 2015 | (28A) | 0 00 |
| B. Contribution to the San Juan Bay Estuary Special Fund | (28B) | 0 00 |
| C. Contribution to the Special Fund for the University of Puerto Rico | (28C) | 0 00 |
| D. To be refunded | (28D) | 0 00 |

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

Form 480.20 · Rev. 02.15 — Corporation · Page 2

## Part IV

| | | | | | |
|---|---|---|---|---|---|
| 1. Net sales. Less: Cost of goods sold or direct costs of production | | | | (1) | 17,652,360 00 |
| 2. Inventory at the beginning of the year ☐ 1 "C" ☐ 2 "C" or "MV" | | | | | |
| (a) Materials | | (2a) | 0 00 | | |
| (b) Goods in process | | (2b) | 0 00 | | |
| (c) Finished goods or merchandise | | (2c) | 2,329,570 00 | | |
| 3. Purchase of materials or merchandise | | (3) | 10,212,533 00 | | |
| 4. Direct wages | | (4) | 925,552 00 | | |
| 5. Other direct costs (Detail in Part VI) | | (5) | 4,752,087 00 | | |
| 6. Total cost of goods available for sale (Add lines 2 through 5) | | (6) | 18,219,742 00 | | |
| 7. Less: Inventory at the end of the year ☐ 1 "C" ☐ 2 "C" or "MV" | | | | | |
| (a) Materials | | (7a) | 0 00 | | |
| (b) Goods in process | | (7b) | 0 00 | | |
| (c) Finished goods or merchandise | | (7c) | 2,010,599 00 | 2,010,599 00 | |
| 8. Total cost of goods sold or direct costs of production (Subtract line 7 from line 6) | | | | (8) | 16,209,143 00 |
| 9. Gross profit on sales or production (Subtract line 8 from line 1) | | | | (9) | 1,443,217 00 |
| 10. Net capital gain (Schedule D Corporation, Part V, line 28) | | | | (10) | 0 00 |
| 11. Net gain or (loss) from the sale of property other than capital assets (Schedule D Corporation, Part VIII, line 51) | | | | (11) | 0 00 |
| 12. Rent | | | | (12) | 0 00 |
| 13. Interest | | | | (13) | 0 00 |
| 14. Income from services or commissions | | | | (14) | 0 00 |
| 15. Dividends from corporations: (a) Domestic ___0___ (b) Foreign ___0___ | | | | (15) | 0 00 |
| 16. Distributable share on net income from partnerships and special partnerships (Schedule R Corporation, Part II, line 14) | | | | (16) | 0 00 |
| 17. Taxable farming income (Schedule S Corporation, Part I, line 9) | | | | (17) | 0 00 |
| 18. Freight and fares | | | | (18) | 0 00 |
| 19. Miscellaneous income | | | | (19) | 25,052 00 |
| 20. Total gross income (Add lines 9 through 19) | | | | (20) | 1,468,269 00 |
| 21. Less: Exempt amount under Act 135-2014 (See instructions) | | | | (21) | 0 00 |
| 22. Total income after the exemption under Act 135-2014 (Subtract line 21 from line 20) | | | | (22) | 1,468,269 00 |

## Part V

| | | (A) | (B) |
|---|---|---|---|
| 23. Compensation to officers (See instructions for Part X) | (23) | 0 00 | 0 00 |
| 24. Salaries, commissions and bonuses to employees (See instructions) | (24) | 0 00 | 1,092,217 00 |
| 25. Commissions to businesses | (25) | 0 00 | 0 00 |
| 26. Social security tax (FICA) | (26) | 0 00 | 86,868 00 |
| 27. Unemployment tax | (27) | 0 00 | 8,890 00 |
| 28. State Insurance Fund premiums | (28) | 0 00 | 0 00 |
| 29. Medical or hospitalization insurance | (29) | 0 00 | 77,084 00 |
| 30. Insurances | (30) | 0 00 | 94,637 00 |
| 31. Interest (See instructions) | (31) | 0 00 | 188,084 00 |
| 32. Rent | (32) | 0 00 | 41,883 00 |
| 33. Property tax: (a) Personal _197,370_ (b) Real _0_ | (33) | 0 00 | 197,370 00 |
| 34. Other taxes, patents and licenses (See instructions) | (34) | 0 00 | 53,092 00 |
| 35. Losses from fire, storm, other casualties or theft (See instructions) | (35) | 0 00 | 0 00 |
| 36. Automobile expenses (Mileage _____ 0 ) (See instructions) | (36) | 0 00 | 0 00 |
| 37. Other motor vehicle expenses (See instructions) | (37) | 0 00 | 67,091 00 |
| 38. Meal and entertainment expenses (Total _43,262_ ) (See instructions) | (38) | 0 00 | 21,631 00 |
| 39. Travel expenses | (39) | 0 00 | 15,649 00 |
| 40. Professional services | (40) | 0 00 | 142,425 00 |
| 41. Contributions to pension or other qualified plans (See instructions. Submit Form AS 6042.1) | (41) | 0 00 | 62,748 00 |
| 42. Depreciation and amortization (See instructions. Submit Schedule E) | (42) | 0 00 | 14,710 00 |
| 43. Bad debts (See instructions) | (43) | 0 00 | 0 00 |
| 44. Charitable contributions (See instructions) | (44) | 0 00 | 0 00 |
| 45. Repairs (See instructions) | (45) | 0 00 | 14,307 00 |
| 46. Royalties | (46) | 0 00 | 0 00 |
| 47. Management fees | (47) | 0 00 | 0 00 |
| 48. Deduction for employers who employ handicapped persons (See instructions) | (48) | 0 00 | 0 00 |
| 49. Contributions to educational contribution accounts for the employees' beneficiaries (See instructions) | (49) | 0 00 | 0 00 |
| 50. Expenses in property leased to the Puerto Rico Industrial Development Company or Warehouse of the Puerto Rico Trade and Export Company (See Instructions) | (50) | | |
| 51. Additional tax on gross income paid on or before the filing of the return (See instructions) | (51) | 0 00 | 61,871 00 |
| 52. Other deductions (See instructions) | (52) | 0 00 | 594,751 00 |
| 53. Total deductions (Add lines 23 through 52, Columns A and B, respectively) | (53) | 0 00 | 2,835,308 00 |
| 54. Net operating income or (loss) for the year (Subtract line 53 from line 22, Column B. Enter here and in Part I, line 1) | (54) | | (1,367,039) 00 |

## Part VI

| Item | | Amount | Item | | Amount |
|---|---|---|---|---|---|
| 1. Salaries, wages and bonuses | (1) | 0 00 | 8. Repairs | (8) | 5,072 00 |
| 2. Social security tax (FICA) | (2) | 70,166 00 | 9. Utilities | (9) | 0 00 |
| 3. Unemployment tax | (3) | 18,481 00 | 10. Rent | (10) | 1,119,902 00 |
| 4. State Insurance Fund premiums | (4) | 0 00 | 11. Depreciation (Submit Schedule E) | (11) | 16,013 00 |
| 5. Medical or hospitalization insurance | (5) | 54,104 00 | 12. Other expenses (Submit detail) | (12) | 3,467,646 00 |
| 6. Other Insurance | (6) | 703 00 | 13. Total other direct costs (Add lines 1 through 12. Same as Part IV, line 5) | (13) | 4,752,087 00 |
| 7. Excise taxes / Use taxes | (7) | 0 00 | | | |

Retention Period: Ten (10) years                Reproducido por CEGsoft (EPRT)

Form 480.20  Rev. 02.15 | | Corporation - Page 3

## Corporation - Comparative Balance Sheet ㊲

| Assets | | Beginning of the Year | Total | | Ending of the Year | Total |
|---|---|---|---|---|---|---|
| 1. Cash on hand and in banks | (1) | | 670,272 00 | (1) | | 531,088 00 |
| 2. Accounts receivable | (2) | 3,492,518 00 | | (2) | 5,110,195 00 | |
| 3. Less: Reserve for bad debts | (3) | ( 50,000 00 ) | 3,442,518 00 | (3) | ( 50,000 00 ) | 5,060,195 00 |
| 4. Inventories | (4) | | 2,329,570 00 | (4) | | 2,010,599 00 |
| 5. Other current assets | (5) | | 0 00 | (5) | | 0 00 |
| 6. Notes receivable | (6) | | 0 00 | (6) | | 0 00 |
| 7. Investments | (7) | | 0 00 | (7) | | 0 00 |
| 8. Depreciable assets | (8) | 1,467,087 00 | | (8) | 1,452,677 00 | |
| 9. Less: Reserve for depreciation | (9) | ( 1,391,594 00 ) | 75,493 00 | (9) | ( 1,352,501 00 ) | 100,176 00 |
| 10. Land | (10) | | 0 00 | (10) | | 0 00 |
| 11. Other long-term assets | (11) | | 594,553 00 | (11) | | 306,420 00 |
| 12. Total Assets | (12) | | 7,112,406 00 | (12) | | 8,008,478 00 |
| **Liabilities and Stockholder's Equity** | | | | | | |
| **Liabilities** | | | | | | |
| 13. Accounts payable | (13) | 5,212,858 00 | | (13) | 5,623,647 00 | |
| 14. Accrued expenses (not paid) | (14) | 504,663 00 | | (14) | 346,611 00 | |
| 15. Other current liabilities | (15) | 0 00 | | (15) | 0 00 | |
| 16. Long-term notes payable | (16) | 2,443,300 00 | | (16) | 3,502,554 00 | |
| 17. Other long-term liabilities | (17) | 2,401,586 00 | | (17) | 3,367,237 00 | |
| 18. Total Liabilities | (18) | | 10,562,407 00 | (18) | | 12,840,049 00 |
| **Stockholder's Equity** | | | | | | |
| 19. Capital stock | | | | | | |
| (a) Preferred stocks | (19a) | 0 00 | | (19a) | 0 00 | |
| (b) Common stocks | (19b) | 18,100 00 | | (19b) | 18,100 00 | |
| 20. Additional paid in capital | (20) | 0 00 | | (20) | 0 00 | |
| 21. Retained earnings | (21) | (2,813,541) 00 | | (21) | (4,201,407) 00 | |
| 22. Reserve | (22) | (654,560) 00 | | (22) | (648,264) 00 | |
| 23. Total Stockholder's Equity | (23) | | (3,450,001) 00 | (23) | | (4,831,571) 00 |
| 24. Total Liabilities and Stockholder's Equity | (24) | | 7,112,406 00 | (24) | | 8,008,478 00 |

## Reconciliation of Net Income (or Loss) per Books with Net Taxable Income (or Loss) per Return ㊳

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. Net income (or loss) per books | (1) | (1,387,866) 00 | 7. Income recorded on books this year not included on this return (Itemize, use schedule if necessary) | | | |
| 2. Income tax per books | (2) | 61,871 00 | (a) Exempt interest | | 0 | |
| 3. Excess of capital losses over capital gains | (3) | 0 00 | (b) See Annex | | 8,325 | |
| 4. Taxable income not recorded on books this year (Itemize, use schedule if necessary) | | | (c) | | 0 | |
| (a) _____ 0 | | | (d) | | 0 | |
| (b) _____ 0 | | | Total | (7) | | 8,325 00 |
| (c) _____ 0 | | | 8. Deductions on this tax return not charged against book income this year (Itemize, use schedule if necessary) | | | |
| Total | (4) | 0 00 | (a) Depreciation | | 0 | |
| 5. Expenses recorded on books this year not claimed on this return (Itemize, use schedule if necessary) | | | (b) See Annex | | 61,871 | |
| (a) Meal and entertainment (amount not claimed) _____ 0 | | | (c) | | 0 | |
| (b) Depreciation _____ 0 | | | (d) | | 0 | |
| (c) Motor vehicles (in excess of the limit) _____ 0 | | | Total | (8) | | 61,871 00 |
| (d) Vessels, airships and property located outside of P.R. _____ 0 | | | 9. Total (Add lines 7 and 8) | (9) | | 70,196 00 |
| (e) Expenses incurred or paid to stockholders, persons or related entities _____ 0 | | | 10. Net taxable income (or loss) per return (Subtract line 9 from line 6) | (10) | | (1,367,039) 00 |
| (f) See Annex _____ 29,152 | | | | | | |
| Total | (5) | 29,152 00 | | | | |
| 6. Total (Add lines 1 through 5) | (6) | (1,296,843) 00 | | | | |

## Analysis of Retained Earnings per Books ㊴

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. Balance at the beginning of the year | (1) | (2,813,541) 00 | 5. Distributions: (a) Cash | (5a) | | 0 00 |
| 2. Net income per books | (2) | (1,387,866) 00 | (b) Property | (5b) | | 0 00 |
| 3. Other increases (Itemize, use schedule if necessary) | | 0 | (c) Stocks | (5c) | | 0 00 |
| | (3) | 0 00 | 6. Other decreases (Use schedule if necessary) | (6) | | 0 00 |
| | | | 7. Total (Add lines 5 and 6) | (7) | | 0 00 |
| 4. Total (Add lines 1, 2 and 3) | (4) | (4,201,407) 00 | 8. Balance at end of year (Subtract line 7 from line 4) | (8) | | (4,201,407) 00 |

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

Form 480.20   Rev. 02.15

Corporation - Page 4

## Compensation to Officers

| | Name of officer | Social security number | Percentage of time devoted to industry or business | Percentage of stocks owned - Common | Percentage of stocks owned - Preferred | Compensation |
|---|---|---|---|---|---|---|
| Part X | | | 0 % | 0 % | 0 % | 0 |00 |
| | | | 0 % | 0 % | 0 % | 0 |00 |
| | | | 0 % | 0 % | 0 % | 0 |00 |
| | | | 0 % | 0 % | 0 % | 0 |00 |
| | | | 0 % | 0 % | 0 % | 0 |00 |
| Total compensation to officers (Enter in Part V, line 23) ........................................... | | | | | | 0 |00 |

## Questionnaire ㊷

**Part XI**

| | Yes | No |
|---|---|---|
| 1. If a foreign corporation, indicate if the trade or business in Puerto Rico was held as a branch .......................................... (1) | | X |
| 2. If a branch, indicate the percent that represents the income from sources within Puerto Rico from the total income of the corporation: 0 % | | |
| 3. Did the corporation keep any part of its records on a computerized system during this year? .................................................. (3) | X | |
| 4. The corporation's books are in care of: Name Jose R. Hernandez Address PO Box 9021216 San Juan, PR 009021216 E-mail RHernandez@americanagenciesco.com Telephone (787)758-6300 | | |
| 5. Indicate the book accounting method for tax purposes: ☐ Cash  ☒ Accrual ☐ Other (specify): | | |
| 6. Did the corporation file the following documents?: (a) Informative Return (Forms 480.5, 480.6A, 480.6B) ............. (6a) | X | |
| (b) Withholding Statement (Form 499R-2/W-2PR) ..................... (6b) | X | |
| 7. If the gross income of the entity or of the controlled group exceeds $3,000,000, are financial statements audited by a CPA licensed in Puerto Rico included with this return? ................................. (7) | X | |
| 8. Number of employees during the year: 0 | | |
| 9. Did the corporation claim expenses related to the ownership, use, maintenance and depreciation of: (a) Vehicles? .......................................................... (9a) | | X |
| (b) Vessels? ........................................................... (9b) | | X |
| (1) Did more than 80% of the total income was derived from activities exclusively related to fishing or transportation of passengers or cargo or lease? | | X |

| | Yes | No |
|---|---|---|
| (c) Aircrafts? ....................................................... (9c) | | X |
| (1) Did more than 80% of the total income was derived from activities exclusively related to fishing or transportation of passengers or cargo or lease? ................................. (9c1) | | X |
| d) Residential property outside of Puerto Rico? ..................... (9d) | | X |
| (1) Did more than 80% of the total income was derived from activities exclusively related to the lease of property to non related persons? ... (9d1) | | X |
| 10. Did the corporation claim expenses connected to: a) Housing (except business employees) ......................... (10a) | | X |
| b) Employees attending conventions or meetings outside Puerto Rico or the United States? ........................................ (10b) | | X |
| 11. Did the corporation distribute dividends other than stock dividends or distributions in liquidation in excess of the corporation's current and accumulated earnings? .............................................. (11) | | X |
| 12. Is the corporation a partner in any special partnership? (If more than one, submit detail) ........................................................ (12) | | X |
| Name of the special partnership _____ Employer identification number _____ | | |
| 13. Did you receive exempt income? (Submit Schedule IE Corporation) ...... (13) | | X |
| 14. Enter the amount corresponding to charitable contributions to municipalities included in Part V, line 44: 0 | | |
| 15. Indicate if insurance premiums were paid to an unauthorized insurer ................................................................... (15) | | X |
| 16. Employer's number assigned by the Department of Labor and Human Resources: 0129410000 | | |
| 17. Number of stockholders: 7 | | |

## OATH

We, the undersigned, president (or vice-president, or other principal officer) and treasurer (or assistant treasurer), or agent of the corporation for which this income tax return is made, each for himself declare under penalty of perjury, that this return (including schedules and statements attached) has been examined by us, and to the best of our knowledge and belief, is a true, correct, and complete return, made in good faith, pursuant to the Puerto Rico Internal Revenue Code of 2011, as amended, and the Regulations thereunder.

_____
President's or vice-president's signature

_____
Agent

_____
Treasurer's or assistant treasurer's signature

## SPECIALIST'S USE ONLY

I declare under penalty of perjury that this return (including schedules and statements attached) has been examined by me, and to the best of my knowledge and belief is a true, correct, and complete return. The declaration of the person who prepares this return is with respect to the information received, and this information may be verified.

| Specialist's name (Print)  ⓅⓅ  Carlos Rivera | Registration number 6 0 3 0 1 | Date 14·04·2015 | Self-employed Specialist ☐ |
|---|---|---|---|
| Firm's name  Landa Umpierre PSC | | | |
| Specialist's signature  Arlis Rivera | Address PO Box 363642, San Juan, PR, | | Zip Code 00936-3642 |

**NOTE TO TAXPAYER**
Indicate if you made payments for the preparation of your return: ☒ Yes ☐ No. If you answered "Yes", require the Specialist's signature and registration number.

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

| Schedule A Corporation | | |
|---|---|---|
| Rev. 02.15 | **ALTERNATIVE MINIMUM TAX** | Ⓐ **2014** |

Taxable year beginning on __1__ __1__, 2014 and ending on __12__ __31__, 2014

| Taxpayer's Name | Employer Identification Number |
|---|---|
| American Agencies Co., Inc. | 66-0405406 |

| **Part I** | **Adjustments in the Computation of the Alternative Minimum Net Income Before Books Adjustments and Operating Losses** | | |
|---|---|---|---|
| 1. Net income subject to normal tax without considering net operating loss from preceding years and excluding the net capital gain that you had elected to pay taxes at the special rates (See instructions) | (1) | | (1,367,039) 00 |
| 2. Adjustments: a. Flexible depreciation | (2a) | 0 00 | |
| b. Installment sales | (2b) | 0 00 | |
| c. Long-term contracts | (2c) | 0 00 | |
| d. Expenses related to exempt interest | (2d) | 0 00 | |
| e. Accelerated depreciation | (2e) | 0 00 | |
| f. Total adjustments (Add lines 2(a) through 2(e)) | (2f) | | 0 00 |
| 3. Alternative minimum net income before the adjustments of Part II and the operating loss (Add lines 1 and 2(f)) | (3) | | (1,367,039) 00 |

| **Part II** | **Adjustment for the Excess of the Net Income per Books over the Alternative Minimum Net Income Before Adjustments** | | |
|---|---|---|---|
| 4. Net income (or loss) per books | (4) | (1,387,866) 00 | |
| 5. Goodwill amortization expense | (5) | 0 00 | |
| 6. Income tax expense per books | (6) | 61,871 00 | |
| 7. Add lines 4, 5 and 6 | (7) | | (1,325,995) 00 |
| 8. Exempt interest income net of related expenses | (8) | 0 00 | |
| 9. Dividends and profit distributions received from domestic corporations or partnerships, or from industrial or tourism development income | (9) | 0 00 | |
| 10. Industrial development income, exempt tourism development income, bona fide agricultural business income or rental income under Act 132-2010 | (10) | 0 00 | |
| 11. Income (or loss) recognized under the equity method | (11) | 0 00 | |
| 12. Reserve for catastrophic losses | (12) | 0 00 | |
| 13. Net long-term capital gain (See instructions) | (13) | 0 00 | |
| 14. Add lines 8 through 13 | (14) | | 0 00 |
| 15. Subtract line 14 from line 7 | (15) | | (1,325,995) 00 |
| 16. Subtract line 3 from line 15. If line 3 is larger than line 15, enter zero | (16) | | 41,044 00 |
| 17. Adjustment for the excess of the adjusted net income per books over the alternative minimum net income of line 3 (Multiply line 16 by 60%) | (17) | | 24,626 00 |

| **Part III** | **Computation of the Alternative Minimum Net Income** | | |
|---|---|---|---|
| 18. Alternative minimum net income before the net operating loss (Add lines 3 and 17) | (18) | | (1,342,413) 00 |
| 19. Net operating loss to determine the alternative minimum tax (Cannot exceed 80% of line 18) (See instructions) | (19) | | 0 00 |
| 20. Subtract line 19 from line 18 (Enter the difference here, but not less than 20% of line 18) | (20) | | 0 00 |
| 21. Exempt amount (See instructions) | (21) | | 50,000 00 |
| 22. Alternative minimum net income (Subtract line 21 from line 20) | (22) | | 0 00 |

| **Part IV** | **Computation of the Tentative Minimum Tax and the Alternative Minimum Credit for Foreign Taxes Paid** | | |
|---|---|---|---|
| 23. Tentative minimum tax before the credit for foreign taxes paid (Multiply line 22 by 30%) | (23) | 0 00 | |
| 24. Alternative minimum net income before net operating loss deduction (Line 18) | (24) | (1,342,413) 00 | |
| 25. Allowable exempt amount without considering the net operating loss (See instructions) | (25) | 0 00 | |
| 26. Subtract line 25 from line 24 | (26) | 0 00 | |
| 27. Multiply line 26 by 30% | (27) | 0 00 | |
| 28. Multiply line 27 by 10% | (28) | | 0 00 |
| 29. Credit limitation (Subtract line 28 from line 23) | (29) | | 0 00 |
| 30. Alternative minimum credit for foreign taxes paid (This amount cannot exceed the amount on line 29. See instructions) | (30) | | 0 00 |
| 31. Tentative minimum tax net of credit for foreign taxes paid (Subtract line 30 from line 23. Transfer to Part VI, line 37) | (31) | | 0 00 |

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

Rev. 02.15

Schedule A Corporation - Page 2

| Part V | Computation of Expenses Paid to a Related Person and Purchases of Personal Property from a Related Person | | |
|---|---|---|---|
| 32. Expenses incurred or paid to a related person and related transfer or assignment of cost or expenses from a Home Office located outside of Puerto Rico to a Branch engaged in trade or business in Puerto Rico (This line is the sum of line 53, Column A of Part V, page 2 of the return plus line 5(e) of Part VIII, page 3 of the return) ............. | (32) | 0 | 00 |
| 33. Multiply line 32 by 20% ................................................................................................ | (33) | 0 | 00 |
| 34. Purchases of personal property from a related person and transfer of personal property from a Home Office located outside of Puerto Rico to a Branch engaged in trade or business in Puerto Rico ............. | (34) | 0 | 00 |
| 35. Multiply line 34 by 2% (See instructions) ................................................................. | (35) | 0 | 00 |
| 36. Total minimum tax for expenses paid to a related person and purchases of personal property from a related person (Add lines 33 and 35) ............. | (36) | 0 | 00 |

| Part VI | Computation of the Alternative Minimum Tax | | |
|---|---|---|---|
| 37. Tentative minimum tax after alternative minimum credit for foreign taxes paid (Line 31 of Part IV) ................. | (37) | 0 | 00 |
| 38. Total minimum tax for expenses paid to a related person and purchases of personal property from a related person (Line 36 of Part V) ............. | (38) | 0 | 00 |
| 39. Tentative minimum tax (Enter the larger between lines 37 and 38) ................................ | (39) | 0 | 00 |
| 40. Adjusted regular tax (Line 10 of Part III, page 1 of the return) ................................... | (40) | 0 | 00 |
| 41. Alternative minimum tax (Line 39 less line 40. If line 40 exceeds line 39, enter zero, otherwise, enter the difference on Form 480.20, page 1, Part III, line 16) ............. | (41) | 0 | 00 |

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

**Schedule B Corporation**

Rev. 02.15

# RECAPTURE OF CREDIT CLAIMED IN EXCESS, TAX CREDITS, AND OTHER PAYMENTS AND WITHHOLDINGS

Taxable year beginning on __1__ __1__ _2014_ and ending on __12__ __31__ _2014_

**20**14  **B**

| Taxpayer's Name | Employer Identification Number |
|---|---|
| American Agencies Co., Inc. | 66-0405406 |

**Part I — Recapture of Credit Claimed in Excess**   **B1**

| Name of entity: Employer Identification No: Credit for: | Column A | Column B | Column C |
|---|---|---|---|
| Tourism Development .................... 1 | | 1 | 1 |
| Solid Waste Disposal .................... 2 | | 2 | 2 |
| Capital Investment Fund .................... 3 | | 3 | 3 |
| Santurce Theatrical District .................... 4 | | 4 | 4 |
| Film Industry Development .................... 5 | | 5 | 5 |
| Housing Infrastructure .................... 6 | | 6 | 6 |
| Construction or Rehabilitation of Rental Housing Projects for Low or Moderate Income Families .................... 7 | | 7 | 7 |
| Acquisition of an Exempt Business in the Process of Closing its Operations in Puerto Rico .................... 8 | | 8 | 8 |
| Conservation Easement .................... 9 | | 9 | 9 |
| Economic Incentives (Research and Development) .... 10 | | 10 | 10 |
| Economic Incentives (Strategic Projects) .......... 11 | | 11 | 11 |
| Economic Incentives (Industrial Investment) ...... 12 | | 12 | 12 |
| Green Energy Incentives (Research and Development) .. 13 | | 13 | 13 |
| Other: .................... 14 | | 14 | 14 |

| | | |
|---|---|---|
| 1. Total credit claimed in excess ........................................ | (1) | 0 00 |
| 2. Recapture of credit claimed in excess paid in previous year, if applicable ...... | (2) | 0 00 |
| 3. Recapture of credit claimed in excess paid this year (Enter on Form 480.20, Part III, line 13. See instructions) .................... | (3) | 0 00 |
| 4. Excess of credit due next year, if applicable (Subtract lines 2 and 3 from line 1. See instructions) | (4) | 0 00 |

**Part II — Tax Credits** (Do not include estimated tax payments. Refer to Part III of this Schedule)   **B2**

| | | |
|---|---|---|
| 1. Credit for taxes paid to the United States, its possessions and foreign countries (Schedule C Corporation, Part III, line 6(b)) .................... | (1) | 0 00 |
| 2. Credit for increase in investment (See instructions) .................... | (2) | 0 00 |
| 3. Credit attributable to losses or for investment in Capital Investment, Tourism or other funds (Submit Schedules Q and Q1) .... | (3) | 0 00 |
| 4. Credit for alternative minimum tax paid in previous years (See instructions) .................... | (4) | 0 00 |
| 5. Credit for the purchase of tax credits (Complete Part IV) (See instructions) .................... | (5) | 0 00 |
| 6. Credit for investment on Film Industry Development (Act 27-2011: ☐ 1 Film Project and/or ☐ 2 Infrastructure Project (See inst.) | (6) | 0 00 |
| 7. Credit for investment in Housing Infrastructure (Act 98-2001, as amended) (See instructions) .................... | (7) | 0 00 |
| 8. Credit for investment in the Construction or Rehabilitation of Rental Housing Projects for Low or Moderate Income Families (Act 140-2001) (See instructions) .................... | (8) | 0 00 |
| 9. Credit to investors in an exempt business that is in the process of closing its operations in Puerto Rico (Act 109-2001 (See instructions) | (9) | 0 00 |
| 10. Credit for purchases of products manufactured in Puerto Rico and Puerto Rican agricultural products (Schedule B1 Corporation, Part IV, line 8) .................... | (10) | 0 00 |
| 11. Credit for contributions to Santa Catalina's Palace Patronage (See instructions) .................... | (11) | 0 00 |
| 12. Credit for the establishment of an eligible conservation easement or donation of eligible land (Act 183-2001) (See instructions) | (12) | 0 00 |
| 13. Credit for investment in construction in urban centers (Act 212-2002) (See instructions) .................... | (13) | 114,414 00 |
| 14. Credit for merchants affected by urban centers revitalization (Act 212-2002) (See instructions) .................... | (14) | 0 00 |
| 15. Exemption for persons that operate as publisher (Act 516-2004) (See instructions) .................... | (15) | 0 00 |
| 16. Exemption for persons that operate as printer (Act 516-2004) (See instructions) .................... | (16) | 0 00 |
| 17. Exemption for persons that operate as bookseller (Act 516-2004) (See instructions) .................... | (17) | 0 00 |
| 18. Credit for investment Act 73-2008 (See instructions) .................... | (18) | 0 00 |
| 19. Credit for investment Act 83-2010 (See instructions) .................... | (19) | 0 00 |
| 20. Credit for additional tax on gross income paid in case of financial business (See instructions) .................... | (20) | 0 00 |
| 21. Credits carried from previous years (Submit detail) .................... | (21) | 35,586 00 |
| 22. Other credits not included on the preceding lines (Submit detail) (See instructions) .................... | (22) | 0 00 |
| 23. Total Tax Credits (Add lines 1 through 22) .................... | (23) | 150,000 00 |
| 24. Total tax determined (Form 480.20, Part III, line 12) .................... | (24) | 0 00 |
| 25. **Credit to be claimed** (The smaller of line 23 or 24. Enter on Form 480.20, Part III, line 14) .................... | (25) | 0 00 |
| 26. Carryforward credits (Submit detail) .................... | (26) | 150,000 00 |

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

Rev. 02.15

Schedule B Corporation - Page 2

| Part III | Other Payments and Withholdings | B3 | | |
|---|---|---|---|---|
| 1. Tax paid with automatic extension of time | | (1) | 0 | 00 |
| 2. Estimated tax payments for 2014 | | (2) | 17,754 | 00 |
| 3. Tax paid in excess on previous years credited to estimated tax (See instructions) | | (3) | 35,586 | 00 |
| 4. Tax withheld at source | | (4) | 0 | 00 |
| 5. Services rendered (Form 480.6B) | | (5) | 0 | 00 |
| 6. Tax withheld at source on distributable share of net profits to owners of special partnerships (Form 480.60 SE) (See instructions): | | | | |
| (a) Interest income subject to preferential rate (Line 9, Part III of Form 480.60 SE) | (6a) 0 00 | | | |
| (b) Eligible distribution of dividends from corporations (Line 8, Part III of Form 480.60 SE) | (6b) 0 00 | | | |
| (c) Other items | (6c) 0 00 | (6) | 0 | 00 |
| 7. Tax withheld at source on distributable share of net profits to owners of partnerships (Form 480.60 S) (See instructions): | | | | |
| (a) Interest income subject to preferential rate (Line 9, Part III of Form 480.60 S) | (7a) 0 00 | | | |
| (b) Eligible distribution of dividends from corporations (Line 8, Part III of Form 480.60 S) | (7b) 0 00 | | | |
| (c) Other items | (7c) 0 00 | (7) | 0 | 00 |
| 8. Tax withheld at source on distributable share of net profits to trustees of revocable trusts or grantor trusts (Form 480.60 F) (See instructions): | | | | |
| (a) Interest income subject to preferential rate (Line 1E, Part III of Form 480.60 F) | (8a) 0 00 | | | |
| (b) Eligible distribution of dividends from corporations (Line 1G, Part III of Form 480.60 F) | (8b) 0 00 | | | |
| (c) Other items | (8c) 0 00 | (8) | 0 | 00 |
| 9. Tax withheld at source on eligible interest | | (9) | 0 | 00 |
| 10. Other payments and withholdings not included on the preceding lines (Submit detail) | | (10) | 0 | 00 |
| 11. Total Other Payments and Withholdings (Add lines 1 through 10. Enter on Form 480.20, Part III, line 23) | | (11) | 53,340 | 00 |

| Part IV | Breakdown of the Purchase of Tax Credits | B4 | | |
|---|---|---|---|---|
| | Check the block corresponding to the act (or acts) under which you acquired the credit and enter the amount: | | | |
| 1 | ☐ Tourism Development | (1) | 0 | 00 |
| 2 | ☐ Solid Waste Disposal | (2) | 0 | 00 |
| 3 | ☐ Capital Investment Fund | (3) | 0 | 00 |
| 4 | ☐ Santurce Theatrical District | (4) | 0 | 00 |
| 5 | ☐ Film Industry Development | (5) | 0 | 00 |
| 6 | ☐ Housing Infrastructure | (6) | 0 | 00 |
| 7 | ☐ Construction or Rehabilitation of Rental Housing Projects for Low or Moderate Income Families | (7) | 0 | 00 |
| 8 | ☐ Acquisition of an Exempt Business in the Process of Closing its Operations in Puerto Rico | (8) | 0 | 00 |
| 9 | ☐ Conservation Easement | (9) | 0 | 00 |
| 10 | ☐ Urban Centers Revitalization | (10) | 0 | 00 |
| 11 | ☐ Economic Incentives (Research and Development) | (11) | 0 | 00 |
| 12 | ☐ Economic Incentives (Strategic Projects) | (12) | 0 | 00 |
| 13 | ☐ Economic Incentives (Industrial Investment) | (13) | 0 | 00 |
| 14 | ☐ Green Energy Incentives (Research and Development) | (14) | 0 | 00 |
| 15 | ☐ Other: | (15) | 0 | 00 |
| 16 | Total credit for the purchase of tax credits (Same as Part II, line 5) | (16) | 0 | 00 |

Retention Period: Ten (10) years

| Schedule E<br>Rev. 02.15 | DEPRECIATION | 2014 |
|---|---|---|

Taxable year beginning on ___1/1___ , 2014 , and ending on ___12/31___ , 2014

**Taxpayer's name**
American Agencies Co., Inc.

Social Security or Employer Identification Number
66-0405406

| 1. Type of property (in case of a building, specify the material used in the construction). | 2. Date acquired. | 3. Original cost or other basis (exclude cost of land). Basis for automobiles may not exceed from $30,000 per vehicle. | 4. Depreciation claimed in prior years. | 5. Estimated useful life to compute the depreciation. | 6. Depreciation claimed this year. (37) |
|---|---|---|---|---|---|
| **(a) Current Depreciation** | | | | | |
| Maquinaria y Equipo | Varios | 409,863 00 | 401,393 00 | Varios | 5,427 00 |
| Mobiliario y Equipo | Varios | 560,899 00 | 551,274 00 | Varios | 3,159 00 |
| Vehiculos | Varios | 414,324 00 | 294,138 00 | Varios | 29,458 00 |
| Total | | | 1,246,805 00 | | 38,044 00 |
| **(b) Flexible Depreciation** | | | | | |
| Less: Depreciation Expense | | 0 00 | 0 00 | 0 | (7,321) 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| Total | | 0 00 | 0 00 | | (7,321) 00 |
| **(c) Accelerated Depreciation** | | | | | |
| | | 0 00 | 0 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| Total | | 0 00 | 0 00 | | 0 00 |
| **(d) Amortization (i.e. Goodwill)** | | | | | |
| Amortizacion Mejoras | Varios | 67,650 00 | 67,650 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| Total | | 67,650 00 | 67,650 00 | | 0 00 |
| **(e) Automobiles (See Instructions)** | | | | | |
| | | 0 00 | 0 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| | | 0 00 | 0 00 | 0 | 0 00 |
| Total | | 0 00 | 0 00 | | 0 00 |
| **(f) Vehicles under financial lease (Form 480.7D) (Amount of vehicles ___0___ ) (01) ............................... (02)** | | | | | 0 00 |
| **TOTAL:** (Add total of lines (a) through (f) of Column 6. Transfer to Schedules K, L, M and N Individual, whichever applies, or the corresponding line of other returns) ........................................................ (10) | | | | | 30,723 00 |

Retention Period: Ten (10) years

Reproducido por CEGsoft (EPRT)

American Agencies Co., Inc.

66-0405406

## A STATEMENT ATTACHED TO AND MADE A PART OF THE COMMONWEALTH OF PUERTO RICO REGULAR CORPORATION INCOME TAX RETURN FOR THE YEAR ENDED 12/31/2014

Part VI, Line 12 - Other Expenses

| Description | Total |
|---|---|
| Freight and transportation | 653,360.00 |
| Uniforms | 4,646.00 |
| Sub-contract | 1,987,320.00 |
| Employees benefits | 7,200.00 |
| Other expenses | 815,120.00 |
| | $3,467,646.00 |

1

Reproducido por CEGsoft (EPRT)

American Agencies Co., Inc.

66-0405406

A STATEMENT ATTACHED TO AND MADE A PART OF THE COMMONWEALTH
OF PUERTO RICO REGULAR CORPORATION INCOME TAX RETURN
FOR THE YEAR ENDED 12/31/2014

Part V, Line 48 - Other Deductions

| Description | Total |
|---|---|
| Supply | 70,065.00 |
| Advertising | 103,451.00 |
| Utilities | 123,473.00 |
| Security | 78,298.00 |
| Other deductions | 219,464.00 |
| | $594,751.00 |

4

Reproducido por CEGsoft (EPRT)

American Agencies Co., Inc.
EIN: 66-0405406

STATEMENT ATTACHED TO AND MADE A PART OF THE COMMONWEALTH OF
PUERTO RICO CORPORATE INCOME TAX RETURN
FOR THE YEAR ENDED 12/31/2014

CREDIT FOR THE ALTERNATIVE MINIMUM TAX

| YEAR | AMOUNT OF CREDIT | AMOUNT USED | | TAX CREDIT AVAILABLE |
| --- | --- | --- | --- | --- |
| | | AMOUNT | YEAR | |
| 2013 | $ 71,172.00 | 35,586.00 | 2013 | $ 35,586.00 |
| 2014 | $ 35,586.00 | $ - | | $ 35,586.00 |

**AMERICAN AGENCIES CO., INC.**
**CREDITO CONTRIBUTIVO**
**LEY PARA LA REVITALIZACION DE LOS CENTROS URBANOS**
**LEY NUMERO 212 DE 29 DE AGOSTO DE 2002**

| | |
|---|---|
| 1- Fecha de concesion del credito | 3 de abril de 2014 |
| 2- Año contributivo reclamacion del credito | 31 de diciembre de 2013 |
| 3- Fecha de expiracion del credito | 31 de diciembre de 2023 |
| 4- Monto total del credito | $ 150,000.00 |
| 5- Monto del credito reclamado año 2013 | $ 35,586.00 |
| 6- Monto del credito disponible | $ 114,414.00 |

AMERICAN AGENCIES CO., INC.
EIN 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

STATEMENT ATTACHED TO AND MADE PART OF THE
COMMONWEALTH OF PUERTO RICO CORPORATE INCOME TAX RETURN
FOR THE YEAR ENDED 2014

SCHEDULE OF NET OPERATING LOSS CARRYOVER

### REGULAR TAX
### NOL'S USED

| YEAR | N.O.L. | AMOUNT | YEAR | N.O.L. AVAILABLE | EXPIRATION DATE |
|------|--------|--------|------|------------------|-----------------|
| 2009 | 206,377.00 | | | 206,377.00 | 12/31/2021 |
| 2010 | 665,801.00 | | | 665,801.00 | 12/31/2022 |
| 2011 | 2,053,799.00 | | | 2,053,799.00 | 12/31/2023 |
| 2014 | 1,367,039.00 | | | 1,367,039.00 | 12/31/2024 |

### ALTERNATIVE MINIUM TAX
### NOL'S USED

| YEAR | N.O.L. | AMOUNT | YEAR | N.O.L. AVAILABLE | EXPIRATION DATE |
|------|--------|--------|------|------------------|-----------------|
| 2009 | 261,623.00 | | | 261,623.00 | 12/31/2021 |
| 2010 | 665,801.00 | | | 665,801.00 | 12/31/2022 |
| 2011 | 2,053,799.00 | | | 2,053,799.00 | 12/31/2023 |
| 2014 | 1,367,039.00 | | | 1,367,039.00 | 12/31/2024 |

American Agencies Co., Inc.
Reconciliation of Net Income (or Loss) per Books with Net Taxable Income (or Loss) per Return
December 31, 2014

| | | | | |
|---|---|---|---|---|
| 1 | Net income (or loss) per books | | (1,387,866.00) | |
| 2 | Income tax per books | | 61,871.00 | |
| 3 | Excess of capital losses over capital gains (Itemized, use schedule if neccessary) | | | |
| 4 | Taxable income not recorded on books this year | | | |
| 5 | Expense recorded on books this year not claimed on this return | | | |
| | a) Entertaiment | 21,631.00 | | |
| | b) Depreciation | 7,321.00 | | |
| | c) Contributions | 200.00 | | |
| | Total | | 29,152.00 | |
| 6 | Total (Add lines 1 through 5) | | | (1,296,843.00) |
| 7 | Income recorded on books this year not included on this return | | | |
| | a) Exempt interest | | | |
| | b) Adjust income under SFAS 87 | 8,325.00 | | |
| | Total | | 8,325.00 | |
| 8 | Deductions on this tax return not charged against book income this year | | | |
| | a)Depreciation | | | |
| | b)Additional tax on gross income paid | 61,871.00 | | |
| | Total | | 61,871.00 | |
| 9 | Total (Add lines 7 and 8) | | | 70,196.00 |
| 10 | Net taxable income (or loss) per return (Subtract line 9 from line 6) | | | (1,367,039.00) |

**Modelo SC 2662**
Rev. 19 feb 15

# DISTRIBUCIÓN DE DEDUCCIÓN PARA EL CÓMPUTO DE LA CONTRIBUCIÓN ADICIONAL Y DETERMINACIÓN DE LA TASA APLICABLE PARA PROPÓSITOS DE LA CONTRIBUCIÓN ADICIONAL SOBRE INGRESO BRUTO — GRUPO DE CORPORACIONES RELACIONADAS

**20 14**

☐ ENMENDADO

Número de Grupo  **11284**

Nombre de la persona contacto para el grupo
Landa Umpierre PSC - Carlos Rivera

Dirección
PO Box 9021216 San Juan, PR, 00902-1216

Número de Teléfono  **787-758-6300**

Correo Electrónico (E-mail)  crivera@landaumpierre.com

## Información del Grupo

| Miembros del grupo | Cierre de año contributivo (día / mes) | (A) Volumen de negocio para propósitos de radicación de estados financieros auditados | (B) Deducción para cómputo de contribución adicional (no debe exceder de $25,000) | (C) Ingreso bruto de la entidad para propósitos de la contribución adicional sobre ingreso bruto | (D) Ingreso bruto cubierto bajo decreto de exención no sujeto a contribución adicional sobre ingreso bruto | (E) Ingreso bruto para determinar la tasa aplicable de contribución adicional sobre ingreso bruto (Columna C - Columna D) | (F) Tasa contributiva aplicable para propósitos de la contribución adicional sobre ingreso bruto | (G) Marque aquí si está dedicado principalmente a la venta de alimentos (Véanse inst.) |
|---|---|---|---|---|---|---|---|---|
| Nombre: NewStreet, Inc. Número de identificación patronal 66-0403372 | 31/DIC/EN | $5,985,865 | $0 | $5,985,865 | $5,985,865 | $0 | 0.35 % | ☐ |
| Nombre: American Agencies Co., Inc. Número de identificación patronal 66-0405206 | 31/DIC/EN | $17,677,412 | $0 | $17,677,412 | $0 | $17,677,412 | 0.35 % | ☐ |
| Nombre: Número de identificación patronal | | | $0 | | | | | ☐ |
| Nombre: Número de identificación patronal | | | $0 | | | | | ☐ |

1. Subtotal de la Columna (A) de esta página .......... (1) | $23,663,277
2. Subtotal de la Columna (A) de páginas adicionales .......... (2) | $0
3. Subtotal de la Columna (A) (Sume líneas 1 y 2) .......... (3) | $23,663,277
4. Subtotal de la Columna (B) de esta página .......... (4) | $0
5. Subtotal de la Columna (B) de páginas adicionales .......... (5) | $0
6. Subtotal de la Columna (B) (Sume las líneas 4 y 5. La cantidad de esta línea no puede ser de $25,000) .......... (6) | $0
7. Subtotal de la Columna (E) de esta página .......... (7) | $17,677,412
8. Subtotal de la Columna (E) de páginas adicionales .......... (8) | $0
9. Subtotal de la Columna (E) (Sume las líneas 7 y 8) .......... (9) | $17,677,412

## JURAMENTO

Declaro bajo penalidad de perjurio que este formulario ha sido examinado por mí, y que según mi mejor información y creencia, toda la información provista en el mismo es cierta, correcta y completa.

| Nombre Landa Umpierre PSC - Carlos Rivera | Firma Firmado Electrónicamente | Período de Conse Diez (10) años | Título | Fecha 4/14/2015 8:10:59 AM |

AMERICAN AGENCIES CO., INC.

0057877

| DATE | INVOICE NO. | DESCRIPTION | INVOICE AMOUNT | DEDUCTION | BALANCE |
|------|-------------|-------------|----------------|-----------|---------|
| 04-15-15 | | CONTRIBUCION SOBRE INGRESOS AÑO 2014 | $8,531.00 | | $8,531.00 |

| CHECK DATE | | CHECK NUMBER | 57877 | TOTALS | | $8,531.00 |
|------------|--|--------------|-------|--------|--|-----------|
| 04-15-15 | | | | | | |

PLEASE DETACH THIS PORTION AND RETAIN FOR YOUR RECORDS.

AMERICAN AGENCIES CO., INC.

STEEL PRODUCTS

0057877

P.O. BOX 9021216, SAN JUAN, P.R. 00902-1216
TEL. (787) 758-6300

BANCO POPULAR
SUCURSAL SAN JOSE

***OCHO MIL QUINIENTOS TREINTA Y UN DOLARES CON 00 CENTAVOS***

| | DATE | CHECK NO. | AMOUNT |
|--|------|-----------|--------|
| | 04-15-15 | 57877 | $8,531.00 |

PAY
TO THE
ORDER
OF

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

COPY
PLANILLA ENMENDADA ⬭

Formulario 480.30(II) Rev. 03.15

| Liquidador: | Revisor: | **2014** | | **2014** | Número de Serie |
|---|---|---|---|---|---|

Investigado por:

Fecha

| R | M | N |
|---|---|---|

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE HACIENDA

## Planilla de Contribución sobre Ingresos para Negocios Exentos bajo el Programa de Incentivos de Puerto Rico Desarrollo Industrial

AÑO CONTRIBUTIVO COMENZADO EL
de 1 de 1 de 2014 Y TERMINADO EL 31 de 12 de 2014

Sello de Pago

Nombre del Contribuyente
New Steel, Inc.

Dirección Postal
PO Box 9021216

San Juan,    PR    Código Postal 00902-1216

Localización de la Industria o Negocio Principal - Número, Calle y Pueblo
Carretera 887 KM 0.7 Industrial Julio N. Matos Bo. Saint Just
Carolina, PR PR 00986

Número de Identificación Patronal
66-0405372

Núm. Registro del Departamento de Estado
56140

| Clave Industrial | Cód. Municipal |
|---|---|
| 332300 | 79 |

Número de Registro de Comerciante
0037528-0025

Número de Teléfono - Extensión
( 787 ) 768 - 6300

Fecha de Incorporación
Día 6 / Mes 3 / Año 1984

Lugar de Incorporación
Puerto Rico

Correo Electrónico de Persona Contacto (E-mail)
structuralsteel@americanagencesco.com

Estado Libre Asociado de Puerto Rico
DEPARTAMENTO DE HACIENDA
Oficina de Correspondencia y Conservación
RECIBIDO
15 ABR. 2015
PLANILLA SIN PAGO
SECRETARIO DE HACIENDA

Naturaleza de la Industria o Negocio Principal
Manufactura de Acero Estructural
Contratos con Organismos Gubernamentales

Cambio de Dirección
◯ Sí  ☒ No
Planilla 2015
☒ Español  ◯ Inglés

Tipo de Entidad
Corporacion

Indique si es miembro de un grupo de entidades relacionadas
☒ Sí  ◯ No

Número de grupo
11284

Ingreso parcialmente exento bajo:
- ◯ Ley 8 de 1987 (Anejo N Incentivos) Caso Núm: _____
- ◯ Ley 135-1997 (Anejo V Incentivos) Caso Núm: 07-135-I-01
- ◯ Ley 73-2008 (Anejo X Incentivos) Caso Núm: _____
- ◯ Ley 20-2012 (Anejo AA Incentivos) Caso Núm: _____

### Parte I

| | | | |
|---|---|---|---|
| 1. Responsabilidad contributiva: a) Anejo N Incentivos, Parte II, línea 9 | (1a) | 0 | 00 |
| b) Anejo V Incentivos, Parte III, línea 5 | (1b) | 0 | 00 |
| c) Anejo X Incentivos, Parte IV, línea 11 | (1c) | 0 | 00 |
| d) Anejo AA Incentivos, Parte III, línea 5 | (1d) | 0 | 00 |
| e) Anejo P Incentivos, Parte II, línea 17 | (1e) | 0 | 00 |
| f) Total (Sume líneas 1(a) a la 1(e)) | (1f) | 0 | 00 |
| 2. Menos: a) Contribución retenida en el origen | (2a) | 0 | 00 |
| b) Pagos de contribución estimada del año corriente | (2b) | 0 | 00 |
| c) Exceso de años anteriores no incluido en la línea 2(b) | (2c) | 52,309 | 00 |
| d) Contribución retenida sobre la participación distribuible a socios o accionistas de sociedades especiales | (2d) | 0 | 00 |
| e) Cantidad pagada con prórroga automática o con planilla original | (2e) | 0 | 00 |
| f) Contribución retenida por servicios profesionales (Formulario 480.6B) | (2f) | 0 | 00 |
| g) Contribución retenida en el origen sobre intereses elegibles | (2g) | 0 | 00 |
| h) Total de pagos (Sume líneas 2(a) a la 2(g)) | (2h) | 52,309 | 00 |
| 3. Balance de contribución a pagar (Si la línea 1(f) es mayor que la línea 2(h), anote la diferencia aquí, de lo contrario, en la línea 5) | (a) Contribución | (3a) | 0 | 00 |
| | (b) Intereses | (3b) | 0 | 00 |
| | (c) Recargos | (3c) | 0 | 00 |
| | (d) Total (Sume líneas 3(a) a 3(c)) | (3d) | 0 | 00 |
| 4. Adición a la Contribución por Falta de Pago de la Contribución Estimada (Anejo T Incentivos, Parte II, línea 21) | (4) | 0 | 00 |
| 5. Exceso de contribución retenida o pagada (Véanse instrucciones) | (5) | 52,309 | 00 |
| 6. Cantidad pagada con esta planilla (Sume líneas 3(d) y 4 menos línea 5) | (6) | 0 | 00 |
| 7. Contribución pagada en exceso para acreditar a la contribución estimada del año 2015 | (7) | 52,309 | 00 |
| 8. Aportación al Fondo Especial para el Estuario de la Bahía de San Juan | (8) | 0 | 00 |
| 9. Aportación al Fondo Especial para la Universidad de Puerto Rico | (9) | 0 | 00 |
| 10. Contribución a reintegrar | (10) | 0 | 00 |

**JURAMENTO**

Nosotros, los suscribientes, presidente (o vicepresidente u otro oficial principal) y tesorero (o tesorero auxiliar) o agente del negocio exento a nombre del cual se hace esta planilla de contribución sobre ingresos, cada uno por sí, bajo el más solemne juramento y so pena de perjurio, declaramos que hemos examinado la misma (incluyendo anejos) y estados que la acompañan, y que según nuestro mejor conocimiento y creencia es una planilla exacta, correcta y completa, hecha de buena fe y de acuerdo con el Código de Rentas Internas de Puerto Rico de 2011, según enmendado, y sus Reglamentos.

Firma del presidente o vicepresidente        Agente        Firma del tesorero o tesorero auxiliar

**PARA USO DEL ESPECIALISTA SOLAMENTE**

Declaro bajo pena de perjurio que esta planilla (incluyendo los anejos y estados adjuntos) ha sido examinada por mí, y a mi mejor conocimiento y creencia, los datos en la misma son ciertos, correctos y constituyen en conjunto una planilla exacta y completa. La declaración de la persona que prepara esta planilla es con relación a la información recibida y ésta puede ser verificada.

| Nombre del especialista (Letra de molde) | Núm. de registro | Fecha |
|---|---|---|
| Carlos Rivera | 6 0 3 0 | 14 abril, 2015 |

Nombre de la firma
Landa Umpierre PSC

☐ Marque si es especialista por cuenta propia

Firma del especialista

Dirección
PO Box 363642, San Juan, PR,

Código postal
009363642

NO ESCRIBA EN ESTE ESPACIO
Período de Conservación: Diez (10) años

Formulario 480.30(II)

**Negocio Exento - Estado de Situación Comparado**

## Parte II

| Activos | | Al comenzar el año | Total | | Al terminar el año | Total |
|---|---|---|---|---|---|---|
| 1. Efectivo en caja y bancos | (1) | | 36,930 00 | (1) | | 36,924 00 |
| 2. Cuentas a cobrar | (2) | 4,468,520 00 | | (2) | 5,169,286 00 | |
| 3. Menos: Reserva para cuentas incobrables | (3) | 0 00 | 4,468,520 00 | (3) | 0 00 | 5,169,286 00 |
| 4. Inventarios | (4) | | 3,770,892 00 | (4) | | 3,144,450 00 |
| 5. Otros activos corrientes | (5) | | 0 00 | (5) | | 0 00 |
| 6. Obligaciones a cobrar | (6) | | 0 00 | (6) | | 0 00 |
| 7. Inversiones | (7) | | 0 00 | (7) | | 0 00 |
| 8. Activos depreciables | (8) | 2,812,291 00 | | (8) | 2,833,753 00 | |
| 9. Menos: Reserva para depreciación | (9) | 2,766,936 00 | 45,355 00 | (9) | 2,782,265 00 | 51,488 00 |
| 10. Terrenos | (10) | | 0 00 | (10) | | 91,002 00 |
| 11. Otros activos a largo plazo | (11) | | 237,025 00 | (11) | | 91,002 00 |
| 12. Total de Activos | (12) | | 8,558,722 00 | (12) | | 8,493,150 00 |
| **Pasivos y Capital** | | | | | | |
| **Pasivos** | | | | | | |
| 13. Cuentas a pagar | (13) | | 165,645 00 | (13) | | 91,999 00 |
| 14. Gastos incurridos y no pagados | (14) | | 109,168 00 | (14) | | 128,451 00 |
| 15. Otros pasivos corrientes | (15) | | 0 00 | (15) | | 0 00 |
| 16. Obligaciones a pagar a largo plazo | (16) | | 0 00 | (16) | | 0 00 |
| 17. Otras obligaciones a largo plazo | (17) | | 9,593,595 00 | (17) | | 9,593,595 00 |
| 18. Total de Pasivos | (18) | | 9,868,408 00 | (18) | | 9,814,045 00 |
| **Capital** | | | | | | |
| 19. Capital en acciones | | | | | | |
| (a) Acciones preferidas | (19a) | | 0 00 | (19a) | | 0 00 |
| (b) Acciones comunes | (19b) | | 72,400 00 | (19b) | | 72,400 00 |
| 20. Sobrante de capital | (20) | | 0 00 | (20) | | 0 00 |
| 21. Sobrante de operaciones | (21) | | (1,382,086) 00 | (21) | | (1,393,295) 00 |
| 22. Reserva de sobrantes | (22) | | 0 00 | (22) | | 0 00 |
| 23. Total de Capital | (23) | | (1,309,686) 00 | (23) | | (1,320,895) 00 |
| 24. Total Pasivos y Capital | (24) | | 8,558,722 00 | (24) | | 8,493,150 00 |

## Parte III

**Reconciliación del Ingreso Neto (o Pérdida) según Libros con el Ingreso Neto Tributable (o Pérdida) según Planilla**

1. Ingreso neto (o pérdida) según libros ... (1) | (11,209) 00
2. Contribución sobre ingresos según libros ... (2) | 0 00
3. Exceso de pérdidas de capital sobre ganancias de capital ... (3) | 0 00
4. Ingreso tributable no registrado en los libros este año (Detalle, use anejo si es necesario)
   (a) _____ 0
   (b) _____ 0
   (c) _____ 0
   Total ... (4)
5. Gastos registrados en los libros este año no reclamados en esta planilla (Detalle, use anejo si es necesario)
   (a) Comida y entretenimiento (porción no reclamada) _____ 0
   (b) Depreciación _____ 118
   (c) Vehículos de motor (en exceso del límite) _____ 0
   (d) Embarcaciones, aeronaves y propiedad localizada fuera de P.R. _____ 0
   (e) Gastos incurridos o pagados a accionistas, personas o entidades relacionadas _____ 0
   (f) _____ 0
   Total ... (5) | 118 00
6. Total (Sume líneas 1 a la 5) ... (6) | (11,091) 00

7. Ingreso registrado en los libros este año no incluido en esta planilla (Detalle, use anejo si es necesario)
   (a) Intereses exentos _____ 0
   (b) _____ 0
   (c) _____ 0
   (d) _____ 0
   Total ... (7)
8. Deducciones en esta planilla no llevadas contra el ingreso en los libros este año (Detalle, use anejo si es necesario)
   (a) Depreciación _____ 0
   (b) _____ 0
   (c) _____ 0
   (d) _____ 0
   Total ... (8) | 0 00
9. Total (Sume líneas 7 y 8) ... (9) | 0 00
10. Ingreso neto tributable (o pérdida) según planilla (Línea 6 menos línea 9) ... (10) | (11,091) 00

## Parte IV

**Análisis del Sobrante según Libros**

1. Balance al comenzar el año ... (1) | (1,382,086) 00
2. Ingreso neto según libros ... (2) | (11,209) 00
3. Otros aumentos (Detalle, use anejo si es necesario)
   _____ 0
   _____ 0 | 0 00
4. Total (Sume líneas 1, 2 y 3) ... (4) | (1,393,295) 00

5. Distribuciones: (a) Efectivo (5a) | 0 00
   (b) Propiedad (5b) | 0 00
   (c) Acciones (5c) | 0 00
6. Otras rebajas (Use anejo si es necesario) (6) | 0 00
7. Total (Sume líneas 5 y 6) (7) | 0 00
8. Balance al finalizar el año (Línea 4 menos línea 7) (8) | (1,393,295) 00

Período de Conservación: Diez (10) años

Reproducido por CEGsoft (EPRT)

Formulario  480.3(I)DI Rev. 03.15                                                    Incentivos Desarrollo Industrial - Página 3

## Cuestionario

| | | Sí | No |
|---|---|---|---|
| 1. Si es una corporación extranjera, indique si la industria o negocio operó como sucursal | (1) | | X |

2. Si es una sucursal, indique el por ciento que representa el ingreso de fuentes de Puerto Rico del total de ingreso del negocio exento: ____ 0 %

| | | Sí | No |
|---|---|---|---|
| 3. ¿Mantuvo el negocio exento durante este año parte de sus récords en un sistema computadorizado? | (3) | X | |

4. Los libros del negocio exento están a cargo de:

Nombre  C/O Company

Dirección   PO Box 9021216

San Juan, PR 00902-1216                                                N/A

Correo electrónico (e-mail) RHernandez@americanagenciesco.com

Teléfono  (787)758-6300

5. Indique el método de contabilidad utilizado:

☐ Recibido y Pagado          ☒ Acumulación

☐ Otro (especifique): _____

| | | Sí | No |
|---|---|---|---|
| 6. ¿Rindió el negocio exento los siguientes documentos? | | | |
| (a) Declaración Informativa (Formularios 480.5, 480.6A, 480.6B) | (6a) | X | |
| (b) Comprobante de Retención (Formulario 499R-2/W-2PR) | (6b) | X | |
| 7. Si su ingreso bruto excede de $3,000,000, ¿sometió estados financieros auditados por un CPA con licencia en Puerto Rico? | (7) | X | |

8. Indique el número de empleados durante el año: 29

(a) Producción: __28__   (b) No Producción: _3_

| | | Sí | No |
|---|---|---|---|
| 9. ¿Reclamó la corporación gastos relacionados con la utilidad, uso, mantenimiento y depreciación de: | | | |
| (a) Automóviles? | (9a) | | X |
| (b) Embarcaciones? | (9a) | | X |
| (1) ¿Derivó más de la totalidad de sus ingresos de actividades relacionadas exclusivamente con la pesca o transportación de pasajeros o de carga o arrendamiento? | (9b1) | | X |
| (c) Aeronaves? | (9a) | | X |
| (f) ¿Derivó más del 60% de los ingresos de actividades relacionadas exclusivamente con transportación de pasajeros o de carga o arrendamiento? | (9c1) | | X |
| (d) Propiedad residencial fuera de Puerto Rico? | (9a) | | X |
| (1) ¿Derivó más del 60% de la totalidad de sus ingresos de actividades relacionadas exclusivamente a alquiler de propiedades a personas no relacionadas? | (9d1) | | X |
| (e) Alojamiento? (excepto empleados del negocio) | (9a) | | X |
| (f) Empleados que asistieron a convenciones fuera de Puerto Rico o los Estados Unidos? | (9a) | | X |

| | | Sí | No |
|---|---|---|---|
| 10. ¿Ha sido auditado por el Servicio de Rentas Internas Federal (IRS)? ¿Qué años? | (10) | | X |
| 11. Durante el año contributivo, ¿distribuyó el negocio exento dividendos que no fueran en acciones o en liquidación, en exceso de la ganancia corriente y acumulada? | (11) | | X |
| 12. ¿Es el negocio exento socio de una sociedad especial? (Si es más de una, someta detalle) | (12) | | X |

Nombre de la Sociedad Especial _____

Número de identificación patronal _____

| | | Sí | No |
|---|---|---|---|
| 13. Al finalizar el año contributivo, ¿poseía la corporación, directa o indirectamente, 50% o más de las acciones con derecho al voto de una corporación dedicada a industria o negocio en Puerto Rico? Si contestó "SI", incluya un anejo detallando: (a) nombre y número de identificación patronal, (b) por ciento que le pertenece, e (c) ingreso tributable (o pérdida) antes de la pérdida neta en operaciones y de las deducciones especiales de la corporación para el año contributivo (aunque dicho año contributivo no coincida con el de la corporación o sociedad por la cual se rinda esta planilla). | (13) | | X |
| 14. ¿Poseía, directa o indirectamente, algún individuo, sociedad, corporación, sucesión o fideicomiso al terminar el año contributivo, el 50% o más de las acciones con derecho al voto de la corporación? Si contestó "SI", incluya un anejo detallando el nombre y número de identificación patronal. | (14) | | X |

Anote el por ciento que posea: ____ 0 %

15. Anote la cantidad de intereses exentos: _____ 0

| | | Sí | No |
|---|---|---|---|
| 16. ¿Tiene el negocio exento otras actividades exentas no cubiertas bajo las Leyes de Incentivos Industriales? (Incluya anejo) | (16) | | X |

¿Bajo cuál ley? _____

17. Optó por la exención contributiva flexible bajo la:                                    (17)

◯ Sección 3(j) Ley Núm. 8 de 1987

◯ Sección 6(l) Ley Núm. 135-1997

◯ Sección 10(b) Ley Núm. 73-2008

18. Anote el total de los donativos a municipios reclamados durante el año contributivo _____

| | | Sí | No |
|---|---|---|---|
| 19. Indique si sus libros reflejan primas pagadas por aseguradores no autorizados | (19) | | X |

20. Indique el método utilizado para prorratear gastos:

◯ Profit - Split   ◯ Cost Sharing   ◯ Otros

21. Número de patrono otorgado por el Departamento del Trabajo y Recursos Humanos  2448160001

---

## Compensación a oficiales

| | Nombre del oficial | Número de seguro social | Por ciento de tiempo dedicado al negocio | Por ciento de las acciones poseídas | | Compensación |
|---|---|---|---|---|---|---|
| | | | | Comunes | Preferidas | |
| **Parte VI** | Information available | | 0 | 0 | 0 | 0 00 |
| | upon request | | | | | 0 00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | Total de compensación a oficiales | | | | | 0 00 |

Período de Conservación: Diez (10) años

Parte V

Reproducido por CEGsoft (EPRT)

# Anejo E Corporación

Rev. 02.15

# DEPRECIACIÓN

## 2014

Año contributivo comenzado el 1 de 1 de 2014 y terminado el 31 de 12 de 2014

Nombre del contribuyente

New Steel, Inc.

Número de Seguro Social o Identificación Patronal

66-0405372

| 1. Clase de propiedad (en caso de edificaciones, indique el tipo de material utilizado en la construcción). | 2. Fecha de adquisición. | 3. Costo u otra base (excluya el costo del terreno). En el caso de automóviles, la base no debe exceder de $30,000 por vehículo. | | 4. Depreciación reclamada en años anteriores. | | 5. Estimado de vida usado para computar depreciación. | 6. Depreciación reclamada este año. �37 | |
|---|---|---|---|---|---|---|---|---|
| **(a) Depreciación Corriente** | | | | | | | | |
| Machinery & Equipment | Various | 2,684,165 | 00 | 2,624,904 | 00 | Various | 12,495 | 00 |
| Furniture & Fixture | Various | 129,487 | 00 | 129,487 | 00 | 0 | 0 | 00 |
| Motor Vehicles | Various | 20,100 | 00 | 12,544 | 00 | Various | 2,833 | 00 |
| Total | | | | 2,766,935 | 00 | | 15,328 | 00 |
| **(b) Depreciación Flexible** | | | | | | | | |
| Adjust Depreciation | | 0 | 00 | 0 | 00 | 0 | (118) | 00 |
| | | 0 | 00 | 0 | 00 | 0 | | 00 |
| | | 0 | 00 | 0 | 00 | 0 | | 00 |
| Total | | 0 | 00 | 0 | 00 | | (118) | 00 |
| **(c) Depreciación Acelerada** | | | | | | | | |
| | | 0 | 00 | 0 | 00 | | | 00 |
| | | 0 | 00 | 0 | 00 | | | 00 |
| | | 0 | 00 | 0 | 00 | | | 00 |
| Total | | 0 | 00 | 0 | 00 | | | 00 |
| **(d) Amortización (ej. Goodwill)** | | | | | | | | |
| | | 0 | 00 | 0 | 00 | 0 | 0 | 00 |
| | | 0 | 00 | 0 | 00 | 0 | 0 | 00 |
| | | 0 | 00 | 0 | 00 | 0 | 0 | 00 |
| Total | | 0 | 00 | 0 | 00 | | 0 | 00 |
| **(e) Automóviles (Véanse instrucciones)** | | | | | | | | |
| | | 0 | 00 | 0 | 00 | 0 | 0 | 00 |
| | | 0 | 00 | 0 | 00 | 0 | 0 | 00 |
| | | 0 | 00 | 0 | 00 | 0 | 0 | 00 |
| Total | | 0 | 00 | 0 | 00 | | 0 | 00 |
| (f) Vehículos bajo arrendamiento financiero (Formulario 480.7D) (Cantidad de vehículos _____ 0 (01) ........................... (02) | | | | | | | 0 | 00 |
| TOTAL: (Sume el Total de líneas (a) a la (f) de la Columna 6. Traslade a los Anejos K, L, M y N Individuo, según aplique, o a la línea correspondiente de otras planillas) .......................................... (10) | | | | | | | 15,210 | 00 |

Período de Conservación: Diez (10) años

Reproducido por CEGsoft (EPRT)

| Anejo T  Incentivos Rev. 03.15 | ADICION A LA CONTRIBUCION POR FALTA DE PAGO DE LA CONTRIBUCIÓN ESTIMADA DE NEGOCIOS EXENTOS BAJO EL PROGRAMA DE INCENTIVOS DE PUERTO RICO Año contributivo comenzado el _1_ de _1_ de 2014 y terminado el _31_ de _12_ de 2014 | **2014** |

| Nombre del Contribuyente | Número de Identificación Patronal |
|---|---|
| New Steel, Inc. | 66-0405372 |

## Parte I — Determinación de la Cantidad Mínima a Pagar de Contribución Estimada

| | |
|---|---|
| 1. Responsabilidad contributiva (Véanse instrucciones) ....................................................... (1) | 0 00 |
| 2. Créditos y pagos en exceso (Véanse instrucciones) ....................................................... (2) | 0 00 |
| 3. Contribución estimada (Reste línea 2 de la línea 1. Si es cero o menos, no tiene que completar este Anejo) ......... (3) | 0 00 |
| 4. Línea 1 por 90%. .......................................................................................... (4) | 0 00 |
| 5. Total contribución determinada según surge de la planilla de contribución sobre ingresos del año anterior (Véanse instrucciones) ......... (5) | 0 00 |
| 6. Anote la menor entre las líneas 4 y 5 .................................................................... (6) | 0 00 |
| 7. Reste línea 2 de la línea 6 (Si es menos de cero, anote cero). Esta es la cantidad mínima de contribución estimada que debió pagar ......... (7) | 0 00 |

## Parte II — Adición a la Contribución por Falta de Pago

### Sección A - Falta de Pago

| | Fecha de vencimiento | | | |
|---|---|---|---|---|
| | (a) Primer Plazo | (b) Segundo Plazo | (c) Tercer Plazo | (d) Cuarto Plazo |
| ○ AÑO NATURAL .......................................... ○ AÑO ECONOMICO (Indique las fechas correspondientes) | | | | |
| 8. Cantidad de contribución estimada por plazo (Véanse instrucciones) ............ (8) | 0 00 | 0 00 | 0 00 | 0 00 |
| 9. Cantidad de contribución estimada pagada por plazos (Véanse instrucciones) .. (9) | | | | |
| 10. Fecha de pago (Véanse instrucciones) ............ (10) | | | | |
| 11. Línea 17 de la columna anterior ............ (11) | | 0 00 | 0 00 | 0 00 |
| 12. Sume líneas 9 y 11 ............ (12) | 0 00 | 0 00 | | |
| 13. Reste línea 8 de línea 12 (Si es menos de cero, anote cero) ............ (13) | 0 00 | | | |
| 14. Falta de Pago (Si la línea 13 es cero, reste línea 12 de línea 8, de otro modo, anote cero) ............ (14) | | | | |
| 15. Sume las líneas 14 y 16 de la columna anterior ............ (15) | | | | |
| 16. Si línea 15 es igual o mayor que línea 13, reste línea 13 de línea 15 y continúe en línea 11 de próxima columna. De otro modo, continúe en línea 17 ............ (16) | | | | |
| 17. Sobrepago (Si línea 13 es mayor que línea 15, reste línea 15 de línea 13, y continúe en la línea 11 de próxima columna. De otro modo, anote cero) ............ (17) | 0 00 | | | |

### Sección B - Penalidad

| | | | | |
|---|---|---|---|---|
| 18. Multiplique línea 14 por 10% ............ (18) | 0 00 | 0 00 | 0 00 | 0 00 |
| 19. Si la fecha indicada en la línea 10 para cualquier plazo es posterior a su vencimiento y: • la línea 18 es cero, multiplique el resultado de línea 8 menos línea 17 de la columna anterior por 10%; o • la línea 18 es mayor que cero, multiplique el resultado de línea 8 menos línea 17 de la columna anterior por 10% y reste la cantidad reflejada en la línea 18. (Véanse instrucciones) ............ (19) | | 0 00 | 0 00 | 0 00 |
| 20. Sume las líneas 18 y 19 ............ (20) | 0 00 | 0 00 | 0 00 | 0 00 |
| 21. Adición a la Contribución por Falta de Pago de la Contribución Estimada (Sume las cantidades de las columnas de la línea 20. Traslade a la línea correspondiente de la planilla) ............ (21) | | | | 0 00 |

Período de Conservación: Diez (10) años

Reproducido por CEGsoft (EPRT)

| Anejo V Incentivos<br>Rev. 03.15 | CONTRIBUCIÓN SOBRE INGRESOS PARA NEGOCIOS EXENTOS<br>ACOGIDOS A LA LEY 135-1997<br>Para rendirse con el Formulario 460.3(II)DI<br>Año comenzado el _1_ de _1_ de 2014 y terminado el _31_ de _12_ de 2014 | 20**14** |
|---|---|---|

| Nombre del Contribuyente<br>New Steel, Inc.                    0 | Tipo de Decreto:<br>● Nuevo      ○ Renegociación | Número de Identificación Patronal<br>66-0405372 |
|---|---|---|
| Tipo de Negocio<br>Manufactura de Acero Estructural | ○ Conversión   ○ Extensión | Número de Caso:  07-135-I-61 |

| Período de efectividad para ingresos:<br>Comienza: 01/01/2008  Termina: 12/31/2018 | Número de empleos directamente relacionados con la manufactura o servicio designado:<br>Actual: ___29___  Requerido por Decreto: ___30___ |
|---|---|

### Parte I    Ingreso Promedio del Período Base (Aplica sólo a casos renegociados)

| Ingreso promedio de período base según determinado en su decreto: | 0 | |
|---|---|---|

### Parte II    Ingreso Neto Sujeto a Contribución

| | | | |
|---|---|---|---|
| 1. Ingreso neto (o pérdida) de operaciones del año (Parte V, línea 42) | (1) | (11,091) | 00 |
| 2. Menos: Ingreso de inversiones (Véanse instrucciones) | (2) | 0 | 00 |
| 3. Total ingreso (o pérdida) de fomento industrial (Línea 1 menos línea 2. Si tuvo pérdida en operaciones, no continúe. Anote cero (-0-) aquí y en la línea 5) | (3) | 0 | 00 |
| 4. Pérdida neta en operaciones del año anterior (Véanse instrucciones) | (4) | 0 | 00 |
| 5. Ingreso neto de fomento industrial sujeto a deducciones especiales (Línea 3 menos línea 4. Si es igual o menor a 0, no continúe) | (5) | 0 | 00 |
| 6. Deducciones especiales para negocios exentos (Véanse instrucciones Anejo V1 Incentivos) | | | |
| a) Deducción por nómina | (6a) | 0 | 00 |
| b) Deducción por gastos de adiestramiento y mejoramiento de los recursos humanos | (6b) | 0 | 00 |
| c) Deducción por gastos de investigación y desarrollo | (6c) | 0 | 00 |
| d) Deducción por inversión en edificios, estructuras, maquinaria y equipo | (6d) | 0 | 00 |
| e) Total de deducciones (Sume líneas 6(a) a la 6(d)) | (6e) | 0 | 00 |
| 7. Ingreso neto de fomento industrial después de las deducciones especiales (Línea 5 menos línea 6(e)) | (7) | 0 | 00 |
| 8. Deducción por compras de productos manufacturados en Puerto Rico (Véanse instrucciones) | (8) | 0 | 00 |
| 9. Ingreso neto de fomento industrial después de la deducción por compras de productos manufacturados en Puerto Rico (Línea 7 menos línea 8) | (9) | 0 | 00 |
| 10. Ingreso del período base bajo la Ley 73 (Anejo X Incentivos, Parte I) | (10) | 0 | 00 |
| 11. Menos: Ingreso del período base (Igual a la Parte I. Véanse instrucciones) | (11) | 0 | 00 |
| 12. Ingreso de fomento industrial sujeto a contribución (Suma de líneas 9 y 10 menos línea 11. Véanse instrucciones) | (12) | 0 | 00 |

### Parte III    Cómputo de la Contribución

| | | | |
|---|---|---|---|
| 1. Tasa fija de contribución sobre IFI: (1a) ○ 7%  (1b) ○ 4%  (1c) ○ otro  ☐ 0% | | | |
| 2. Total de contribución (Multiplique línea 12 por línea 1) | (2) | 0 | 00 |
| 3. Recobro de crédito reclamado en exceso (Anejo B Incentivos, Parte I, línea 3) | (3) | 0 | 00 |
| 4. Menos créditos: | | | |
| a) Créditos especiales otorgados (Véanse instrucciones) | (4a) | 0 | 00 |
| b) Crédito por productos manufacturados en Puerto Rico (Véanse instrucciones) | (4b) | 0 | 00 |
| c) Crédito por pérdida de la corporación matriz en los Estados Unidos (Véanse instrucciones) | (4c) | 0 | 00 |
| d) Crédito por contribuciones retenidas sobre pagos de regalías | (4d) | 0 | 00 |
| e) Crédito por donación de servidumbre de conservación elegible o donación de terreno elegible | (4e) | 0 | 00 |
| f) Crédito por inversión en construcción en centros urbanos (Véanse instrucciones) | (4f) | 0 | 00 |
| g) Crédito para comerciantes afectados por la revitalización de los cascos urbanos (Véanse instrucciones) | (4g) | 0 | 00 |
| h) Crédito por compras de productos manufacturados en Puerto Rico (Anejo X1 Incentivos, Parte I, línea 6) | (4h) | 0 | 00 |
| i) Crédito por inversión en investigación y desarrollo (Anejo X1 Incentivos, Parte III, línea 7(a)) | (4i) | 0 | 00 |
| j) Crédito por inversión en maquinaria y equipo (Anejo X1 Inc., Parte IV, línea 6 u 8, según aplique) | (4j) | 0 | 00 |
| k) Crédito para reducir el costo de energía eléctrica (Anejo X1 Incentivos, Parte V, línea 6) | (4k) | 0 | 00 |
| l) Crédito por inversión en proyectos estratégicos (Anejo X1 Incentivos, Parte VII, línea 5(a)) | (4l) | 0 | 00 |
| m) Crédito por inversión industrial (Anejo X1 Incentivos, Parte VIII, línea 6(a)) | (4m) | 0 | 00 |
| n) Otros créditos aplicables | (4n) | 0 | 00 |
| o) Total créditos (Sume líneas 4(a) a la 4(n)) | (4o) | 0 | 00 |
| 5. Total contribución a pagar (Suma de líneas 2 y 3 menos línea (4p). Anote la diferencia aquí y en el Formulario 460.3(II)DI, Parte I, línea 1(b)) | (5) | 0 | 00 |
| 6. Anote aquí: el 95% del total de la línea 5 ...... (6a) | 0 | 00  y el 5% del total de la línea 5 ...... (6b) | 0 | 00 |

Período de Conservación: Diez (10) años

Reproducido por CEGsoft (EPRT)

## Parte IV. — Ganancia Bruta en Ventas o Producción y Otros Ingresos

| | | | | |
|---|---|---|---|---|
| 1. Ventas netas | (1) | 5,985,865 | 00 | |
| Menos: Costo de ventas o costos directos de producción | | | | |
| 2. Inventario al comienzo del año ⭕ "C" ⭕ "C" o "VM" | | | | |
|   a) Materiales | (2a) | 3,308,809 | 00 | |
|   b) Artículos en proceso | (2b) | 216,616 | 00 | |
|   c) Artículos terminados o mercadería | (2c) | 245,467 | 00 | |
| 3. Compra de materiales o mercadería | (3) | 2,398,638 | 00 | |
| 4. Jornales directos | (4) | 1,003,378 | 00 | |
| 5. Otros costos directos (Detalle en Parte VI) | (5) | 1,662,633 | 00 | |
| 6. Total costo bienes disponibles para la venta (Sume líneas 2 a la 5) | (6) | 8,835,541 | 00 | |
| 7. Menos: Inventario al finalizar el año ⭕ "C" ⭕ "C" o "VM" | | | | |
|   a) Materiales | (7a) | 2,870,343 | 00 | |
|   b) Artículos en proceso | (7b) | 62,358 | 00 | |
|   c) Artículos terminados o mercadería | (7c) | 211,749 00 | 3,144,450 | 5,691,091 00 |
| 8. Ganancia bruta en ventas o producción | (8) | | | 294,774 00 |
| 9. Ingreso de servicios designados | (9) | | | 0 00 |
| 10. Renta | (10) | | | 0 00 |
| 11. Intereses | (11) | | | 0 00 |
| 12. Regalías | (12) | | | 0 00 |
| 13. Otros ingresos (Someta detalle) | (13) | | | 0 00 |
| 14. Total de Ingresos (Sume líneas 8 a la 13) | (14) | | | 294,774 00 |

## Parte V — Deducciones e Ingreso Neto en Operaciones

| | | (A) | (B) |
|---|---|---|---|
| 15. Compensación a oficiales (Complete Parte VI de la planilla) | (15) | 0 00 | 0 00 |
| 16. Sueldos, comisiones y bonificaciones a empleados | (16) | 0 00 | 135,882 00 |
| 17. Comisiones a negocios | (17) | 0 00 | 0 00 |
| 18. Seguro social federal (FICA) | (18) | 0 00 | 10,586 00 |
| 19. Seguro de desempleo | (19) | 0 00 | 1,232 00 |
| 20. Primas del Fondo del Seguro del Estado | (20) | 0 00 | 7,368 00 |
| 21. Seguro médico o de hospitalización | (21) | 0 00 | 16,226 00 |
| 22. Seguros | (22) | 0 00 | 52,138 00 |
| 23. Intereses | (23) | 0 00 | 21 00 |
| 24. Renta | (24) | 0 00 | 0 00 |
| 25. Contribución sobre la propiedad: (a) Mueble _5,717_ (b) Inmueble _0_ | (25) | 0 00 | 5,717 00 |
| 26. Otras contribuciones, patentes y licencias (Someta detalle) | (26) | 0 00 | 8,606 00 |
| 27. Pérdidas ocasionadas por fuego, huracán, robo u otros siniestros | (27) | 0 00 | 0 00 |
| 28. Gastos de automóviles (Millaje _0_) (Véanse instrucciones) | (28) | 0 00 | 0 00 |
| 29. Gastos de otros vehículos de motor (Véanse instrucciones) | (29) | 0 00 | 0 00 |
| 30. Gastos de comida y entretenimiento (Total _0_) (Véanse instrucciones) | (30) | 0 00 | 0 00 |
| 31. Gastos de viajes | (31) | 0 00 | 0 00 |
| 32. Servicios profesionales | (32) | 0 00 | 13,147 00 |
| 33. Aportaciones a planes de pensiones u otros planes calificados (Véanse inst. Someta Modelo SC 6042) | (33) | 0 00 | 0 00 |
| 34. Depreciación y amortización (Véanse instrucciones. Someta Anejo E) | (34) | 0 00 | 0 00 |
| 35. Deudas incobrables (Véanse instrucciones. Someta detalle) | (35) | 0 00 | 0 00 |
| 36. Donativos | (36) | 0 00 | 0 00 |
| 37. Reparaciones | (37) | 0 00 | 3,595 00 |
| 38. Regalías | (38) | 0 00 | 0 00 |
| 39. Cargos de administración | (39) | 0 00 | 0 00 |
| 40. Otras deducciones (Véanse instrucciones. Someta detalle) | (40) | 0 00 | 51,374 00 |
| 41. Total de deducciones (Sume líneas 15 a la 40, Columnas A y B, respectivamente) | (41) | 0 00 | 305,865 00 |
| 42. Ingreso neto o (pérdida) en operaciones del año (Línea 14 menos línea 41, Columna B. Anote aquí y en la Parte II, línea 1) | (42) | | (11,091) 00 |

## Parte VI — Otros Costos Directos

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. Jornales, sueldos y bonificaciones | (1) | 0 | 00 | 8. Participación distribuible del costo | (8) | 0 | 00 |
| 2. Seguro social federal (FICA) | (2) | 76,583 | 00 | 9. Reparaciones | (9) | 77,602 | 00 |
| 3. Seguro por desempleo | (3) | 8,371 | 00 | 10. Luz y agua | (10) | 0 | 00 |
| 4. Primas Fondo del Seguro del Estado | (4) | 56,436 | 00 | 11. Depreciación (Someta Anejo E) | (11) | 15,210 | 00 |
| 5. Seguro médico o de hospitalización | (5) | 73,742 | 00 | 12. Otros gastos (Someta detalle) | (12) | 1,354,689 | 00 |
| 6. Otros seguros | (6) | 0 | 00 | 13. Total otros costos directos (Sume líneas 1 a la 12. Anote aquí y en la Parte IV, línea 5) | (13) | 1,662,633 | 00 |
| 7. Arbitrios / Impuesto sobre Uso | (7) | 0 | 00 | | | | |

**Anejo V1 Incentivos**
Rev. 03.15

**CÓMPUTO DE LAS DEDUCCIONES ESPECIALES PARA NEGOCIOS EXENTOS BAJO LA LEY 135-1997**

Para rendirse con el Formulario 480.3(I)(DI)

Año comenzado el 1 __ de 2014 y terminado el 31 de 12 de 2014.

**2014**

Nombre del Contribuyente
New Steel, Inc.

Número de Identificación Patronal
66-0405372

Número de Caso
07-135-I-61

Tipo de Negocio
Manufactura de Acero Estructural

Período de vigencia para ingresos:
Comienza 01/01/2008   Termina 12/31/2018

Tipo de Decreto:
☒ Nuevo   ☐ Renegociación
☐ Conversión   ☐ Extensión

Número de empleos directamente relacionados con la manufactura o servicio designado: Actual: 29   Requerido por Decreto: 30

**Parte I   Cómputo de las deducciones especiales**

| | (a) Deducción por Nómina (manufactura) | (b) Gastos de Adiestramiento y Mejoramiento | (c) Gastos de Investigación y Desarrollo | (d) Inversión en Edificios, Estructuras y Maquinaria |
|---|---|---|---|---|
| 1. Cantidad de la deducción del año corriente | (1) 0 \|00 | 0 \|00 | 0 \|00 | 0 \|00 |
| 2. Suma de la línea 1, columnas (a) a la (d) | (2) 0 \|00 | | | |
| 3. Ingreso de fomento industrial (Anejo V Incentivos, Parte II, línea 5) | (3) 0 \|00 | | | |
| (Si la línea 2 es mayor que la línea 3, no continúe. Complete la Parte II) | | | | |
| 4. Menos: Deducciones especiales según línea 1: | | | | |
| (a) Deducción por Nómina | (4a) | 0 \|00 | | |
| (b) Gastos de adiestramiento y mejoramiento | (4b) | 0 \|00 | | |
| (c) Gastos de investigación y desarrollo | (4c) | 0 \|00 | | |
| (d) Inversión en edificios, estructuras y maquinaria | (4d) | 0 \|00 | | |
| (e) Total líneas 4(a) a la 4(d) | (4e) | 0 \|00 | | |
| 5. Ingreso de fomento industrial para determinar la cantidad de la deducción (Línea 3 menos línea 4(e)) | (5) | 0 \|00 | | |
| 6. Cantidad de la deducción por: | | | | |
| (a) Nómina | | | | |
| (1) 15% de la nómina de producción hasta un 50% de la línea 5 | (6a1) | 0 \|00 | | |
| (2) Si la línea 3 es menor de $500,000 y mantiene 15 o más de 15 personas a más, anote $100,000 | (6a2) | 0 \|00 | | |
| (3) Anote la mayor de la línea 6(a)(1) o 6(a)(2) | (6a3) | 0 \|00 | | |
| (b) Gastos de adiestramiento y mejoramiento de los recursos humanos | (6b) | 0 \|00 | | |
| (c) Gastos de investigación y desarrollo | (6c) | 0 \|00 | | |
| (d) Inversión en edificios, estructuras, maquinaria y equipo | (6d) | 0 \|00 | | |
| 7. Total de deducciones: | | | | |
| (a) Año corriente (Líneas 6(a)(3) a la 6(d), según aplique) | (7a) | 0 \|00 | | |
| (b) Años anteriores | (7b) | 0 \|00 | | |
| (c) Total (Suma líneas 7(a) y 7(b)) | (7c) | 0 \|00 | | |
| 8. Deducciones admisibles (Línea 7(c) hasta la cantidad de la línea 5. Si es menor que la línea 5, anote las cantidades en el Anejo V Incentivos, Parte II, línea 6, según aplique. Si es mayor que la línea 5, complete la Parte II de este anejo) | (8) | 0 \|00 | | |
| 9. Deducciones para arrastrar a años subsiguientes (Si la línea 7(c) es mayor que la línea 5 y no viene obligado a completar la Parte II) (Véanse instrucciones) | (9) | 0 \|00 | | |

Período de Conservación: Diez (10) años

Rev. 03.15

**Parte I**  **Reglas Especiales** (Aplican al negocio exento con derecho a reclamar más de una de las deducciones de las Columnas a, b, c y d de la Parte I, y la suma de dichas deducciones es mayor que el Ingreso de Fomento Industrial del año)

**Orden para reclamar las deducciones especiales**

| | | Anejo Incentivos - Página 2 | | |
|---|---|---|---|---|
| | | | Límite para el año | Arrastre a años futuros |

1. Ingreso de fomento industrial sujeto a deducciones especiales (Anejo V Incentivos, Parte II, línea 5) ..... (1)

2. Menos: Deducción por nómina (manufactura solamente)
  (a) 15% de la nómina de producción (Si la línea 1 es menor de $33,000 por empleo de producción, hasta un 50% de la línea 1) ..... (2a)
  (b) Si la línea 1 es menor de $500,000 y la corporación mantiene empleadas un promedio de 15 personas o más, anote $100,000 ..... (2b)
  (c) Anote la mayor de la línea 2(a) o 2(b) ..... (2c)

3. Ingreso de fomento industrial después de la deducción por nómina [Línea 1 menos línea 2(c)). No puede ser menor de cero) ..... (3)

4. Anote la línea 2(c) hasta la cantidad que no exceda la línea 1 (Anote en el Anejo V Incentivos, Parte II, línea 6(a)) ..... (4)

5. Ingreso de fomento industrial (Igual a la línea 3) ..... (5)

6. Menos: Deducción por gastos de adiestramiento y mejoramiento de los recursos humanos ..... (6)

7. Ingreso de fomento industrial después de la deducción (Línea 5 menos línea 6. No puede ser menor de cero) ..... (7)

8. Anote la línea 6 hasta el monto que no exceda la línea 5 (Anote en el Anejo V Incentivos, Parte II, línea 6(b)) ..... (8)

9. Ingreso de fomento industrial (Igual a la línea 7) ..... (9)

10. Menos: Deducción por gastos de investigación y desarrollo
  (a) Año anterior ..... (10a)
  (b) Año corriente ..... (10b)
  (c) Total líneas 10(a) y 10(b) ..... (10c)

11. Ingreso de fomento industrial después de la deducción (Línea 9 menos línea 10(c). No puede ser menor de cero) ..... (11)

12. Anote la línea 10(c) hasta el monto que no exceda la línea 9 (Anote en el Anejo V Incentivos, Parte II, línea 6(c)) ..... (12)

13. Exceso de la línea 10(c) sobre la línea 9 ..... (13)

14. Ingreso de fomento industrial (Igual a la línea 11. No puede ser menor de cero) ..... (14)

15. Menos: Deducción especial por inversión en edificios, estructuras, maquinaria y equipo
  (a) Año anterior ..... (15a)
  (b) Año corriente ..... (15b)
  (c) Total líneas 15(a) y 15(b) ..... (15c)

16. Ingreso de fomento industrial después de la deducción (Línea 14 menos línea 15(c). No puede ser menor de cero) ..... (16)

17. Anote la línea 15(c) hasta el monto que no exceda la línea 14 (Anote en el Anejo V Incentivos, Parte II, línea 6(d)) ..... (17)

18. Exceso de la línea 15(c) sobre la línea 14 ..... (18)

Período de Conservación: Diez (10) años

| Anejo X1 Incentivos<br>Rev. 03.15 | CÓMPUTO DE LOS CRÉDITOS CONTRIBUTIVOS PARA NEGOCIOS<br>EXENTOS BAJO LA LEY 73-2008<br>Para rendirse con el Formulario 480.3(II)DI<br>Año comenzado el _1_ de _1_ de 2014 y terminado el _31_ de _12_ de 2014 | 2014 |

| Nombre del Contribuyente | Número de Identificación Patronal |
|---|---|
| New Steel, Inc. | 66-0405372 |

### Parte I — Crédito por Compras de Productos Manufacturados en Puerto Rico

Compras elegibles de productos manufacturados en Puerto Rico:

| Negocio de manufactura del cual adquiere el producto (a) | Núm. de identificación patronal (b) | Num. de identificación como negocio de manufactura (c) | Valor de las compras Regulares (d) | Reciclados (e) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| 1. Total valor de las compras ................ (1) | | | 0 00 | 0 00 |
| 2. Crédito admisible por compras: | | | | |
| a) Productos manufacturados en Puerto Rico (Multiplique línea 1, Columna (d) x 25%) ...... (2a) | | | 0 00 | |
| b) Productos de materiales reciclados (Multiplique línea 1, Columna (e) x 35%) ...... (2b) | | | 0 00 | |
| c) Total de crédito (Sume líneas 2(a) y 2(b)) ...... (2c) | | | | 0 00 |
| 3. Arrastre de crédito de años anteriores (Acompañe anejo) ...... (3) | | | | 0 00 |
| 4. Total de crédito disponible (Sume líneas 2(c) y 3) ...... (4) | | | | 0 00 |
| 5. Total de contribución (Véanse instrucciones) ...... (5) | | | | 0 00 |
| 6. Crédito a reclamar (Hasta 50% de la línea 5. Traslade al anejo correspondiente de la planilla, según aplique) ...... (6) | | | | 0 00 |
| 7. Crédito a arrastrar a años subsiguientes (Línea 4 menos línea 6) ...... (7) | | | | 0 00 |

### Parte II — Crédito por Creación de Empleo

¿Incluyó con la planilla la certificación del Director Ejecutivo de la Compañía de Fomento Industrial? ☐ Sí ☐ No

| 1. Empleos creados durante el primer año de operaciones por zona industrial: | | | | |
|---|---|---|---|---|
| a) Vieques y Culebra ___0___ x $ 5,000 ...... (1a) | | | 0 00 | |
| b) Bajo desarrollo ___0___ x $ 2,500 ...... (1b) | | | 0 00 | |
| c) Desarrollo intermedio ___0___ x $ 1,000 ...... (1c) | | | 0 00 | |
| d) Alto desarrollo ___0___ x $ 0 ...... (1d) | | | 0 00 | |
| 2. Crédito por creación de empleo (Sume líneas 1(a) a la 1(c)) ...... (2) | | | | 0 00 |
| 3. Menos: a) Otros incentivos económicos recibidos por creación de empleo ...... (3a) | | 0 00 | | |
| b) Crédito reclamado en años anteriores | | | | |
| Año | | | | |
| Cantidad ___0___ ___0___ ___0___ ___0___ ___0___ ...... (3b) | | 0 00 | | |
| c) Total (Sume líneas 3(a) y 3(b)) ...... (3c) | | | | 0 00 |
| 4. Crédito disponible (Línea 2 menos línea 3(c)) ...... (4) | | | | 0 00 |
| 5. Crédito a reclamar en el año corriente (Traslade al Anejo X Incentivos, Parte IV, línea 5(b)) ...... (5) | | | | 0 00 |
| 6. Crédito a arrastrar a años subsiguientes (Línea 4 menos línea 5) ...... (6) | | | | 0 00 |

### Parte III — Crédito por Inversión en Investigación y Desarrollo, Pruebas Clínicas, Pruebas Toxicológicas, Infraestructura, Energía Renovable o Propiedad Intangible

¿Incluyó con la planilla la certificación del Director Ejecutivo de la Compañía de Fomento Industrial? ☐ Sí ☐ No

| 1. Inversión elegible especial (Informe detalle en la Parte IX) ...... (1) | | | 0 00 |
|---|---|---|---|
| 2. Crédito admisible por inversión (Multiplique línea 1 x 50%) ...... (2) | | | 0 00 |
| 3. Crédito atribuible contra la contribución determinada en el año corriente (Hasta 50% de la línea 2. Véanse instrucciones) ...... (3) | | | 0 00 |
| 4. Arrastre de crédito de años anteriores (Acompañe anejo) ...... (4) | | | 0 00 |
| 5. Total de crédito disponible atribuible a la contribución determinada del año corriente (Sume líneas 3 y 4) ...... (5) | | | 0 00 |
| 6. Crédito total disponible (Sume líneas 2 y 4) ...... (6) | | | 0 00 |
| 7. Menos: a) Crédito a reclamar contra la contribución determinada del año corriente (No mayor que línea 5. | | | |
| Traslado al anejo correspondiente de la planilla, según aplique) ...... (7a) | | 0 00 | |
| b) Crédito reclamado contra gastos de AEE y AAA ...... (7b) | | 0 00 | |
| c) Crédito traspasado a otra persona ...... (7c) | | 0 00 | |
| d) Total (Sume líneas 7(a) a la 7(c)) ...... (7d) | | | 0 00 |
| 8. Crédito a arrastrar a años subsiguientes (Línea 6 menos línea 7(d)) ...... (8) | | | 0 00 |

### Parte IV — Crédito por Inversión en Maquinaria y Equipo para la Generación y Uso Eficiente de Energía

¿Incluyó con la planilla la certificación de la Administración de Asuntos Energéticos? ☐ Sí ☐ No

| 1. Inversión elegible ...... (1) | | | 0 00 |
|---|---|---|---|
| 2. Crédito admisible por inversión en maquinaria y equipo (Multiplique línea 1 x 50%) ...... (2) | | | 0 00 |
| 3. Indique si es un negocio con decreto bajo la Sección 2(d)(1)(H) de la Ley 73 una disposición similar bajo cualquiera otra ley de incentivos: | | | |
| ☐ Sí (Pase a la línea 7, véase instrucciones) | | | |
| ☐ No (Continúe con la línea 4 | | | |
| 4. Total de contribución (Véanse instrucciones) ...... (4) | | | 0 00 |
| 5. Multiplique línea 4 x 25% ...... (5) | | | 0 00 |
| 6. Crédito a reclamar (Si marcó "No" en línea 3, anote línea 2 o 5, la que sea menor. Traslade al anejo correspondiente de la planilla, según aplique) ...... (6) | | | 0 00 |
| 7. Crédito admisible por inversión en maquinaria y equipo (Igual a la línea 2) ...... (7) | | | 0 00 |
| 8. Crédito a reclamar en el año corriente (No mayor de $8,000,000 por expansión sustancial, véanse instrucciones. Traslade al anejo correspondiente de la planilla, según aplique) ...... (8) | | | 0 00 |

Período de Conservación: Diez (10) años

Reproducido por CEGsoft (EPRT)

| **Parte V** | Crédito para Reducir el Costo de Energía Eléctrica | | |
|---|---|---|---|
| ¿Incluyó con la planilla la certificación de la Autoridad de Energía Eléctrica? [X] Sí [ ] No | | | |
| 1. Pagos efectuados a la AEE por concepto de consumo neto de energía eléctrica (Véanse instrucciones) | (1) | 170,936 | 00 |
| 2. Crédito admisible: | | | |
| a) Crédito base (Multiplique línea 1 x 3%) | (2a) | 5,128 | 00 |
| b) ¿Mantuvo durante el año contributivo un promedio de 25 empleados o más? [X] Sí [ ] No (Si marcó "Sí", multiplique línea 1 x 3.5%) | (2b) | 4,273 | 00 |
| c) ¿Mantuvo durante el año contributivo una nómina de $500,000 o más? [X] Sí [ ] No (Si marcó "Sí", multiplique línea 1 x 3.5%) | (2c) | 4,273 | 00 |
| d) Crédito máximo (Multiplique la línea 1 por 8%) | (2d) | 13,674 | 00 |
| 3. Crédito admisible para reducir el costo de energía eléctrica para el año corriente (Anote la suma de las líneas 2(a) a 2(c), o la línea 2(d), lo que resulte menor) | (3) | 13,674 | 00 |
| 4. Arrastre de crédito de años anteriores (Acompañe anejo) | (4) | 52,882 | 00 |
| 5. Total de crédito disponible (Sume línea 3 y 4) | (5) | 66,556 | 00 |
| 6. Crédito a reclamar (Traslade al anejo correspondiente de la planilla, según aplique) | (6) | | 00 |
| 7. Crédito a arrastrar a años subsiguientes (Línea 5 menos línea 6. Véanse instrucciones) | (7) | 66,556 | 00 |

| **Parte VI** | Crédito por Inversiones de Transferencia de Tecnología | | |
|---|---|---|---|
| 1. Total de pagos por regalías | (1) | 0 | 00 |
| 2. Crédito admisible por regalías: | | | |
| a) Negocios exentos sujetos a tasa fija (Multiplique línea 1 x 12%) | (2a) | 0 | 00 |
| b) Negocios exentos sujetos a imposición alterna (Multiplique línea 1 x 2%) | (2b) | 0 | 00 |
| 3. Arrastre de crédito de años anteriores (Acompañe anejo) | (3) | 0 | 00 |
| 4. Total de crédito disponible (Sume línea 2(a) o 2(b), según aplique, y 3) | (4) | 0 | 00 |
| 5. Crédito a reclamar (Traslade al Anejo X Incentivos, Parte IV, línea 5(f)) | (5) | 0 | 00 |
| 6. Crédito a arrastrar a años subsiguientes (Línea 4 menos línea 5) | (6) | 0 | 00 |

| **Parte VII** | Crédito por Inversión en Proyectos Estratégicos | | |
|---|---|---|---|
| 1. Total de crédito según Determinación Administrativa | (1) | | |
| 2. Arrastre de crédito de años anteriores (Acompañe anejo) | (2) | | |
| 3. Total de crédito disponible (Sume líneas 1 y 2) | (3) | | |
| 4. Total de contribución (Véanse instrucciones) | (4) | | |
| 5. Crédito a reclamar en el año corriente: | | | |
| a) Contra la responsabilidad contributiva (Hasta 50% de la línea 4. Traslade al anejo correspondiente de la planilla, según aplique) | (5a) | 0 | 00 |
| b) Contra gastos de AEE y AAA (Someta detalle) | (5b) | 0 | 00 |
| c) Crédito traspasado a otra persona | (5c) | 0 | 00 |
| d) Total de crédito reclamado en el año corriente (Sume líneas 5(a) a la 5(c)) | (5d) | 0 | 00 |
| 6. Crédito a arrastrar a años subsiguientes (Línea 3 menos línea 5(d)) | (6) | 0 | 00 |

| **Parte VIII** | Crédito por Inversión Industrial | | |
|---|---|---|---|
| 1. Total de crédito según Determinación Administrativa | (1) | | |
| 2. Crédito atribuible contra la contribución determinada en el año corriente según Determinación Administrativa | (2) | | |
| 3. Arrastre de crédito de años anteriores (Acompañe anejo) | (3) | | |
| 4. Total de crédito disponible atribuible a la contribución determinada del año corriente (Sume líneas 2 y 3) | (4) | | |
| 5. Crédito total disponible (Sume líneas 1 y 3) | (5) | | |
| 6. Menos: | | | |
| a) Crédito a reclamar contra la contribución determinada del año corriente (No mayor que línea 4. Traslade al anejo correspondiente de la planilla, según aplique) | (6a) | 0 | 00 |
| b) Crédito traspasado a otra persona | (6b) | 0 | 00 |
| c) Total (Sume líneas 6(a) y 6(b)) | (6c) | 0 | 00 |
| 7. Crédito a arrastrar a años subsiguientes (Línea 5 menos línea 6(c)) | (7) | 0 | 00 |

| **Parte IX** | Detalle de Gastos que Cualifican para Inversión Elegible Especial | | | |
|---|---|---|---|---|
| Complete esta parte para detallar los gastos de la línea 1, Parte III de este Anejo. | **Columna A** Gastos incurridos durante el año contributivo para el cual se rinde esta planilla. | | **Columna B** Gastos incurridos después del cierre del año contributivo y hasta la fecha de radicación de esta planilla, incluyendo prórroga. | **Columna C** Total |
|---|---|---|---|---|
| 1. Sueldos, comisiones y bonificaciones a empleados (Total $____0) (Ver inst.) (1) | 0 | 00 | 0 | 00 | 0 | 00 |
| 2. Gastos de nómina (2) | 0 | 00 | 0 | 00 | 0 | 00 |
| 3. Servicios profesionales (3) | 0 | 00 | 0 | 00 | 0 | 00 |
| 4. Seguros (4) | 0 | 00 | 0 | 00 | 0 | 00 |
| 5. Contribución sobre la propiedad (5) | 0 | 00 | 0 | 00 | 0 | 00 |
| 6. Otras contribuciones, patentes y licencias (6) | 0 | 00 | 0 | 00 | 0 | 00 |
| 7. Renta (7) | 0 | 00 | 0 | 00 | 0 | 00 |
| 8. Reparaciones y mantenimiento (8) | 0 | 00 | 0 | 00 | 0 | 00 |
| 9. Servicios públicos (agua, luz, teléfono) (9) | 0 | 00 | 0 | 00 | 0 | 00 |
| 10. Materiales y efectos (10) | 0 | 00 | 0 | 00 | 0 | 00 |
| 11. Otros gastos (Someta detalle) (11) | 0 | 00 | 0 | 00 | 0 | 00 |
| 12. Total (Traslade a la línea 1, Parte III de este anejo) (12) | 0 | 00 | 0 | 00 | 0 | 00 |

Período de Conservación: Diez (10) años

Reproducido por CEGsoft (EPRT)

New Steel, Inc.

66-0405372

A STATEMENT ATTACHED TO AND MADE A PART OF THE COMMONWEALTH

OF PUERTO RICO INDUSTRIAL INCENTIVES (DI) INCOME TAX RETURN

FOR THE YEAR ENDED 12/31/2014

Schedule V

Other Expenses

| Description | Total |
|---|---|
| Transportation | 205,305.00 |
| Freight | 43,474.00 |
| Cutting & Burning Gases | 61,671.00 |
| Tools | 4,217.00 |
| Other Expense | 160,510.00 |
| Utilities | 504,323.00 |
| Security | 112,389.00 |
| Rent | 262,800.00 |
| | $1,354,689.00 |

Reproducido por CEGsoft (EPRT)

New Steel, Inc.

66-0405372

**A STATEMENT ATTACHED TO AND MADE A PART OF THE COMMONWEALTH
OF PUERTO RICO INDUSTRIAL INCENTIVES (DI) INCOME TAX RETURN
FOR THE YEAR ENDED 12/31/2014**

Schedule V

Other Deductions

| Description | Total |
|---|---|
| Other Expense | (4.00) |
| Security | 8,233.00 |
| Supply | 7,090.00 |
| Communication | 7,716.00 |
| Management Fees | 25,000.00 |
| Other deductions | 3,339.00 |
| | $51,374.00 |

Reproducido por CEGsoft (EPRT)

# AUTORIDAD DE ENERGÍA ELÉCTRICA
## DIRECTORADO SERVICIO AL CLIENTE



## CERTIFICACIÓN ELECTRÓNICA OFICIAL

### CERTIFICACIÓN DE PAGO POR FACTURACIÓN DE ENERGÍA ELÉCTRICA PARA CRÉDITO CONTRIBUTIVO - LEY INCENTIVOS ECONÓMICOS PARA EL DESARROLLO DE PUERTO RICO

Certificación Núm. 092-15-04-00025
Fecha            04/04/2015

**Información del Cliente**

Nombre de la Industria:      New Steel Inc

Número Seguro Social Patronal:   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

Dirección Física:            URB IND J N MATOS, R887 K 1.0 CAROLINA
                             PR 00981

Número de Cuenta:            5549691000

Total pagado durante el período de: 01/01/2014 a 12/31/2014 por la cantidad de $170,936.35

Certificado por

Edwin Acevedo Rivera
Gerente, Oficina Ventas al por Mayor

**Modelo SC 2652**

Rev. 19 feb 15

**DISTRIBUCIÓN DE DEDUCCIÓN PARA EL CÓMPUTO DE LA CONTRIBUCIÓN ADICIONAL Y DETERMINACIÓN DE LA TASA APLICABLE PARA PROPÓSITOS DE LA CONTRIBUCIÓN ADICIONAL SOBRE INGRESO BRUTO – GRUPO DE CORPORACIONES RELACIONADAS**

**20 14**

☐ ENMENDADO

Nombre de la persona contacto para el grupo
Landa Umpierre PSC –Carlos Rivera

Dirección
PO BOX 9021216  San Juan, PR, 00902-1216

Número de Teléfono
787-758-6300

Número de Grupo
11284

Correo Electrónico (E-mail)
crivera@landaumpierre.com

Número de identificación patronal

| Nombre / Miembros del grupo | (A) Cierre de año contributivo (día/mes) | (A) Volumen de negocio para propósitos de radicación de estados financieros auditados | (B) Deducción para cómputo de contribución adicional para entidad que no debe exceder de $25,000. | (C) Ingreso bruto cubierto bajo decreto de exención no sujeto a contribución adicional sobre ingreso bruto | (D) Ingreso bruto para determinar la tasa de contribución adicional sobre ingreso bruto | (E) Ingreso bruto para aplicable para propósitos de la contribución adicional sobre ingreso bruto (Columna C – Columna D) | (F) Tasa contributiva aplicable para propósitos de la contribución adicional sobre ingreso bruto | (G) (H)/(I): Marque aquí si está dedicado principalmente a la venta de alimentos (Véanse inst.) |
|---|---|---|---|---|---|---|---|---|
| **Información del Grupo** | | | | | | | | |
| Nombre NextBrass NewsShed, Inc. Número de identificación patronal 66-94063872 | 31/DIC/CIEN | $5,985,865 | $0 | $5,985,865 | $5,985,865 | $0 | 0.35 % | ☐ |
| Nombre American Agencies Co., Inc. Número de identificación patronal 66-0405496 | 31/DIC/CIEN | $17,677,412 | $0 | $17,677,412 | $17,677,412 | $0 | 0.35 % | ☐ |
| Nombre Número de identificación patronal | | | | | | | | ☐ |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. Subtotal de la Columna (A) de esta página | (1) | $23,663,277 | | | | | | ☐ |
| 2. Subtotal de la Columna (A) de páginas adicionales | (2) | $0 | | | | | | ☐ |
| 3. Total de la Columna (A) (Sume líneas 1 y 2) | (3) | $23,663,277 | | | | | | ☐ |
| 4. Subtotal de la Columna (B) de esta página | (4) | | $0 | | | | | |
| 5. Subtotal de la Columna (B) de páginas adicionales | (5) | | $0 | | | | | |
| 6. Total de la Columna B (Sume las líneas 4 y 5. La cantidad de esta línea no puede exceder de $25,000) | (6) | | $0 | | | | | |
| 7. Subtotal de la Columna (E) de esta página | (7) | | | | | $17,677,412 | | ☐ |
| 8. Subtotal de la Columna (E) de páginas adicionales | (8) | | | | | $0 | | ☐ |
| 9. Subtotal de la Columna E (Sume las líneas 7 y 8) | (9) | | | | | $17,677,412 | | ☐ |

**JURAMENTO**

Declaro bajo penalidad de perjurio que este formulario ha sido examinado por mí, y que según mi mejor información y creencia, toda la información provista en el mismo es cierta, correcta y completa.

Nombre
Landa Umpierre PSC –Carlos Rivera

Firma Firmado Electrónicamente

Título

Fecha
4/14/2015 8:10:59 A.M.

Período de Conse _____ / Diez (10) años

# BALANCE SHEET AS OF AUGUST 15, 2015

American Agencies Co., Inc.
Balance Sheet
31-Aug-15

### Assets

| | | |
|---|---:|---:|
| **Current assets:** | | |
| Cash | $ | 105,211 |
| Accounts receivable, net | | 2,257,429 |
| Inventories | | 1,790,311 |
| Costs and estimated earnings in excess of billings on uncompleted contracts | | 3,365 |
| Prepaid expenses | | 119,708 |
| Total current assets | | 4,276,024 |
| Property and equipment, net | | 71,507 |
| Other assets | | 171,382 |
| Total assets | $ | 4,518,913 |

### Liabilities and Stockholders' Deficit

| | | | |
|---|---:|---:|---:|
| **Current liabilities:** | | | |
| Notes payable | | $ | 2,593,740 |
| Accounts payable: | | | |
| Affiliate | $ 5,311,013 | | |
| Trade and other | 477,002 | | |
| | | | 5,788,015 |
| Customers' deposits | | | 266,819 |
| Accrued liabilities | | | 234,380 |
| Billings in excess of costs and estimated earnings on uncompleted contracts | | | 664,604 |
| Total current liabilities | | | 9,547,558 |
| Pension accrual | | | 149,482 |
| Due to former related party | | | 400,000 |
| **Stockholders' deficit:** | | | |
| Class A Common Stock, $100 par value. Authorized 50,000 shares; issued and outstanding 181 shares | 18,100 | | |
| Accumulated deficit | (4,947,963) | | |
| Accumulated other comprehensive loss | (648,264) | | |
| Total stockholders' deficit | | | (5,578,127) |
| Commitments and contingencies | | | |
| Total liabilities and stockholders' deficit | | $ | 4,518,913 |

**American Agencies Co., Inc.**
**Statement of Operations and Accumulated Deficit**
**For the eight months period ended August 31, 2015**

| | | |
|---|---:|---:|
| Revenues: | | |
| Installation contracts | | $ 4,183,820 |
| Sales | | 2,884,158 |
| Other income | | 961 |
| Management fee | | 16,667 |
| Total revenues | | 7,085,606 |
| Costs and expenses: | | |
| Installation costs | $ 4,132,580 | |
| Cost of sales | 1,998,643 | |
| Selling, general and administrative expenses | 1,586,981 | |
| Total costs and expenses | | 7,718,204 |
| Operating loss | | (632,598) |
| Interest expense | | (113,958) |
| Net loss | | (746,556) |
| Accumulated deficit at January 1, 2015 | | (4,201,407) |
| Accumulated deficit at August 31, 2015 | | $ (4,947,963) |

**New Steel, Inc.**
**Balance Sheet**
**31-Aug-15**

### Assets

| | | |
|---|---|---:|
| Current assets: | | |
| Cash | $ | 36,907 |
| Accounts receivable from affiliate | | 5,311,013 |
| Accounts receivable other | | 306,208 |
| Inventories | | 2,169,543 |
| Prepaid income tax | | 52,308 |
| Prepaid expenses | | 42,696 |
| Other assets | | 3,348 |
| Total current assets | | 7,922,023 |
| Property and equipment, net | | 42,712 |
| | $ | 7,964,735 |

### Liabilities and Stockholders' Deficit

| | | |
|---|---|---:|
| Current liabilities: | | |
| Accounts payable | $ | 6,828 |
| Accrued liabilities | | 153,903 |
| Total current liabilities | | 160,731 |
| Redeemable cumulative preferred stocks | | 9,431,236 |
| Total liabilities | | 9,591,967 |
| Stockholders' deficit: | | |
| Class A Common Stock, $100 par value. Authorized 50,000 shares, issued and outstanding 724 shares | | 72,400 |
| Accumulated deficit | | (1,699,632) |
| | | (1,627,232) |
| Commitments | | — |
| | $ | 7,964,735 |

**New Steel, Inc.**
**Statement of Operations and Accumulated Deficit**
**For the eight months period ended August 31, 2015**

**Revenues:**

| | | |
|---|---|---:|
| Sales to affiliate | $ | 2,413,178 |
| Other income | | 12,950 |
| Total revenues | | 2,426,128 |

**Costs and expenses:**

| | |
|---|---:|
| Cost of sales | 2,490,322 |
| Selling, general and administrative expenses | 225,476 |
| Management fees | 16,667 |
| Total costs and expenses | 2,732,465 |
| Net loss | (306,337) |
| Accumulated deficit at January 1, 2015 | (1,393,295) |
| Accumulated deficit at August 31, 2015 | $ (1,699,632) |



Exhibit

### AMERICAN AGENCIES CO., INC. & NEW STEEL, INC.
### CONSOLIDATED MONTHLY OPERATING REPORTS
### AS OF NOVEMBER 2015

| | Sep-15 | Oct-15 | Nov-15 | Cumulative |
|---|---|---|---|---|
| Funds at beginning of period | $ 88,133 | $ 225,744 | $ 309,666 | 88,133 |
| Cash Sales | 376,869 | 529,272 | 382,986 | 1,289,126 |
| Minus: Cash refunds | (452) | (280) | - | (732) |
| Net cash sales | 376,417 | 528,992 | 382,986 | 1,288,395 |
| Accounts receivable | | | | - |
| Other receipts | 75,069 | 117,568 | 77,963 | 270,599 |
| Total Receipts | 451,486 | 646,560 | 460,948 | 1,558,994 |
| Total funds available for operations | 539,619 | 872,304 | 770,614 | 1,647,127 |
| **Disbursements:** | | | | |
| A. Advertising | - | | 2,028 | 2,028 |
| B. Bank Charges | 1,201 | 5,172 | 4,491 | 10,864 |
| C. Contract Labor | - | | | - |
| D. Fixed Asset Payments | - | | | - |
| E. Insurance | 17,604 | 17,465 | 8,767 | 43,836 |
| F. Inventory Payments | - | | | - |
| G. Leases | - | | | - |
| H. Manufacturing Supplies | 103,763 | 211,626 | 182,212 | 497,601 |
| I. Office Supplies | 158 | 10,194 | 1,174 | 11,526 |
| J. Payroll - Net | 55,243 | 66,757 | 64,131 | 186,131 |
| K. Professional Fees (Accounting & Legal) | - | - | - | - |
| L. Rent | 89 | 40,799 | 40,467 | 81,355 |
| M. Repairs & Maintenance | 1,770 | 3,616 | 3,675 | 9,062 |
| N. Secured Creditor Payments | 16,670 | 16,670 | 16,670 | 50,010 |
| O. Taxes Paid - Payroll | 15,232 | 23,248 | 18,756 | 57,236 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | 5,070 | 28,464 | 34,242 | 67,776 |
| Q. Taxes Paid - Other | | 19 | 47,703 | 47,722 |
| R. Telephone | 3,751 | 4,626 | 3,443 | 11,820 |
| S. Travel & Entertainment | - | | | - |
| Y. U.S. Trustee Quarterly Fees | | 650 | 1,625 | 2,275 |
| U. Utilities | 6,361 | 14,941 | 10,173 | 31,475 |
| V. Vehicle Expenses | - | 120 | - | 120 |
| W. Other Operating Expenses (See MOR-3) | 86,961 | 118,272 | 80,453 | 285,686 |
| Total disbursements | 313,875 | 562,638 | 520,010 | 1,396,523 |
| Ending balance | $ 225,744 | $ 309,666 | $ 250,604 | 250,604 |

EXHIBIT
3

Blumberg No. 5119

**AMERICAN AGENCIES CO., INC. & NEW STEEL, INC.**
**CONSOLIDATED LIQUIDATION ANALYSIS**
*September 15, 2015*

| ASSETS | ESTIMATED VALUE | % OF ESTIMATED VALUE | LIQUIDATION VALUE | LIENS | Notes | NET VALUE |
|---|---|---|---|---|---|---|
| Cash | 121,712 | 100% | 121,712 | - | 1 | 121,712 |
| Security Deposit | 800 | 100% | 800 | - | 2 | 800 |
| Accounts Receivable - Trade | 2,722,824 | 50% | 1,361,412 | 1,361,412 | A & 3 | - |
| Other Receivable- Employees | 51,840 | 10% | 5,184 | | 3 | 5,184 |
| Inventory | 4,204,779 | 50% | 2,102,390 | 1,158,915 | A & 4 | 943,475 |
| Vehicles | 152,400 | 50% | 76,200 | - | 5 | 76,200 |
| Machinery Equipment | 400,000 | 50% | 200,000 | - | B & 5 | 200,000 |
| Tax Credit | 114,000 | 0% | - | - | C | - |
| | | | | | | |
| TOTAL ESTIMATED LIQUIDATION VALUE | $ 7,768,354 | | $ 3,867,697 | $ 2,520,327 | | $ 1,347,371 |
| LESS: PAYMENTS | | | | | | |

**ADMINISTRATIVE CLAIMS: (Chapter 7)**

| | | | | | | |
|---|---|---|---|---|---|---|
| Legal Fees | | | 40,000 | | | 40,000 |
| Accounting and Consulting | | | 20,000 | | | 20,000 |
| Chapter 7 Trustee fees | | | 139,281 | | | 139,281 |
| | | | | | | |
| TOTAL ADMINISTRATION EXPENSES | | | 199,281 | | 6 | 199,281 |

***AMOUNT AVAILABLE FOR PAYMENTS OF CREDITORS***
***OTHER THAN CHAPTER 7 ADMINISTRATIVE EXPENSES***  1,148,090

**ADMINISTRATIVE CLAIMS: (Chapter 11)**

| | | | | | | |
|---|---|---|---|---|---|---|
| Legal Fees | | | 100,000 | | | |
| Accounting and Consulting | | | 35,000 | | | |
| US Trustee Fees | | | 4,500 | | | |
| Security Holdings, Pioneer Industries | | | 30,149 | | | |
| Caribe Tecno, S.E. | | | 141,281 | | | |
| Christmas Bonus under Collective Bargaining | | | 24,359 | | | |
| | | | 335,289 | | | 335,289 |
| | | | | | | |
| TOTAL ADMINISTRATION EXPENSES | | | | | 7 | 335,289 |
| | | | | | | 812,801 |

**LESS PAYMENTS TO EXECUTORY CONTRACTS**  135,695

**LESS PAYMENTS TO PRIORITY**

| | | | | | | |
|---|---|---|---|---|---|---|
| Vacations- Employees | | | 58,648 | | | |
| Department of Treasury - IRS | | | 47,378 | | | 106,026 |

***AMOUNTS AVAILABLE FOR UNSECURED CREDITORS***   $ 571,080

***TOTAL UNSECURED***   $ 10,426,331
5%

Note A   Amount due to BPPR at the filing date is $2,520,327, collateralized by the accounts receivable, inventory and machinery & equipment

Note B   BPPR's debt is also collateralized with machinery & equipment. If the value of the accounts receivable and inventory is not sufficient to cover the debt,
the proceeds from the sale of machinery will be used to cover any deficiency.

Note C   This tax credit is not transferable, therefore value is zero.

# AMERICAN AGENCIES CO., INC & NEW STEEL, INC.
## NOTES TO CONSOLIDATED LIQUIDATION ANALYSIS
### AS OF SEPTEMBER 15, 2015

In connection with developing the Plan included in the Disclosure Statement to which this is an exhibit, management has prepared a Liquidation Analysis (the "Analyses") which may be helpful to holders of claims and interests in reaching their determination of whether to accept or reject the Plan. The Analysis is based on the assumptions discussed below.

The Analysis reflects AMERICAN AGENCIES CO., INC & NEW STEEL, INC. (Consolidated) (The Debtor's) estimate of the proceeds they would realize if Debtor was to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is based on the assets of Debtor as of filing date with values at September 15, 2015. Underlying the Liquidation Analysis are a number of estimates and assumptions that, although developed and considered reasonable by management, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of Debtor and its management, and upon assumptions with respect to the liquidation decisions which could be subject to change.

**ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF DEBTOR WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.**

The issues of potential recoveries from avoidance actions and final bankruptcy claims reconciliation have not been addressed in the Liquidation Analysis.

## NOTE 1 - CASH

The Liquidation Analysis assumes that operations during the liquidation period would not generate additional cash available for distribution except for net proceeds on the disposition of non-cash assets.

## NOTE 2 – SECURITY DEPOSITS

Represent deposits in utilities companies. The liquidation value for security deposits is $800.

## NOTE 3 – ACCOUNTS RECEIVABLE

Accounts receivable trade consist of amount due from customers and retainage withheld in completed contracts. The estimate value is $2,722,824 as of September 15, 2015. The liquidation percentage value was estimated at 50% for the scheduled value of the account receivable. The liquidation value for accounts receivable is $1,361,412.

Accounts receivable other consist of amount due from employees. The liquidation percentage value was estimated at 10% for the scheduled value of the account receivable. The liquidation value for accounts receivable is $5,184.

## NOTE 4 – INVENTORY

Inventory consists mainly of doors, fitting materials, steel and related products. The estimated value is as of as of September 15, 2015. The liquidation was estimated at 50% for the scheduled value of the inventory.

## NOTE 5 – VEHICLES AND MACHINERY AND EQUIPMENT

Vehicles and machinery and equipment consist primarily of vehicles, office equipment and machinery with a liquidation value of 50%.

1

## AMERICAN AGENCIES CO., INC & NEW STEEL, INC.
### NOTES TO CONSOLIDATED LIQUIDATION ANALYSIS
### AS OF SEPTEMBER 15, 2015

**NOTE 6 – ADMINISTRATIVE CLAIMS, CHAPTER 7**

These expenses represent fees that could be collected by a Trustee due to the Liquidation of the Estate in the event of a conversion to Chapter 7.  Trustee's fees are estimated based the actual payments in distributions to creditors in the case and based on the following table:

25% of the first $5,000 payments in distribution
10% of the following $45,000 payments in distribution
5% of the following $950,000 payments in distribution
3% of all payments in distribution over $1,000,000

There would be approximately $200,000 distribution of proceeds to the Administrative Chapter 7 claimants according to the analysis.

**NOTE 7 - ALLOCATION OF NET ESTIMATED LIQUIDATION PROCEEDS TO ADMINISTRATIVE CHAPTER 11**

There would be approximately $335,000 distribution of proceeds to the Administrative Chapter 11 claimants according to the detail included in the analysis.

2

EXHIBIT 4

AMERICAN AGENCIES CO., INC.
PAYMENTS UNDER PLAN
Petition Date: 9/15/2015

Bar Date: 10/7/2015
Bar Date Government: 3/14/2016
Effective date: Approximates 30 days after confirmation

| Creditor | Claim | Class | Notes | Amount expected to be allowed | Amount to be paid |
|---|---|---|---|---|---|
| **CLASS 1  ADMINISTRATIVE CLAIMS** | | 1 | | $  335,289 | $  335,289 |
| | | | | | |
| **CLASS 2  SECURED CLAIM- BPPR** | 2-1 | 2 | | 2,433,012 | 2,433,012 |
| | | | | | |
| **CLASS 3  LEASES AND EXECUTORY CONTRACTS** | | | | | |
| Assa, Inc. | 12-1 | 3 | | 56,205 | 56,205 |
| Cornell Iron Works, Inc. | | 3 | | 2,015 | 2,015 |
| Detex Corp. | | 3 | | 1,702 | 1,702 |
| Knickerbocker Apart. Corp. | 12-1 | 3 | | - | - |
| McKinney Products Co. | 12-1 | 3 | | - | - |
| Sargent MFG. Co. | 12-1 | 3 | | - | - |
| Security Holdings, LLC | | 3 | | - | - |
| | | | | 59,922 | 59,922 |
| | | | | | |
| **CLASS 4  PRIORITY CLAIMS** | | | | | |
| Employees- 507(a)(4) | | 4 | A | 27,029 | 27,029 |
| Former Employees | | 4 | | 31,619 | 31,619 |
| | | | | 58,648 | 58,648 |
| | | | | | |
| **CLASS 5  GENERAL UNSECURED - GOVERNMENTAL CLAIMS** | | | | | |
| State Insurance Fund | 13-1 | 5 & 3-1 (NS) | | 1,508 | 377 |
| | | | | | |
| **CLASS 6  GENERAL UNSECURED - CLAIMS** | | | | | |
| 65 Rental & Sale Corp. | | 6 | | - | - |
| Accredited Lock Supply | | 6 | | 1,385 | 346 |
| Air Louvers | | 6 | | 53 | 13 |
| Alcalde Auto Parts, Inc. | | 6 | | 152 | 38 |
| Allied Waste Service | | 6 | | 179 | 45 |
| Aluma Systems | | 6 | | 83 | 21 |
| Archilla | | 6 | | 139 | 35 |
| Astro Industrial Supply | | 6 | | - | - |
| AT&T Mobility | | 6 | | - | - |
| Autocentro Toyota | | 6 | | - | - |
| Blueline Rental PR, Inc. | | 6 | | - | - |
| C.R. Lawrence Co., Inc. | | 6 | | - | - |
| Café Yaucono | | 6 | | - | - |
| Cal-Royal Products, Inc. | | 6 | | 16,717 | 4,179 |
| Caribbean Express Freight, Inc. | | 6 | | 6,329 | 1,582 |
| Carolina Building Material | 9-1 | 6 | | 144 | 36 |
| Centro Médico del Turabo | | 6 | | 181,452 | 45,363 |
| Centro Pinturas Carolina, Inc. | | 6 | | 476 | 119 |
| Certified Rigging & Lifting Co. | | 6 | | - | - |
| Cortelco Systems PR, Inc. | | 6 | | - | - |
| Cortelco Systems PR, Inc. | | 6 | | 418 | 105 |
| Crespo Ice Plant, Inc. | | 6 | | 262 | 66 |
| Cypress Truck Lines, Inc. | 10-1 | 6 | | 17,385 | 4,346 |
| Daniel Delgado Lopez | | 6 | | 17,635 | 4,409 |
| Dorma USA, Inc. | | 6 | | 495 | 124 |
| Electromatic de PR | | 3 | | 218 | 55 |
| Eduard Electrical & Mech | | 6 | | 2,100 | 2,100 |
| Hager Hinge Company | 3-1 | 6 | | 16,840 | 16,840 |
| Federal Express Corp. | | 6 | | 136 | 34 |
| Fire Foe, Inc. | | 6 | | 68 | 17 |
| Gonzalez Sani -Tech, Inc. | | 6 | | 178 | 45 |
| Gonzalez Trading Corp. | | 6 | | 2,177 | 544 |
| Grainger Caribe, Inc. | | 6 | | 422 | 106 |
| Grainger Caribe, Inc. | | 6 | | 86 | 22 |

AMERICAN AGENCIES CO., INC.
PAYMENTS UNDER PLAN
Petition Date: 9/15/2015

Bar Date: 1/17/2016
Bar Date Government: 3/14/2016
Effective date: Approximates 30 days after confirmation

| Creditor | Claim | Class | Notes | Amount expected to be allowed | Amount to be paid |
|---|---|---|---|---|---|
| Hilti Caribe, LLC. | | 6 | | 264 | 66 |
| Impresos Ramos | | 6 | | 262 | 66 |
| Indumet Corporation | | 6 | | 385 | 96 |
| Infra-Metals Company | | 6 | | 4,350 | 1,088 |
| Instant Print Corp. | | 6 | | 247 | 62 |
| Joviri, Inc. | | 6 | | 420,000 | 105,000 |
| Jose L. Camacho | | 6 | | 1,300 | 325 |
| La Casa de los Tornillos | | 6 | | 684 | 171 |
| Lawrence Hardware 1, Inc. | | 6 | | 6,780 | 1,695 |
| Lambton Door | | 6 | | 755 | 189 |
| Linde Gas PR, Inc. | | 6 | | 1,182 | 296 |
| Linde Gas PR, Inc. | | 6 | | 250 | 63 |
| Luis Figueroa | | 6 | | 4,840 | 1,210 |
| Luis Figueroa | | 6 | | 265 | 66 |
| Maderera Donestevez, Inc. | | 6 | | 459 | 115 |
| Magic Transport, Inc. | | 6 | | - | - |
| Master Lock Company | | 6 | | - | - |
| McNichols Company | 6-1 | 6 | | 1,385 | 346 |
| Messer Cutting Systems, Inc. | 11-1 | 6 | | 1,895 | 474 |
| MM Supply, Inc. | | 6 | | 316 | 79 |
| Nu-vue Industries of PR | | 6 | | - | - |
| Office Depot | | 6 | | - | - |
| Office -IT | | 6 | | - | - |
| Office -IT | | 6 | | 106 | 27 |
| Omnia Industries, Inc. | 5-1 | 6 | | 1,044 | 261 |
| Overly Door Company | | 6 | | - | - |
| Pemko MFG, Co. | | 6 | | 1,353 | 338 |
| Pep Boys | | 6 | | - | - |
| Pitney Bowers PR, Inc. | | 6 | | - | - |
| Power Security, Inc. | | 6 | | - | - |
| PR Wire Products, Inc. | 9-1 | 6 | | 2,719 | 680 |
| PRASA | | 6 | | - | - |
| Praxair PR | | 6 | | 3,951 | 988 |
| Prendes Safety | | 6 | | - | - |
| Prendes Safety | | 6 | | 255 | 64 |
| PREPA | | 6 | | 3,980 | 995 |
| Quality Industrial Safety Corp. | | 6 | | - | - |
| Rafael Benitez Carillo, Inc. | | 6 | | - | - |
| RICOH Puerto Rico, Inc. | | 6 | | 52 | 13 |
| RIMCO, Inc. | | 6 | | - | - |
| Roberto Carbonell | | 6 | | 1,375 | 344 |
| Rodriguez Vacuum Services, Inc. | | 6 | | 2,250 | 563 |
| Safety Zone | | 6 | | 160 | 40 |
| Safety Zone | | 6 | | 66 | 17 |
| Sanchez Technical Refrigeration | | 6 | | 125 | 31 |
| Sherwin Williams Co. | | 6 | | 736 | 184 |
| Sigma Sales, Inc. | | 6 | | - | - |
| Steel & Pipes, Inc. | | 6 | | 384 | 96 |
| Steel Services & Supplies, Inc. | | 6 | | 6,978 | 1,745 |
| Super Automotive Products | | 6 | | 52 | 13 |
| Tecno Lite de PR, Inc. | | 6 | | 350 | 88 |
| Teddy Rental Repair & Services | | 6 | | 238 | 60 |
| Teddy Rental Repair & Services | | 6 | | 84 | 21 |
| TRIMCO | | 6 | | - | - |
| Trujito Trucking Rental Inc. | | 6 | | - | - |
| Victory Dist. | | 6 | | 1,680 | 420 |
| Universal Industrial Products | | 6 | | - | - |
| Western Aviation Service | | 6 | | - | - |
| Zincalum | | 6 | | - | - |
| | | | | 739,086 | 198,976 |

AMERICAN AGENCIES CO. INC.
Case:15-07088-BKT11    Doc#:109   Filed:01/13/16   Entered:01/13/16 18:12:55    Desc: Main
PAYMENTS UNDER PLAN
Bar Date: 1/7/2016
Document   Page 81 of 95
Petition Date: 9/15/2015
Bar Date Governmental 3/14/2016
Effective date:  Approximates 30 days after confirmation

| Creditor | Claim | Class | Notes | Amount expected to be allowed | Amount to be paid |
|---|---|---|---|---|---|
| **CLASS 7** | **GENERAL UNSECURED - REJECTED CONTRACTS** | | | | |
| Pension Administrato Plan | | Pending Closing and Administration Matter | | Claim to be determined | |
| Collective Bargaining, United Steel Workers | | See also Class 1 & 7 | | Claim to be determined | |
| **CLASS 8** | **CONTINGENT LITIGATION CLAIMS** | | | - | |
| Carlos Aponte Bermudez | | 8 | B | 100,000 | - |
| Jose R. Rivera Cruz | | 8 | C | 74,415 | 18,604 |
| Wal-Mart de Puerto Rico | | 8 | B | 100,000 | - |
| | | | | 274,415 | 18,604 |
| | | | | | |
| **CLASS 9** | **DEBTS TO SHAREHOLDERS- PREFERRED CLASSES  A & B** | | | | |
| Angel Rodriguez Gonzalez | | 9 | | 6,455,773 | 1,613,943 |
| Guillermo Menendez Rodriguez | | 9 | | 578,579 | 144,645 |
| Lucy Rodriguez | | 9 | | 1,818,305 | 454,576 |
| Priscila Menendez | | 9 | | 578,579 | 144,645 |
| | | | | 9,431,235 | 2,357,809 |
| **CLASS 10** | **EQUITY SECURITY HOLDERS AND/OR INTEREST HOLDERS** | | | - | |
| **PRIORITIES, including interest at 3.25%** | | | | | |
| IRS | | 1-1 & 8-1 | 3 | 47,378 | 47,378 |
| | | | | 47,378 | 47,378 |
| | | | | $    13,380,493 | $    5,510,015 |

Note A    Amount due to employees will be paid through compensatory hours.
Note B    To be paid by insurance company, coverage not rejected
Note C    Employee
Note D    Claims to be adjusted after the Bar Date

EXHIBIT

5

Blumberg No. 5118

# LEASE AGREEMENT AMERICAN AGENCIES

Contrato de Arrendamiento
Página # 1

## CONTRATO DE ARRENDAMIENTO

En la ciudad de San Juan, Puerto Rico, hoy día veinticuatro (24) de abril del año dos mil catorce (2014).

### COMPARECEN

DE LA PRIMERA PARTE Y DENOMINADO DE AQUÍ EN ADELANTE COMO "EL ARRENDADOR": **JOVIRI, INC.,** corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por su presidente ANGEL A. RODRIGUEZ.

DE LA SEGUNDA PARTE Y DENOMINADO DE AQUI EN ADELANTE COMO "EL ARRENDATARIO": **AMERICAN AGENCIES CO., INC.,** corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por su presidente OMIR MENDEZ

### EXPONEN

POR CUANTO, EL ARRENDADOR es el dueño en pleno dominio de una propiedad inmueble localizada en Avenida Ponce de León 1554, (El Cinco) Barrio Monacillos, Rio Piedras, Puerto Rico, 00927, consistente en un edificio de oficinas y almacén, cuya descripción se detalla en el Exhibit A, el cual se hace formar parte integral de este contrato, referida de aquí en adelante como la "Propiedad";

POR CUANTO, EL ARRENDADOR ha convenido con el ARRENDATARIO en el arrendamiento de la propiedad descrita anteriormente. Disponiéndose que dicha propiedad se utilizará única y exclusivamente para fines de la operación comercial del ARRENDATARIO, uso que no podrá variarse sin el consentimiento escrito del ARRENDADOR;

POR TANTO, por el presente y en consideración a los cánones de arrendamiento y otros pagos a ser efectuados por EL ARRENDATARIO al ARRENDADOR, y en consideración a los acuerdos, condiciones y términos a ser realizados, mantenidos y cumplidos por las partes, según se describen en este Contrato, EL ARRENDADOR por el presente cede y da en arrendamiento al ARRENDATARIO, y EL ARRENDATARIO por el presente arrienda y alquila del ARRENDADOR el inmueble, por el término de arrendamiento que se indica más adelante, sujeto a los siguientes:

### TERMINOS Y CONDICIONES

1. <u>TÉRMINO BÁSICO</u>. EL ARRENDADOR cede en arrendamiento al ARRENDATARIO, la propiedad por un término de diez (10) años, a partir del primero de enero de dos mil quince (2015).

2. <u>RENOVACION</u>. Luego de expirado el Termino Básico, el ARRENDATARIO tendrá la opción de extender el término de este contrato, bajo los mismos términos y condiciones, por un término adicional de diez (10) años, previo aviso del ARRENDATARIO por escrito, de su intención de renovar, realizado con por lo menos noventa (90) días de anticipación al vencimiento

Contrato de Arrendamiento
Página # 2

del Termino Básico.

3.   RENTA. Constituye el canon de arrendamiento para los primeros cinco años del Término Básico la suma de CINCO MIL DOLARES ($5,000.00) mensuales; Para los años 6 al 10 del Termino Básico, el canon de arrendamiento será la suma de CINCO MIL DOLARES ($5,000.00) mensuales más el porcentaje correspondiente al índice del consumidor, según lo publique la autoridad correspondiente. Dichos cánones serán pagaderos en mensualidades adelantadas el día primero (1ro.) de cada mes natural, en el domicilio de EL ARRENDADOR. El canon de arrendamiento convenido es de naturaleza TRIPLE NETO, por consiguiente, serán por cuenta del ARRENDATARIO todos los gastos relacionados con el local objeto del arrendamiento, el pago de todas las reparaciones corrientes u ordinarias y cualquier gasto de mero mantenimiento y/o conservación de la propiedad, sin derecho a reembolso, así coma el pago de las contribuciones sobre la propiedad mueble. El ARRENDATARIO expresamente se obliga a no hacer compensación, ni deducción de clase alguna al canon de renta convenido.

4.   MANTENIMIENTO. EL ARRENDATARIO acepta haber recibido la propiedad en buenas condiciones, con las instalaciones de agua, corriente eléctrica y equipo sanitario en buen estado y se obliga a conservarla con el celo y cuidado de un buen padre de familia, comprometiéndose a reparar cualquier daño que se le ocasione a dicha propiedad, al mantenimiento y reparaciones ordinarias de la misma y a entregarla en las mismas condiciones en que la recibe, salvo el deterioro usual y natural por el transcurso del tiempo. EL ARRENDADOR solo será responsable por reparaciones de índole mayor, tales como defectos estructurales.

5.   SERVICIOS. El ARRENDATARIO se obliga a satisfacer todos los pagos por concepto de consumo de agua, mantenimiento y energía eléctrica. Cualquier otro servicio que EL ARRENDATARIO suscriba con posterioridad a la fecha de este otorgamiento será por su cuenta y cargo.

6.   SUBARRENDAMIENTO. Ni la parte ARRENDATARIA ni su representante legal, podrá vender, ceder, transferir o hipotecar este contrato de arrendamiento o interés en el mismo, y no podrán alquilar, todo o en parte este inmueble, ni hacer subarrendamientos sin previa autorización del ARRENDADOR o permitir que sea utilizado por terceras personas.

7.   DAÑOS O PÉRDIDAS. EL ARRENDATARIO por el presente releva y para siempre exonera totalmente al ARRENDADOR de toda responsabilidad ("hold harmless agreement") frente a terceras personas, por cualquier acto u omisión relacionado con el uso y disfrute de la Propiedad por los ARRENDATARIOS que cause daño o reclamación de cualquier índole en contra del ARRENDADOR, incluyendo pérdidas o daños a bienes, mercancías, equipos y cualquier otra propiedad del ARRENDATARIO, o de cualquier incumplimiento de los ARRENDATARIOS de sus obligaciones bajo este Contrato.

8.   INSPECCIONES. El ARRENDADOR se reserva el derecho a entrar a la Propiedad a inspeccionarla o para asegurarse que se están cumpliendo todas las disposiciones de este contrato, mostrarla para alquiler o venta, previa cita al efecto. Disponiéndose que dichas visitas de inspección se realizarán de manera que ocasionen los menores inconvenientes posibles.

9.   TERMINACION. El ARRENDADOR podrá dar por terminado este contrato, siempre que notifique por escrito al ARRENDATARIO dentro de los diez (10) días siguientes a la ocurrencia de uno o más, de los siguientes eventos: a) cesión por parte del ARRENDATARIO de todos sus activos a favor de sus acreedores; b) embargo trabado contra la propiedad mueble o inmueble del

Contrato de Arrendamiento
Página # 3

ARRENDATARIO; c) en el caso que se inicie un procedimiento judicial para la reorganización, liquidación o disolución involuntaria del ARRENDATARIO cuando fuera declarado insolvente o cuando se nombre un síndico para que administre la propiedad del ARRENDATARIO. Si los anteriores procedimientos no se desestimaran dentro de los treinta (30) días siguientes del comienzo de los mismos, entonces se constituirá causa suficiente para la resolución; d) abandono por parte del ARRENDATARIO del local arrendado; e) el ARRENDATARIO hiciere o permitiere que se haga algo que tenga el efecto de crear un gravamen contra la propiedad arrendada; f) incumplimiento por parte del ARRENDATARIO de alguna de las obligaciones aquí contraídas; h) la omisión del ARRENDATARIO de pagar una mensualidad de renta vencida.

10.   RECLAMACIONES: Una vez concluya el arrendamiento, la parte ARRENDADORA tendrá derecho a reclamar cualesquiera reclamaciones o daños a la propiedad objeto de este arrendamiento atribuibles a la culpa a negligencia del ARRENDATARIO o resultado del incumplimiento de las obligaciones aquí contraídas.

11.   MEJORAS: Queda convenido por los aquí comparecientes que EL ARRENDATARIO no podrá efectuar mejoras, cambios o alteraciones de clase alguna en la propiedad objeto de este contrato a no ser que obtengan, previamente y par escrito, permiso del ARRENDADOR para efectuarlas, disponiéndose sin embargo, que una vez realizadas, estas mejoras quedaran a beneficio del ARRENDADOR.

12.   PERMISOS: El ARRENDATARIO se obliga a cumplir con todas las leyes y reglamentos ambientales, incluyendo locales y federales que estén relacionados con la protección del ambiente y que regulen el manejo, uso, almacenaje o disposición de sustancias toxicas o peligrosas y desperdicios sólidos, y no permitirá que emanen de la propiedad arrendada olores o vapores desagradables o nocivos. La basura y desperdicios deberán conservarse en envases sanitarios. Incineradores u otro equipo para el almacenaje temporero y disposición de dicha materia deberán ser mantenidos en condiciones limpias y sanitarias.

El ARRENDATARIO certifica al ARRENDADOR que previo al comienzo de su operación comercial ha obtenido todos los permisos y licencias que le son de aplicación. El ARRENDATARIO será responsable e indemnizará al ARRENDADOR por cualquier reclamación, daño, sentencia, penalidad, gasto o multa, incluyendo, pero sin limitar, una disminución en el valor del predio, causado por pérdida o restricción de espacio utilizable, que surja durante o después del arrendamiento coma resultado de cualquier contaminación causada por el ARRENDATARIO.

13.   SEGUROS: Se compromete EL ARRENDATARIO a obtener seguros por responsabilidad pública, y póliza por tormenta, inundación, incendio, terremoto, daños a la propiedad y/u otros que cubran la totalidad de la responsabilidad per el uso de la propiedad del ARRENDADOR, con los correspondientes endosos a favor del ARRENDADOR, con una cubierta no menor, de UN MILLON – UN MILLON DE DOLARES ($1,000,000.00 -- 1,000,000.00) y una "Umbrella" de SIETE MILLONES DE DOLRES ($7,000,000.00). El incumplimiento con esta cláusula será razón suficiente pare declarar automáticamente rescindido el contrato entre las partes.

El ARRENDATARIO suministrara al ARRENDADOR, en un término de quince dias siguientes al otorgamiento de este contrato, copia de las pólizas de seguro antes mencionadas. Cada póliza incluirá una cláusula de subrogación en cuanto al ARRENDADOR y podrá ser cancelada solo cuando se le provea al ARRENDADOR notificación escrita con diez (10) días de antelación.

14.   NO RENOVACION: En caso de que por cualquier razón, vencido el término que aquí se pacta y no habiendo mediado aviso de renovación del contrato, EL ARRENDATARIO continuase ocupando la propiedad, EL ARRENDATARIO le responderá al ARRENDADOR, por las obligaciones que aquí se asumen y que continuarán en todo vigor a favor del ARRENDADOR hasta que se liquiden absolutamente las mismas a entera y total satisfacción de dicha parte.

15.   NON-WAIVER: En case del ARRENDADOR conceder prorroga o concesiones algunas al ARRENDATARIO, no se interpretará como que el ARRENDADOR haya renunciado a derecho alguno o como que el ARRENDADOR quede impedido de llevar a cabo actos o ejercitar derechos a que hubiere tenido con anterioridad.

16.   DISFRUTE DE LA PROPIEDAD ARRENDADA. El ARRENDADOR reconoce y acuerda que el ARRENDATARIO una vez pague los cánones de renta, y cumpla todas sus obligaciones bajo este contrato, podrá disfrutar libre y pacíficamente la Propiedad durante el término de este contrato.

17.   HEREDEROS: Las Partes reconocen que están obligados por el presente Contrato y que cualquier persona que pueda ser sucesor de los derechos y responsabilidades de éstas, tales como, los herederos o albaceas, también estarán obligados al cumplimiento del mismo.

18.   PRIMERA OPCION DE COMPRA: El ARRENDADOR conviene y se obliga, en la eventualidad de que decida vender la propiedad objeto de este contrato, durante la vigencia del mismo o su prórroga, a otorgar el derecho de primera opción de compra al ARRENDATARIO. Obligándose a negociar de buena fe el precio de venta del inmueble.

19.   ABANDONO DE LA PROPIEDAD: En la eventualidad que EL ARRENDATARIO abandone la propiedad arrendada antes de expirar el término convenido, se compromete éste a satisfacer todos y cada uno de los cánones de arrendamiento restantes hasta el vencimiento del contrato o, en defecto de lo anterior, EL ARRENDATARIO se obliga al pago de los cánones de arrendamiento hasta la fecha en la cual EL ARRENDADOR consiga nuevo arrendatario para la propiedad.

20.   NOTIFICACIONES:  Cualquier notificación que tenga que realizarse a cualesquiera de las partes contratantes, deberá ser por escrito y entregada por correo certificado con acuse de recibo.

21.   DERECHO APLICABLE. Este Contrato será gobernado en cuanto a su interpretación y cumplimiento de conformidad con las leyes del Estado Libre Asociado de Puerto Rico. Cualquier acción legal relacionada con este Contrato deberá ser presentada ante el Tribunal de Primera Instancia de Puerto Rico, Sala de San Juan. Sometiéndose expresamente las partes aquí comparecientes a la jurisdicción de dicho Tribunal.

22.   SEPARABILIDAD: La anulación de cualquiera de las cláusulas de este contrato por sentencia u orden de un Tribunal con jurisdicción, en modo alguno afectara las demás cláusulas de este contrato, las cuales permanecerán en plena fuerza y vigor.

23.   ENMIENDAS: Este contrato no podrá ser modificado o enmendado, excepto con el consentimiento expreso y por escrito de las partes.

24.   ACUERDO TOTAL: Las partes hacen constar que el presente Contrato contiene la totalidad del convenio entre ellos y que ningún otro acuerdo, entendimiento, pacto o

Contrato de Arrendamiento
Página # 5

representación, entre las partes, ha sido omitido del mismo.

## ACEPTACION

---Tal es el acuerdo de las partes, el cual suscriben libre y voluntariamente.en la fecha y lugar
antes indicados.

Por: AMERICAN AGENCIES CO., INC.

Por: JOVIRI, INC.

ING. OMIR MENDEZ
PRESIDENTE

ING. ANGEL A. RODRIGUEZ
PRESIDENTE

Exhibit A

PROPIEDAD ARRENDADA POR AMERICAN AGENCIES CO., INC. EN RIO PIEDRAS:

---Enclava un edificio de tres (3) niveles de 12,000 p/c con solar 1,164.85 m2

---"RUSTICA: Parcela de terreno y edificio marcado con el número once (11) de la Urbanización Industrial Reparto Seín, situada en el barrio Monacillos del término municipal de Río Piedras, Puerto Rico, con una cabida superficial de mil ciento sesenta y cuatro metros con ochenta y cinco centímetros cuadrados (1,164.85 m2) equivalentes a once áreas y sesenta y cuatro centiáreas con ochenta y cinco centésimas de otra, equivalente a dos mil novecientas sesenta y cuatro diez milésimas de cuerda (0.2964). Colinda por el Norte, en una distancia de treinta y nueve metros y doce centímetros con la parcela número doce de este mismo Reparto Seín; por el Sur, en una distancia de treinta y ocho metros y cuarenta y seis centímetros con la parcela número diez de este mismo Reparto Seín; por el Este, en una distancia de treinta metros en colindancia con la antigua Carretera Insular Número Uno y por el Oeste, en una distancia de treinta metros con ocho centímetros en la colindancia con la parcela número dos de este Reparto."

# LEASE AGREEMENT NEW STEEL

## CONTRATO DE ARRENDAMIENTO

En la ciudad de San Juan, Puerto Rico, hoy día veinticuatro (24) de abril del año dos mil catorce (2014).

## COMPARECEN

DE LA PRIMERA PARTE Y DENOMINADO DE AQUÍ EN ADELANTE COMO "EL ARRENDADOR": **JOVIRI, INC.,** corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por su presidente ANGEL A. RODRIGUEZ.

DE LA SEGUNDA PARTE Y DENOMINADO DE AQUI EN ADELANTE COMO "EL ARRENDATARIO": **NEW STEEL, INC.,** corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por su presidente OMIR MENDEZ

## EXPONEN

**POR CUANTO,** EL ARRENDADOR es el dueño en pleno dominio de una propiedad inmueble localizada en Carr. 887, Km. 0.9, Barrio Martín González, edificio No. 30 de la Urbanización Industrial Julio M. Matos, Carolina, Puerto Rico, 00986, consistente en un edificio de oficinas y almacén con una área aproximada de 115,938 pies cuadrados, cuya descripción se detalla en el Exhibit A, el cual se hace formar parte integral de este contrato, referida de aquí en adelante como la "Propiedad";

**POR CUANTO,** El ARRENDADOR ha convenido con el ARRENDATARIO en el arrendamiento de la propiedad descrita anteriormente. Disponiéndose que dicha propiedad se utilizará única y exclusivamente para fines de la operación comercial del ARRENDATARIO, uso que no podrá variarse sin el consentimiento escrito del ARRENDADOR;

**POR TANTO,** por el presente y en consideración a los cánones de arrendamiento y otros pagos a ser efectuados por EL ARRENDATARIO al ARRENDADOR, y en consideración a los acuerdos, condiciones y términos a ser realizados, mantenidos y cumplidos por las partes, según se describen en este Contrato, EL ARRENDADOR por el presente cede y da en arrendamiento al ARRENDATARIO, y EL ARRENDATARIO por el presente arrienda y alquila del ARRENDADOR el Inmueble, por el término de arrendamiento que se indica más adelante, sujeto a los siguientes:

## TERMINOS Y CONDICIONES

1. <u>TÉRMINO BÁSICO,</u> EL ARRENDADOR cede en arrendamiento al ARRENDATARIO, la propiedad por un término de diez (10) años, a partir del primero de enero de dos mil quince (2015).

2. <u>RENOVACION.</u> Luego de expirado el Termino Básico, el ARRENDATARIO tendrá la opción de extender el término de este contrato, bajo los mismos términos y condiciones, por un término adicional de diez (10) años, previo aviso del ARRENDATARIO por escrito, de su intención de renovar, realizado con por lo menos noventa (90) días de anticipación al vencimiento

Contrato de Arrendamiento
Página # 2

del Termino Básico.

3.    RENTA. Constituye el canon de arrendamiento para los primeros cinco años del Término Básico la suma de TREINTA Y TRES MIL DOLARES ($33,000.00) mensuales; Para los años 6 al 10 del Termino Básico, el canon de arrendamiento será la suma de TREINTA Y TRES MIL DOLARES ($33,000.00) mensuales más el porcentaje correspondiente al índice del consumidor, según lo publique la autoridad correspondiente. Dichos cánones serán pagaderos en mensualidades adelantadas el día primero (1ro.) de cada mes natural, en el domicilio de EL ARRENDADOR. El canon de arrendamiento convenido es de naturaleza TRIPLE NETO, por consiguiente, serán por cuenta del ARRENDATARIO todos los gastos relacionados con el local objeto del arrendamiento, el pago de todas las reparaciones corrientes u ordinarias y cualquier gasto de mero mantenimiento y/o conservación de la propiedad, sin derecho a reembolso, así coma el pago de las contribuciones sobre la propiedad mueble. El ARRENDATARIO expresamente se obliga a no hacer compensación, ni deducción de clase alguna al canon de renta convenido.

4.    MANTENIMIENTO. EL ARRENDATARIO acepta haber recibido la propiedad en buenas condiciones, con las instalaciones de agua, corriente eléctrica y equipo sanitario en buen estado y se obliga a conservarla con el celo y cuidado de un buen padre de familia, comprometiéndose a reparar cualquier daño que se le ocasione a dicha propiedad, al mantenimiento y reparaciones ordinarias de la misma y a entregarla en las mismas condiciones en que la recibe, salvo el deterioro usual y natural por el transcurso del tiempo. El ARRENDADOR solo será responsable por reparaciones de índole mayor, tales como defectos estructurales.

5.    SERVICIOS. El ARRENDATARIO se obliga a satisfacer todos los pagos por concepto de consumo de agua, mantenimiento y energía eléctrica. Cualquier otro servicio que EL ARRENDATARIO suscriba con posterioridad a la fecha de este otorgamiento será por su cuenta y cargo.

6.    SUBARRENDAMIENTO. Ni la parte ARRENDATARIA ni su representante legal, podrá vender, ceder, transferir o hipotecar este contrato de arrendamiento o interés en el mismo, y no podrán alquilar, todo o en parte este inmueble, ni hacer subarrendamientos sin previa autorización del ARRENDADOR o permitir que sea utilizado por terceras personas.

7.    DAÑOS O PÉRDIDAS. El ARRENDATARIO por el presente releva y para siempre exonera totalmente al ARRENDADOR de toda responsabilidad ("hold harmless agreement") frente a terceras personas, por cualquier acto u omisión relacionado con el uso y disfrute de la Propiedad por los ARRENDATARIOS que cause daño o reclamación de cualquier índole en contra del ARRENDADOR, incluyendo pérdidas o daños a bienes, mercancías, equipos y cualquier otra propiedad del ARRENDADOR, o de cualquier incumplimiento de los ARRENDATARIOS de sus obligaciones bajo este Contrato.

8.    INSPECCIONES. El ARRENDADOR se reserva el derecho a entrar a la Propiedad a inspeccionarla o para asegurarse que se están cumpliendo todas las disposiciones de este contrato, mostrarla para alquiler o venta, previa cita al efecto. Disponiéndose que dichas visitas de inspección se realizarán de manera que ocasionen los menores inconvenientes posibles.

9.    TERMINACION. El ARRENDADOR podrá dar por terminado este contrato, siempre que notifique por escrito al ARRENDATARIO dentro de los diez (10) días siguientes a la ocurrencia de uno o más, de los siguientes eventos: a) cesión por parte del ARRENDATARIO de todos sus activos a favor de sus acreedores; b) embargo trabado contra la propiedad mueble o inmueble del

ARRENDATARIO; c) en el caso que se inicie un procedimiento judicial para la reorganización, liquidación o disolución involuntaria del ARRENDATARIO cuando fuera declarado insolvente o cuando se nombre un síndico para que administre la propiedad del ARRENDATARIO. Si los anteriores procedimientos no se desestimaran dentro de los treinta (30) días siguientes del comienzo de los mismos, entonces se constituirá causa suficiente para la resolución; d) abandono por parte del ARRENDATARIO del local arrendado; e) el ARRENDATARIO hiciere o permitiere que se haga algo que tenga el efecto de crear un gravamen contra la propiedad arrendada; f) incumplimiento por parte del ARRENDATARIO de alguna de las obligaciones aquí contraídas; h) la omisión del ARRENDATARIO de pagar una mensualidad de renta vencida.

10.   <u>RECLAMACIONES:</u> Una vez concluya el arrendamiento, la parte ARRENDADORA tendrá derecho a reclamar cualesquiera reclamaciones o daños a la propiedad objeto de este arrendamiento atribuibles a la culpa o negligencia del ARRENDATARIO o resultado del incumplimiento de las obligaciones aquí contraídas.

11.   <u>MEJORAS:</u> Queda convenido por los aquí comparecientes que EL ARRENDATARIO no podrá efectuar mejoras, cambios o alteraciones de clase alguna en la propiedad objeto de este contrato a no ser que obtengan, previamente y par escrito, permiso del ARRENDADOR para efectuarlas, disponiéndose sin embargo, que una vez realizadas, estas mejoras quedaran a beneficio del ARRENDADOR.

12.   <u>PERMISOS:</u> El ARRENDATARIO se obliga a cumplir con todas las leyes y reglamentos ambientales, incluyendo locales y federales que estén relacionadas con la protección del ambiente y que regulen el manejo, uso, almacenaje o disposición de sustancias toxicas o peligrosas y desperdicios sólidos, y no permitirá que emanen de la propiedad arrendada olores o vapores desagradables o nocivos. La basura y desperdicios deberán conservarse en envases sanitarios. Incineradores u otro equipo para el almacenaje temporero y disposición de dicha materia deberán ser mantenidos en condiciones limpias y sanitarias.

El ARRENDATARIO certifica al ARRENDADOR que previo al comienzo de su operación comercial ha obtenido todos los permisos y licencias que le son de aplicación. El ARRENDATARIO será responsable e indemnizará al ARRENDADOR por cualquier reclamación, daño, sentencia, penalidad, gasto o multa, incluyendo, pero sin limitar, una disminución en el valor del predio, causado por pérdida o restricción de espacio utilizable, que surja durante o después del arrendamiento coma resultado de cualquier contaminación causada por el ARRENDATARIO.

13.   <u>SEGUROS:</u> Se compromete EL ARRENDATARIO a obtener seguros por responsabilidad pública, y póliza por tormenta, inundación, incendio, terremoto, daños a la propiedad y/u otros que cubran la totalidad de la responsabilidad per el uso de la propiedad del ARRENDADOR, con los correspondientes endosos a favor del ARRENDADOR, con una cubierta no menor, de UN MILLON – UN MILLON DE DOLARES ($1,000,000.00 – 1,000,000.00) y una "Umbrella" de SIETE MILLONES DE DOLRES ($7,000,000.00). El incumplimiento con esta cláusula será razón suficiente pare declarar automáticamente rescindido el contrato entre las partes.

El ARRENDATARIO suministra al ARRENDADOR, en un término de quince dias siguientes al otorgamiento de este contrato, copia de las pólizas de seguro antes mencionadas. Cada póliza incluirá una cláusula de subrogación en cuanto al ARRENDADOR y podrá ser cancelada solo cuando se le provea al ARRENDADOR notificación escrita con diez (10) días de antelación.

14. NO RENOVACION: En caso de que por cualquier razón, vencido el término que aquí se pacta y no habiendo mediado aviso de renovación del contrato, EL ARRENDATARIO continuase ocupando la propiedad, EL ARRENDATARIO le responderá al ARRENDADOR, por las obligaciones que aquí se asumen y que continuarán en todo vigor a favor del ARRENDADOR hasta que se liquiden absolutamente las mismas a entera y total satisfacción de dicha parte.

15. NON-WAIVER: En case del ARRENDADOR conceder prorroga o concesiones algunas al ARRENDATARIO, no se interpretará como que el ARRENDATARIO haya renunciado a derecho alguno o como que el ARRENDADOR quede impedido de llevar a cabo actos o ejercitar derechos a que hubiere tenido con anterioridad.

16. DISFRUTE DE LA PROPIEDAD ARRENDADA. El ARRENDADOR reconoce y acuerda que el ARRENDATARIO una vez pague los cánones de renta, y cumpla todas sus obligaciones bajo este contrato, podrá disfrutar libre y pacíficamente la Propiedad durante el término de este contrato.

17. HEREDEROS: Las Partes reconocen que están obligados por el presente Contrato y que cualquier persona que pueda ser sucesor de los derechos y responsabilidades de éstas, tales como, los herederos o albaceas, también estarán obligados al cumplimiento del mismo.

18. PRIMERA OPCION DE COMPRA: El ARRENDADOR conviene y se obliga, en la eventualidad de que decida vender la propiedad objeto de este contrato, durante la vigencia del mismo o su prórroga, a otorgar el derecho de primera opción de compra al ARRENDATARIO. Obligándose a negociar de buena fe el precio de venta del inmueble.

19. ABANDONO DE LA PROPIEDAD: En la eventualidad que EL ARRENDATARIO abandone la propiedad arrendada antes de expirar el término convenido, se compromete éste a satisfacer todos y cada uno de los cánones de arrendamiento restantes hasta el vencimiento del contrato o, en defecto de lo anterior, EL ARRENDATARIO se obliga al pago de los cánones de arrendamiento hasta la fecha en la cual EL ARRENDADOR consiga nuevo arrendatario para la propiedad.

20. NOTIFICACIONES: Cualquier notificación que tenga que realizarse a cualesquiera de las partes contratantes, deberá ser por escrito y entregada por correo certificado con acuse de recibo.

21. DERECHO APLICABLE. Este Contrato será gobernado en cuanto a su interpretación y cumplimiento de conformidad con las leyes del Estado Libre Asociado de Puerto Rico. Cualquier acción legal relacionada con este Contrato deberá ser presentada ante el Tribunal de Primera Instancia de Puerto Rico, Sala de San Juan. Sometiéndose expresamente las partes aquí comparecientes a la jurisdicción de dicho Tribunal.

22. SEPARABILIDAD: La anulación de cualquiera de las cláusulas de este contrato por sentencia u orden de un Tribunal con jurisdicción, en modo alguno afectara las demás cláusulas de este contrato, las cuales permanecerán en plena fuerza y vigor.

23. ENMIENDAS: Este contrato no podrá ser modificado o enmendado, excepto con el consentimiento expreso y por escrito de las partes.

24. ACUERDO TOTAL: Las partes hacen constar que el presente Contrato contiene la totalidad del convenio entre ellos y que ningún otro acuerdo, entendimiento, pacto o

Contrato de Arrendamiento
Página # 5

representación, entre las partes, ha sido omitido del mismo.

**ACEPTACION**

---Tal es el acuerdo de las partes, el cual suscriben libre y voluntariamente en la fecha y lugar
antes indicados.

Por: NEW STEEL, INC.

Por: JOVIRI, INC.

_____

ING. OMIR MENDEZ
PRESIDENTE

_____

ING. ANGEL A. RODRIGUEZ
PRESIDENTE

**Exhibit A**

**PROPIEDAD ARRENDADA POR NEW STEEL, INC. EN CAROLINA:**

---Enclava un edificio de construcción de metal de tipo almacén de aproximadamente ciento dieciséis mil pies cuadrados (116,000 p/c) con solar de veintisiete mil seiscientos cincuenta y tres metros cuadrados (27,653 m²)

---"RUSTICA: Parcela "B" sita en el Barrio Martín González de Carolina, Puerto Rico, con una cabida superficial de siete punto cuatrocientas tres (7,403) cuerdas de terreno, Colinda por el **Norte**, en noventa y dos punto noventa y nueve (92.99) metros, con el camino público que da acceso a esta parcela quedando dicha línea de colindancia a nueve (9) metros, del eje de este camino; por el **Sur**, en ciento cincuenta y nueve punto quince (159.15) metros, en varias alineaciones con una quebrada que separa terrenos de JOSE FLORES; por el **Este**, en doscientos doce punto trece (212.13) metros, con terrenos de GONZALO GOMEZ y por el **Oeste**, en doscientos cuarenta y cuatro punto noventa (244.90) metros, con la parcela "A" segregada."